UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**Sid Miller**, on behalf of himself and others similarly situated,

Plaintiff,

v.

**Tom Vilsack**, in his official capacity as Secretary of Agriculture,

Defendants.

Case No. 4:21-cv-00595

## PLAINTIFF'S CLASS-ACTION COMPLAINT

The Supreme Court of the United States said 125 years ago that:

> [T]he constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the general government, or by the states, against any citizen because of his race. All citizens are equal before the law. The guaranties of life, liberty, and property are for all persons, within the jurisdiction of the United States, or of any state, without discrimination against any because of their race. Those guaranties, when their violation is properly presented in the regular course of proceedings, must be enforced in the courts, both of the nation and of the state, without reference to considerations based upon race.

*Gibson v. State of Mississippi*, 162 U.S. 565, 591 (1896); *see also Bolling v. Sharpe*, 347 U.S. 497 (1954) (citing *Gibson* and holding that segregation in the District of Columbia public schools violated the Due Process Clause of the Fifth Amendment).

Equal rights under law is the cornerstone of American constitutional jurisprudence: the principle that all citizens, regardless of status, wealth, race, color, religion, or creed, have the same rights and are entitled to the same standard of justice. These are the principles etched into our founding documents, fought for on our nation's

battlefields, written into the Gettysburg Address, and delivered from the steps of the Lincoln Memorial by Martin Luther King.

As a nation, we are devoted to the task of satisfying these sacred ideals and providing equal rights to citizens of all races, as the Constitution requires. Profound progress has been made, and extraordinary milestones reached, throughout our history, serving as an inspiration to humanity and the nations of the world. Yet, today, the Department of Agriculture lurches America dangerously backward, reversing the clock on American progress, and violating our most sacred and revered principles by actively and invidiously discriminating against American citizens solely based upon their race. This is illegal, it is unconstitutional, it is wrong, and it must stop.

Indeed, the United States Department of Agriculture administers numerous statutes that provide government aid to "socially disadvantaged farmers and ranchers." The Department of Agriculture interprets this phrase to include African Americans, Hispanics, Native Americans, Alaskan natives, Asian-Americans, and Pacific Islanders. But white farmers and ranchers are not included within the definition of "socially disadvantaged farmers and ranchers," making them ineligible for aid under these federal programs.

These racial exclusions are patently unconstitutional, and the Court should permanently enjoin their enforcement. Doing so will promote equal rights under the law for all American citizens and promote efforts to stop racial discrimination, because "[t]he way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) (Roberts, C.J., concurring).

American citizens today represent a beautiful, complex, and increasingly interwoven fabric of racial backgrounds. Government action that tears at that fabric and divides its pieces—rather than reinforcing that fabric's unifying and binding ties—disrupts our common progress towards becoming a more perfect union.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Sid Miller is a farmer and rancher who resides in Erath County, Texas. He also serves as Agriculture Commissioner for the State of Texas. Mr. Miller is suing in his capacity as a private citizen, and not on behalf of the State of Texas or the Texas Department of Agriculture.

4. Defendant Tom Vilsack is the U.S. Secretary of Agriculture. Secretary Vilsack is sued in his official capacity.

## STATEMENT OF FACTS

5. Sections 1005 and 1006 of the American Rescue Plan Act of 2021, H.R. 1319, 117th Cong. (2021), provide aid to farmers and ranchers who have been harmed by the COVID-19 pandemic—including loan forgiveness up to *120 percent* of the value of the loan—but only if they qualify as a "socially disadvantaged farmer or rancher." *See* Exhibit 1.

6. Numerous other federal statutes limit government aid to individuals who qualify as a "socially disadvantaged farmer or rancher." *See, e.g.*, 7 U.S.C. § 1936(a) (requiring the Secretary of Agriculture to "guarantee a loan made by a private seller of a farm or ranch to a . . . socially disadvantaged farmer or rancher."); 7 U.S.C. § 1985(c)(1)(B) (requiring the Secretary of Agriculture to "offer to sell" certain properties to "a qualified beginning farmer or rancher or a socially disadvantaged farmer or rancher at current market value based on a current appraisal" before at-

tempting to sell that property at a public sale); 7 U.S.C. § 1627c(d)(5)(C)(i)(II) (requiring the Secretary of Agriculture to give preference to applications submitted by "socially disadvantaged farmers or ranchers" when awarding grants).

7. Federal law defines "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a)(5). "Socially disadvantaged group," in turn, is defined as:

> a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities.

7 U.S.C. § 2279(a)(6).

8. The Department of Agriculture has adopted a general definition of "socially disadvantaged farmer and rancher" as follows:

> A socially disadvantaged group is defined as: A farmer or rancher who is a member of one or more of the following groups whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities:
> - African Americans
> - American Indians
> - Alaskan Natives
> - Asians
> - Hispanics
> - Pacific Islanders

U.S. Department of Agriculture, *Farming Opportunities Training and Outreach Grant Program*, https://www.usda.gov/sites/default/files/documents/2501_Fact-Sheet.pdf (last visited on April 26, 2021) (attached as Exhibit 2).[1]

---

1. The Department of Agriculture defines the term similarly, with minor variations, in various regulations applicable to USDA programs. *See, e.g.*, 7 C.F.R. § 7.3 (applicable to the selection and functions of Farm Service Agency state and county committees); 7 C.F.R. § 718.2 (applicable to farm marketing quotas, acreage allotments, and production adjustment); 7 C.F.R. § 760.107(b)(1) (applicable to certain Supplemental Agricultural Disaster Assistance Programs); 7 C.F.R. § 636.3 (applicable to the Wildlife Habitat Incentive Program); 7 C.F.R. § 1410.2(b) (applicable to the Conservation Reserve Program); 7 C.F.R. § 1430.402 (applicable to the Dairy Margin Coverage Program).

9. Setting aside the propriety of the use of these classifications for benefits, this definition of "socially disadvantaged farmer and rancher" departs from the plain statutory text by failing to include white ethnic groups that have unquestionably suffered ethnic prejudice.

10. Indeed, throughout American history, many white ethnic groups have been subject to "racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," including Irish, Italians, Germans, Jews, and eastern Europeans. Members of these ethnic groups unambiguously qualify as members of a "socially disadvantaged group," and as "socially disadvantaged farmers or ranchers," under the plain text of 7 U.S.C. §§ 2279(a)(5)–(6).

11. In addition, neither the statutes nor the Department of Agriculture defines what percentage of "socially disadvantaged" ancestry is necessary to qualify one as a member of a "socially disadvantaged group." There are many individuals, such as Homer Plessy and Elizabeth Warren, who have been regarded as racial minorities despite having only small traces of minority ancestry.

12. Mr. Plessy, for example, was one-eighth black, yet he was regarded as black by the government of Louisiana and forbidden to sit in a railroad car reserved for white passengers. *See Plessy v. Ferguson*, 163 U.S. 537, 538 (1896). Senator Warren has been recognized as a Native American by Harvard Law School and the American Association of Law Schools,[2] despite the fact that a recent DNA test showed that any

2. *See* Stephanie Ebbert, *Directories Identified Warren as Minority*, THE BOSTON GLOBE (April 30, 2012), https://web.archive.org/web/20130903193315/http://www.boston.com/news/local/massachusetts/articles/2012/04/30/elizabeth_warren_was_listed_as_a_minority_professor_in_law_directories_in_the_80s_and_90s (last visited on April 26, 2021) ("Elizabeth Warren . . . was listed as a minority professor in American law school directories for nine years before she landed at Harvard, documents show."); *id*. ("Elizabeth Warren . . . said Friday she didn't realize Harvard Law School had been promoting her as a Native American faculty member in the 1990s").

Native American ancestry in Ms. Warren's lineage would have been 6 to 10 generations ago.[3] Yet nothing in the relevant statutes (or in the Department's purported interpretations of these statutes) establishes a blood-quantum cut-off or defines the amount of "socially disadvantaged" ancestry needed to qualify for aid under any of these federal programs.

13. Plaintiff Sid Miller is a farmer and rancher. His ancestry is overwhelmingly white, and primarily Scotch-Irish. As is the case with many Americans, his ancestry is not limited to just one racial or ethnic group. Mr. Miller also has approximately 2% African-American ancestry.

14. The statutes described above, as currently interpreted and enforced by the Department of Agriculture, exclude Mr. Miller from the benefits of programs for "socially disadvantaged farmers and ranchers" on account of his race.

15. Mr. Miller sues on behalf of all farmers and ranchers in the United States who are excluded from the benefits of programs for "socially disadvantaged farmers and ranchers" because of their race or ethnicity.

## Claim 1: The Department of Agriculture's Racial Exclusions Violate The Constitution and Title VI

16. The Constitution prohibits the federal government from discriminating on account of race or ethnicity. *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

17. Title VI of the Civil Rights Act of 1964 likewise prohibits discrimination on the grounds of race, color, or national origin in any program that receives federal funds. *See* 42 U.S.C. § 2000d.

3. *See* Astead W. Herndon, *Elizabeth Warren Stands by DNA Test. But Around Her, Worries Abound.*, The New York Times (Dec. 8, 2018), https://www.nytimes.com/2018/12/06/us/politics/elizabeth-warren-dna-test-2020.html) ("Ms. Warren's DNA test, which was conducted by the renowned geneticist Carlos Bustamante and released by her office, showed strong evidence that Ms. Warren has Native American pedigree '6–10 generations ago.'").

18. The Department of Agriculture violates the Constitution and Title VI by discriminating on the grounds of race, color, and national origin in administering its programs.

19. The Court should declare unconstitutional any statute limiting the benefits of federal programs to "socially disadvantaged farmers and ranchers."

20. The Court should further declare that the Department violates the Constitution and Title VI by excluding individuals and entities from the benefit of federal programs on the grounds of race, color, and national origin, and by discriminating against individuals and entities on this basis, and it should permanently enjoin Secretary Vilsack and his successors from implementing any racial exclusions or discriminatory racial preferences in the Department's programs.

**Claim 2: In The Alternative, The Phrase "Socially Disadvantaged Group" Must Be Construed, As A Matter Of Statutory Interpretation, To Include White Ethnic Groups That Have Suffered Past Prejudice And Discrimination**

21. If the Court is unwilling to declare the Department's racial exclusions and the underlying statutes unconstitutional, then it should at the very least declare that the phrase "socially disadvantaged group" must be construed, as a matter of statutory interpretation, to include ethnic groups of all types that have been subjected to racial and ethnic prejudice, including (but not limited to) Irish, Italians, Germans, Jews, and eastern Europeans.

22. The statutory text is clear: *All* "groups whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities" fall within the definition of "socially disadvantaged group." 7 U.S.C. § 2279(a)(6). White ethnic groups that have experienced past racial or ethnic prejudice are no less protected by the statute than members of minority groups. Because the text is unambiguous, there is no grounds for "deferring" to any

atextual interpretation that the Department might offer. *See Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 781–82 (2018).

23. The Court should therefore declare that the Department of Agriculture's current interpretation of "socially disadvantaged group" violates the clear and unambiguous text of 7 U.S.C. § 2279(a)(6), by excluding white ethnic groups that have been subjected to racial and ethnic prejudice, and it should enjoin Secretary Vilsack and his successors from excluding Irish, Italians, Germans, Jews, eastern Europeans, and any other ethnic group that has suffered racial and ethnic prejudice, from the definitions of "socially disadvantaged group" and "socially disadvantaged farmer or rancher."

### Claim 3: In The Alternative, The Phrase "Socially Disadvantaged Farmer Or Rancher" Must Be Construed, As A Matter Of Statutory Interpretation, To Include Individuals Who Have Any Discernible Trace Of Minority Ancestry

24. If the Court is unwilling to declare as unconstitutional the Department's racial exclusions and the underlying statutes, then it should at the very least declare that the phrase "socially disadvantaged farmer or rancher" must be construed, as a matter of statutory interpretation, to include individuals who have any discernible trace of minority ancestry.

25. The statutes are silent on how much minority ancestry is needed before one can qualify as a member of a "socially disadvantaged group," or as a "socially disadvantaged farmer or rancher." An interpretation of the underlying statutes that excludes plaintiffs like Miller because he is not "black enough" would raise grave constitutional concerns under *Bolling v. Sharpe*, 347 U.S. 497 (1954), and it should be rejected for that reason alone. For the same reason, the statutes should not be construed to empower the Department of Agriculture to choose a minimum threshold of minority ancestry when determining eligibility for benefits.

26. The Court is therefore obligated to interpret 7 U.S.C. § 2279(a)(5)–(6) in a manner that avoids this serious constitutional question under the canon of constitutional avoidance. *See Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990) ("[W]here fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." (citation and internal quotation marks omitted)).

27. The canon of constitutional avoidance trumps any deference that the agency might try to claim if it insisted on a blood-quantum threshold. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *see also Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) (courts must consider all "traditional canons" at Chevron Step One).

28. The Court should therefore declare that the statute, at 7 U.S.C. § 2279(a)(5)–(6), prohibits the Department of Agriculture from establishing a blood-quantum threshold for status as a member of a "socially disadvantaged group, and that any person with any traceable amount of minority ancestry must be regarded as a member of a "socially disadvantaged group."

29. The Court should also enjoin Secretary Vilsack and his successors from excluding any person with any traceable amount of minority ancestry from the definitions of "socially disadvantaged group" and "socially disadvantaged farmer or rancher."

## CLASS-ACTION ALLEGATIONS

30. Plaintiff Miller brings this class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

31. Plaintiff Miller seeks to represent a class of all farmers and ranchers in the United States who are currently excluded from the Department's interpretation of "socially disadvantaged farmer or rancher."

32.   The number of individuals in this class makes joinder of the individual class members impractical.

33.   There are questions of law common to the class, including whether the Constitution or Title VI allows the Department to exclude farmers and ranchers from the benefits of federal programs on account of their race.

34.   Plaintiff Miller's claims are typical of other members of the class. Each of them wishes to stop the Department of Agriculture from excluding them from the benefits of federal programs on account of their race.

35.   Plaintiff Miller adequately represents the interests of the class, and he has no interests antagonistic to the class.

36.   A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the classes as a whole.

## DEMAND FOR RELIEF

37.   Plaintiff Miller respectfully requests that the court:

   a.   certify a class of all farmers and ranchers in the United States who are currently excluded from the Department's interpretation of "socially disadvantaged farmer or rancher;"

   b.   award the declaratory relief described in paragraphs 19, 20, 23, and 28;

   c.   permanently enjoin Secretary Vilsack and his successors from implementing any racial exclusions or discriminatory racial preferences in Department of Agriculture programs;

   d.   award costs and attorneys' fees under 42 U.S.C. § 1988;

   e.   award all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

GENE P. HAMILTON*
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

CHARLES W. FILLMORE
H. DUSTIN FILLMORE
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

* *pro hac vice* application pending

Dated: April 26, 2021

*Counsel for Plaintiff and the Proposed Class*