UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Sid Miller**, et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>**Tom Vilsack**, in his official capacity as Secretary of Agriculture,<br><br>               Defendant. | Case No. 4:21-cv-00595-O |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Section 1005 of the American Rescue Plan Act of 2021 instructs the Secretary of Agriculture to provide loan forgiveness to farmers and ranchers—but only if they qualify as a "socially disadvantaged farmer or rancher." And the Department interprets the phrase "socially disadvantaged farmer and rancher" in a manner that includes racial minorities but excludes whites. The plaintiffs respectfully request an order enjoining the defendant from providing loan forgiveness to individuals based on their race or ethnicity.

## FACTS

Section 1005 of the American Rescue Plan Act of 2021, Pub. L 117-2 (2021), provides aid to farmers and ranchers—including loan forgiveness up to *120 percent* of the value of the loan as of January 1, 2021—but only if they qualify as a "socially disadvantaged farmer or rancher." *See* Exhibit 1.

On May 21, 2021, the United States Department of Agriculture, through the Farm Service Agency (FSA), issued a press release announcing a Notice of Funds

Availability (NOFA), in which it would start making loan payments for eligible borrowers with qualifying direct farm loans, pursuant to section 1005 of the American Rescue Plan Act. *See* Exhibit 2; *see also* U.S. Department of Agriculture, *Press Release, In Historic Move, USDA to Begin Loan Payments to Socially Disadvantaged Borrowers under American Rescue Plan Act Section 1005*, *available at* https://bit.ly/3fHNQd6 (last visited on June 2, 2021). The Department of Agriculture published the NOFA in the Federal Register on May 26, 2021. *See* Exhibit 3; *see also* Notice of Funds Availability, 86 Fed. Reg. 28,329 (May 26, 2021).

The notice defines, for the purposes of eligibility for loan forgiveness, "socially disadvantaged farmer or rancher" as:

> [A] farmer or rancher who is a member of a socially disadvantaged group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities, as defined by section 2501(a) of the Foot, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a)).

*Id*. at 28,330. The notice goes on to state that this includes "American Indians or Alaskan Natives," "Asians," "Blacks or African Americans," "Native Hawaiians or other Pacific Islanders," and "Hispanics or Latinos." *Id*.

The plaintiffs in this case are farmers and ranchers who held qualifying FSA loans on January 1, 2021, and—aside from their racial or ethnic backgrounds—would be otherwise entitled to benefit from this program.

Plaintiff Greg Macha is a white rancher who resides in Wallis, Texas. Declaration of Greg Macha ¶¶ 3–4. Plaintiff Macha held a qualifying loan on January 1, 2021. *Id*. ¶ 5. Plaintiff James Meek is a white farmer and rancher who resides in Alvord, Texas. Declaration of James Meek ¶¶ 3–4. Plaintiff Meek held a qualifying loan on January 1, 2021. *Id*. ¶ 5. Plaintiff Jeff Peters is a white farmer and rancher who resides in Arlington, Texas. Declaration of Jeff Peters ¶¶ 3–4. Plaintiff Peters held a qualifying loan on January 1, 2021. *Id*. ¶ 5. Plaintiff Lorinda O'Shaughnessy is a white

rancher who resides in Placedo, Texas. Declaration of Lorinda O'Shaughnessy ¶¶ 3–4. Plaintiff O'Shaughnessy held a qualifying loan on January 1, 2021. *Id.* ¶ 5.

## THE PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, the plaintiffs must show: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). All four factors support a preliminary injunction.

### I. The Plaintiffs Are Likely to Succeed on the Merits Because the Racial Preferences in Section 1005 Are Unconstitutional

Racial classifications are antithetical to the Constitution, as the Supreme Court has repeatedly recognized. *See Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."); *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984) (footnote omitted) ("A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race."); *see also Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) (requiring the federal government to comply with the constitutional prohibition on racial on the same terms as the states). *All* government-imposed racial classifications are "presumptively invalid"[1] and "inherently suspect,"[2] and they will not be tolerated unless the government proves that a racial classification is "narrowly tailored" and "furthers compelling governmental interests." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation and internal quotation marks omitted).

---

1. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979).
2. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 223 (1995) (citation and internal quotation marks omitted).

There is no justification for the racial preferences in section 1005 that could satisfy the "strict scrutiny" standard. The COVID-19 pandemic has affected farmers, ranchers, and people from all walks of life. It has done so without regard to anyone's race. And even if there were some unique vulnerabilities to infection among certain racial groups, that would have no effect on the economic misfortunes that befall a person's farm or ranch. It is a blatant violation of the principles of rule of law and equal protection to condition government assistance on an individual's race.

If the government thinks it can "prioritize" racial minorities to compensate for past discriminatory actions that have occurred in society generally, those efforts will be foreclosed by *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989). *Croson* emphatically rejected the idea that amorphous claims of past discrimination can justify a present-day racial preference in the distribution of government largesse. *See id*. at 499–506. *See also Adarand*, 515 U.S. 200 (extending *Croson*'s holding to the federal government). The statute contains no findings of past discrimination that are specific enough to warrant remedial preferences through a loan-forgiveness program, and the defendants cannot point to any other specific evidence related to the industry in question that would support such remedial action. *See Croson* at 500.

This is nothing more than a naked discriminatory preference that turns a disaster-relief program into a politicized spoils system. And there is no basis in reason or evidence to think that excluding white farmers and ranchers from a loan-forgiveness program will do anything to "remedy" past societal discrimination.

## II. The Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction

The plaintiffs will suffer irreparable harm absent a preliminary injunction because the entirety of funds Congress that appropriated under section 1005 will be unavailable to them. And there is no mechanism to "claw back" this money once the government dispenses it. The Defendants' sovereign immunity makes it impossible for

the plaintiffs to recover damages if these unconstitutional racial preferences wind up excluding them from relief that the defendants grant to others.

Moreover, the plaintiffs are suffering additional irreparable harm because they are encountering racial discrimination at the hands of government officials, which inflicts irreparable harm *per se*. *See Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003), *aff'd sub nom.*, *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844 (2005) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."). This injury cannot be remedied absent a preliminary injunction because the defendants' sovereign immunity prevents retrospective relief.

### III. The Harm to the Plaintiffs Outweighs Harms That Will Arise If This Court Grants a Preliminary Injunction

The harm to the plaintiffs (and others who are being excluded from loan forgiveness on account their race) outweighs any "harms" that might arise from the proposed preliminary injunction. A preliminary injunction will not compel the defendants to withhold loan forgiveness from minority farmers and ranchers; it will merely require them to award loan forgiveness to farmers and ranchers without any regard to race. The defendants will have a choice in whether to respond to the proposed injunction by extending loan forgiveness to all farmers and ranchers, or whether to respond by withholding loan forgiveness from everyone. But any outcome that "harms" minority farmers and ranchers by withholding loan forgiveness will be the result of the defendants' choices rather than judicial compulsion.

A preliminary injunction will not only alleviate the financial harms that are being inflicted the plaintiffs, but it will also eliminate the injury to their constitutional right to be free from racial discrimination at the hands of the government. The "socially disadvantaged" farmers and ranchers, by contrast, are not encountering any injury

from racial discrimination and will not encounter any such injury if an injunction is granted. That tips the scales decisively in favor of the plaintiffs.

## IV. A Preliminary Injunction Is in The Public Interest

The protection of constitutional rights is by definition in the public interest. *See Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 884 (3d Cir. 1997) ("[T]he public interest clearly favors the protection of constitutional rights."); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest."); *Connection Distributing Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). If the Court agrees that the plaintiffs are likely to succeed on their claim that the racial and ethnic conditions in section 1005 are unconstitutional, then a preliminary injunction will be in the public interest as well.

## V. The Plaintiffs' Motion for a Preliminary Injunction Complies with Rule 65(a) and Rule 65(c)

This brief and the attached declarations describe the irreparable injury that will result in the absence of a preliminary injunction.

Finally, it is not necessary to require a bond because the federal government will not suffer costs or damages from the proposed preliminary injunction. *See* Fed. R. Civ. P. 65(c).

## CONCLUSION

The motion for a preliminary injunction should be granted.

                                                  Respectfully submitted.

| | |
|---|---|
| Gene P. Hamilton<br>Virginia Bar No. 80434<br>Vice-President and General Counsel<br>America First Legal Foundation<br>300 Independence Avenue SE<br>Washington, DC 20003<br>(202) 964-3721<br>gene.hamilton@aflegal.org<br><br>H. Dustin Fillmore III<br>Texas Bar No. 06996010<br>Charles W. Fillmore<br>Texas Bar No. 00785861<br>The Fillmore Law Firm, LLP<br>201 Main Street, Suite 801<br>Fort Worth, Texas 76102<br>(817) 332-2351 (phone)<br>(817) 870-1859 (fax)<br>dusty@fillmorefirm.com<br>chad@fillmorefirm.com<br><br><br>Dated: June 2, 2021 | /s/ Jonathan F. Mitchell<br>Jonathan F. Mitchell<br>Texas Bar No. 24075463<br>Mitchell Law PLLC<br>111 Congress Avenue, Suite 400<br>Austin, Texas 78701<br>(512) 686-3940 (phone)<br>(512) 686-3941 (fax)<br>jonathan@mitchell.law<br><br><br><br><br><br><br><br><br><br><br><br>*Counsel for Plaintiffs and*<br>*the Proposed Class* |