IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

SID MILLER, et al.,

     Plaintiffs,

v.

TOM VILSACK, in his official capacity
as Secretary of Agriculture,

     Defendant.

Case No. 4:21-cv-00595-O

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT .................................................................................................................. 4

I.      Plaintiffs' boilerplate motion is inadequate to support class certification. ......................... 5

II.     Plaintiffs have not satisfied the requirements of Rule 23(a) with respect to either class. ............................................................................................................................ 7

      A.      Plaintiffs have not demonstrated commonality ........................................ 7

      B.      Plaintiffs fail to establish that their claims are typical of either proposed class. ................................................................................................................. 10

      C.      The named Plaintiffs' claims are in inherent conflict with the interests of the proposed classes. ................................................................................. 12

III.    Plaintiffs do not meet the requirements of Rule 23(b)(2). ................................................ 13

IV.    Plaintiffs have not identified an ascertainable class. ........................................................ 15

V.     Plaintiffs' proposed classes do not satisfy Article III. .................................................... 17

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
298 F. Supp. 3d 834 (W.D. Va. 2018), *aff'd*, 917 F.3d 206 (4th Cir. 2019) ............................ 7

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995).................................................................................................................. 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................................. 12

*Berger v. Compaq Comput. Corp.*,
257 F.3d 475 (5th Cir. 2001) .................................................................................................... 12

*Bolin v. Sears, Roebuck & Co.*,
231 F.3d 970 (5th Cir. 2000) .................................................................................................... 13

*Bolling v. Sharpe*,
347 U.S. 497 (1954).................................................................................................................. 4

*Califano v. Yamasaki*,
442 U.S. 682 (1979).................................................................................................................. 4

*Camp v. Allstate Ins. Co.*,
100 F.3d 953 (5th Cir. 1996) .................................................................................................... 16

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
624 F.3d 185 (5th Cir. 2010) .................................................................................................... 13

*Chavez v. Plan Benefit Servs. Inc.*,
957 F.3d 542 (5th Cir. 2020) .................................................................................................... 12

*Conrad v. Gen. Motors Acceptance Corp.*,
283 F.R.D. 326 (N.D. Tex. 2012) ........................................................................................ 15, 17

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) ................................................................................................ 15, 16

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)...................................................................................................... 17

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
431 U.S. 395 (1977).................................................................................................................. 4

*Finley v. Wash. Mut. Bank, F.A.*,
No. 4:07cv225, 2008 WL 2008850 (E.D. Tex. May 8, 2008)................................................. 6

*Flecha v. Medicredit, Inc.*,
   946 F.3d 762 (5th Cir. 2020) ........................................................................ 10, 17, 18

*Flowers v. Brown*,
   Civ. A. No. 1:17-cv-460, 2021 WL 1143783 (E.D. Tex. Mar. 5, 2021),
   *report & recommendation adopted*, 2021 WL 1134272 (E.D. Tex. Mar. 23, 2021)............. 5, 6

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)................................................................................................. 10

*Grutter v. Bollinger*,
   539 U.S. 306 (2003)................................................................................................... 9

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ................................................................................... 18

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
   317 F.R.D. 675 (N.D. Ga. 2016)......................................................................... 15, 16

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................... 11

*James v. City of Dallas, Tex.*,
   254 F.3d 551 (5th Cir. 2001) ................................................................................... 11

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ........................................................................ 5, 15, 16

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) ................................................................................... 12

*Lee v. Am. Airlines, Inc.*,
   Civ. A. No. 3:01-CV-1179-P, 2002 WL 31230803 (N.D. Tex. Sept. 30, 2002) ...................... 16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................... 10, 11

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ........................................................................ 5, 8, 9, 10

*Maldonado v. Ochsner Clinic Found.*,
   493 F.3d 521 (5th Cir. 2007) ................................................................................... 13

*Reeb v. Ohio Dep't of Rehab. & Corr.*,
   435 F.3d 639 (6th Cir. 2006) ................................................................................... 12

*Robinson v. Tex. Auto. Dealers Ass'n*,
   387 F.3d 416 (5th Cir. 2004) ..................................................................................... 5

*United States v. Perales-Perez*,
   828 F. App'x 208 (5th Cir. 2020)........................................................................ 6

*United States v. Stevens*,
   487 F.3d 232 (5th Cir. 2007) ............................................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................. *passim*

*Ward v. Hellerstedt*,
   753 F. App'x 236 (5th Cir. 2018) .................................................................. 5, 7

*Yates v. Collier*,
   868 F.3d 354 (5th Cir. 2017) ............................................................................. 7

**STATUTES**

7 U.S.C. § 2204i.................................................................................................... 9

7 U.S.C. § 2279......................................................................................... *passim*

42 U.S.C. § 2000d................................................................................................ 3

42 U.S.C. § 2000d-4a........................................................................................... 5

American Rescue Plan Act of 2021
   Pub. L. No. 117-2, 135 Stat. 4 ...................................................................... 1, 2

**RULES**

Fed. R. Civ. P. 23 ...................................................................................... 5, 13, 14

**REGULATIONS**

Outreach & Assistance for Socially Disadvantaged Farmers and Ranchers Program,
   66 Fed. Reg. 21,617-01 (Apr. 30, 2001).......................................................... 3

Livestock Indemnity Program and General Provisions for Supplemental Agricultural
   Disaster Assistance Programs,
   74 Fed. Reg. 31,567 (July 2, 2009)................................................................. 3

Conservation Reserve Program; Transition Incentives Program,
   75 Fed. Reg. 27,165 (May 14, 2010) ............................................................... 3

Notice of Funds Availability, American Rescue Plan Act of 2021 Section 1005 Loan
   Payment (ARPA),
   86 Fed. Reg. 28,329-01 (May 26, 2021)....................................................... 3, 8

**UNITED STATES CONSTITUTION**

U.S. Const. Amdt. V ........................................................................................................... 4

**OTHER AUTHORITIES**

1 William B. Rubenstein, *Newberg on Class Actions* § 3:1 (5th ed. 2011).................................. 15

167 Cong. Rec. H765 (daily ed. Feb. 26, 2021) ........................................................... 2

167 Cong. Rec. H1196 (daily ed. Mar. 10, 2021).......................................................... 2

167 Cong. Rec. S.1219 (daily ed. Mar. 5, 2021) .......................................................... 2

American Rescue Plan Act of 2021,
   H.R. Rep. No. 117-7 ................................................................................................. 2

S.218, 117th Cong. (2021).............................................................................................. 2

## INTRODUCTION

Section 1005 of the American Rescue Plan Act of 2021 authorizes the Department of Agriculture (USDA) to make debt payments to certain USDA loan recipients who, among other requirements, meet the statutory definition of a "socially disadvantaged farmer or rancher" (SDFR) and are members of a "socially disadvantaged group" (SDG). *See* American Rescue Plan Act of 2021, § 1005, Pub. L. 117-2, 135 Stat. 4 (2021) (cross referencing 7 U.S.C. §§ 2279(a)(5), (a)(6)). Plaintiffs—several Texas farmers or ranchers—assert that they are excluded from the statutory definition of SDG as USDA has interpreted it. Plaintiffs seek to certify two classes under Rule 23(b)(2). But Plaintiffs' meager briefing utterly fails to satisfy their burden to prove that class certification is warranted. Indeed, each of the two classes fails to satisfy at least three of the requirements of Rule 23(a)—commonality of the class claims, typicality of the named plaintiffs' claims, and adequacy of representation. These defects stem from Plaintiffs' failure to grapple with the nature of their own claims, which necessarily turn on their specific factual circumstances, and which seek relief that would operate to the detriment of proposed class members. The proposed classes also fail to meet the requirements of Rule 23(b)(2) both because USDA has not acted or failed to act on terms generally applicable to the proposed classes and also because the relief Plaintiffs seek would not provide relief to each member of the class. Nor are the proposed classes adequately defined, such that their members can be ascertained. Finally, the broad classes include large numbers of individuals that have suffered and will suffer no injury caused by the challenged conduct, raising serious questions under Article III.

## BACKGROUND

In March 2021, Congress passed ARPA, which provides widespread pandemic relief to the American people, including farmers. *See* Pub. L. No. 117-2 (2021). ARPA "takes a multipronged

approach to tackle the public health and economic crises resulting from the COVID-19 pandemic." American Rescue Plan Act of 2021, H.R. Rep. No. 117-7, 3 (2021). The House Report accompanying the bill shows that Congress was focused on the "most vulnerable communities . . . forced to bear the brunt of" the pandemic and resultant economic crisis "as underlying health and economic inequities grow worse." *Id.* at 2. Among those communities were minority farmers who had "received a disproportionately small share of the farm loans and payments administered by USDA as a result of . . . longstanding and widespread discrimination." *Id.* at 12.

As part of ARPA, Congress passed § 1005, which was designed to "provide targeted and tailored support for . . . farmers," 167 Cong. Rec. H765, H765 (daily ed. Feb. 26, 2021) (Statement of Rep. Scott), who "have for many decades suffered discrimination by [USDA]," 167 Cong. Rec. S.1219, S1265 (daily ed. Mar. 5, 2021) (Statement of Sen. Booker), and who had not benefited from prior pandemic relief efforts, *see* 167 Cong. Rec. H1196, H1273 (daily ed. Mar. 10, 2021 (Statement of Rep. Neal) (explaining that Black farmers were not targeted by other COVID-19 legislation); *see also* S1264-65 ("Congress includes these measures to address the longstanding and widespread systemic discrimination within the USDA, particularly within the loan programs, against [SDFRs].") (Statement of Sen. Stabenow); S.218, 117th Cong., S.278, Sec. 4, ¶ (a)(1)-(2) (2021) (stating that its purpose was "to address the historical discrimination against [SDFRs] and . . . issues relating to . . . COVID–19 . . . in [the] farm loan programs[] and across the [USDA]").

Section 1005 authorizes funds to pay up to 120 percent of certain direct or guaranteed USDA farm loans held by "socially disadvantaged farmers or ranchers" and outstanding as of January 1, 2021. *See* § 1005. For purposes of § 1005, Congress gave the term "socially disadvantaged farmer or rancher" the same meaning as in Section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990, codified at 7 U.S.C. § 2279(a). *See id.* § 1005(b)(3). That

provision defines a "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group," 7 U.S.C. § 2279(a)(5), which is further defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," *id.* § 2279(a)(6). USDA has long interpreted "socially disadvantaged group[s]" to include the following five groups: American Indians or Alaskan Natives; Asians; Blacks or African Americans; Hispanics or Latinos; and Native Hawaiians or other Pacific Islanders. *See* Outreach & Assistance for Socially Disadvantaged Farmers and Ranchers Program, 66 Fed. Reg. 21,617-01 (Apr. 30, 2001) (interpreting 7 U.S.C. § 2279 to include those groups for purposes of Outreach and Assistance for SDFRs Program); Livestock Indemnity Program and General Provisions for Supplemental Agricultural Disaster Assistance Programs, 74 Fed. Reg. 31,567, 31,571 (July 2, 2009) (same for Risk Management Purchase Waiver); Conservation Reserve Program; Transition Incentives Program, 75 Fed. Reg. 27,165 (May 14, 2010) (same for Conservation Reserve Program). USDA confirmed in a Notice of Funds Availability that SDGs would continue to "include, but are not limited to," those same five groups, while others could be considered for inclusion on a case-by-case basis by the Secretary in response to a written request with a supporting explanation. *See* Notice of Funds Availability, American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed. Reg. 28,329-01, 28,330 (May 26, 2021).

Plaintiffs have brought this putative class action lawsuit to challenge both the scope of eligibility for the § 1005 debt relief program and the statutory definition of "socially disadvantaged farmer or rancher." Pls.' First Am. Class-Action Compl. (FAC), ECF No. 11, ¶¶ 26-39. Plaintiffs contend that the use of the SDG designation to determine eligibility for debt relief under § 1005 violates Title VI, 42 U.S.C. § 2000d, and the equal protection component of the Fifth Amendment,

U.S. Const. Amdt. V; *see Bolling v. Sharpe*, 347 U.S. 497 (1954). *See, e.g.*, FAC ¶¶ 26-30. Plaintiffs also contend that the statutory definition of SDG must be interpreted to include additional groups beyond those already recognized by USDA, FAC ¶¶ 31-33, and to prohibit the use of a "blood-quantum threshold" to determine SDG membership, FAC ¶¶ 34-39.

Plaintiffs have also moved under Federal Rule of Civil Procedure 23(b)(2) to certify two classes for these challenges. Motion for Class Certification ("Motion"), ECF No. 12. "The first proposed class" would "consist[] of all farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act." *Id.* at 1 (internal quotation marks omitted). "The second proposed class" would "consist[] of all farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)-(6)[,] and as interpreted by the Department of Agriculture." *Id.* (internal quotation marks omitted). Defendant now opposes certification of either class.

## ARGUMENT

Class actions are an exception to the ordinary course of American legal practice. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011); *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). A putative class representative may litigate the class's claims only if he is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *Wal-Mart*, 564 U.S. at 348-49 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). To obtain certification of a non-opt-out class under Rule 23(b)(2), as Plaintiffs seek, they must show that an ascertainable class exists and also meet the requirements of both Rule 23(a) and 23(b)(2): (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) that Defendant

has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(a), (b)(2); *see John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

"To make a determination on class certification, a district court must conduct an intense factual investigation." *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004). The plaintiff bears the burden to prove that these requirements have been met, and its offer of proof is subject to "rigorous analysis" in light of the "claims, defenses, relevant facts, and applicable substantive law." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (vacating class certification); *see also Ward v. Hellerstedt*, 753 F. App'x 236, 246 (5th Cir. 2018) (vacating class certification when district court failed adequately "to consider and discuss the facts of this case, as well as the elements of Plaintiffs' claims, prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality").

## I.     Plaintiffs' boilerplate motion is inadequate to support class certification.

A party seeking class certification bears a heavy burden to prove—not merely assert—that each requirement is met. *See Wal-Mart*, 564 U.S. at 350-51. A court assessing such a motion must perform a "rigorous analysis" of the substantive law, *M.D. ex rel. Stukenberg*, 675 F.3d at 842, and also "an intense factual investigation," *Robinson*, 387 F.3d at 420. Plaintiffs' bare six-page motion utterly fails to engage in the required analysis. As to commonality, for example, Plaintiffs do not engage with the century-plus of equal protection law or the reticulated doctrine surrounding such claims. They do nothing more than mention Title VI, much less acknowledge that, by its terms, Title VI does not apply to programs conducted directly by federal agencies. *See* 42 U.S.C. § 2000d-4a; *see also, e.g.*, *Flowers v. Brown*, Civ. A. No. 1:17-cv-460, 2021 WL 1143783, at *4 (E.D. Tex. Mar. 5, 2021)  ("Courts have routinely held that [Title VI] does not apply to federal agencies administering their own funds."), *report and recommendation adopted*, 2021 WL

1134272 (E.D. Tex. Mar. 23, 2021). Instead, Plaintiffs simply assert that commonality is satisfied because each member "is subject to discrimination on account of their race, as each of them is excluded from the definition of 'socially disadvantaged farmers or ranchers' because they are white." Br. in Supp. of Mot. for Class Certification, at 3, ECF No. 13 (Pls.' Mem.); *see also id.* at 4 (similar for typicality). Plaintiffs do not so much as identify the elements of either their claims or those of the class members, much less demonstrate with appropriate "rigor" that commonality is satisfied for each class they seek to certify. And as to adequacy, Plaintiffs simply assert without development that "[t]here is no conceivable conflict of interest that could arise." *Id.* at 5. As demonstrated below, *see infra* section II.C, there are many such conflicts. Plaintiffs' failure even to identify such obvious conflicts, and their denial that any such conflicts could even "conceivabl[y]" exist, reinforces that Plaintiffs have simply not met their burden in seeking class certification.

Arguments as underdeveloped as Plaintiffs' deprive both the opposing party of the opportunity to meaningfully respond and the Court of the information necessary to conduct the required analysis. *E.g.*, *United States v. Perales-Perez*, 828 F. App'x 208 (5th Cir. 2020) (rejecting argument that "is purely conclusory, unsupported by record citations, and essentially unbriefed"); *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007) ("Inadequately briefed issues are deemed abandoned."). Plaintiffs bear the burden to prove class certification is warranted. Their boiler-plate briefing is inadequate to the task. *See, e.g.*, *Finley v. Wash. Mut. Bank, F.A.*, No. 4:07cv225, 2008 WL 2008850, at *1 (E.D. Tex. May 8, 2008) (denying class certification when "motion is rather brief, attaches no evidence in support of his arguments, and is, on the whole, conclusory in nature"). "Courts are not expected to fashion even a *pro se* litigant's arguments for

it, much less one represented by counsel." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 298 F. Supp. 3d 834, 852 (W.D. Va. 2018), *aff'd*, 917 F.3d 206 (4th Cir. 2019).

## II.     Plaintiffs have not satisfied the requirements of Rule 23(a) with respect to either class.

Plaintiffs contend that the Court should certify two classes: one of farmers and ranchers "who are encountering, or who will encounter, racial discrimination . . . on account of section 1005," Motion at 1, and a second of farmers or ranchers "who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,'" *id.* Each class Plaintiffs propose fails to satisfy the requirements to warrant class certification.

### A.   Plaintiffs have not demonstrated commonality.

"[W]hat is significant with respect to a commonality determination is 'not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Ward*, 753 F. App'x at 245 (quoting *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017)). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350 (citation omitted). Here, commonality is lacking because resolving the claims Plaintiffs raise would not generate common answers to the putative class members' own claims.

First, there is no common legal question between the distinct claims Plaintiffs pursue, so there cannot be commonality. *See Wal-Mart*, 564 U.S. at 350. Claim 2 seeks to expand the list of SDGs eligible for § 1005 debt relief to include "Irish, Italians, Germans, Jews, and eastern Europeans," and Claim 3 seeks a declaration that any "individuals who have any discernable trace of minority ancestry" are eligible under the existing list of SDGs. FAC ¶¶ 31-39. Claim 1 seeks to prohibit USDA from using the SDG designation at all. FAC ¶¶ 26-30. The legal contentions and factual arguments that would support these claims are completely different, and their outcomes are

7

not linked. The putative members of the two classes are likely to pursue claims under only one theory or the other. A ruling in Plaintiffs' favor on Claim 3,[1] for example, will have exactly zero impact on the claims of class members who do not assert "any traceable amount of minority ancestry," much less provide a "common answer" that "drive[s] the resolution" of their claims. Indeed, there is not even commonality within the named class representatives: Only one Plaintiff has asserted any membership in any particular group. Plaintiff Sid Miller alleges that he is "primarily Scotch-Irish" and also that he has "approximately 2% black ancestry." FAC ¶ 19. No other Plaintiff asserts any membership in any group other than "white," or any specific ancestry. *See id.* ¶¶ 20-23; *see also* Decl. of Greg Macha, ECF No. 18-4; Decl. of James B. Meek, ECF No. 18-5; Decl. of Jeff W. Peters, ECF No. 18-6; Decl. of Lorinda O'Shaughnessy, ECF No. 18-7.

Second, the differences between the racial and ethnic backgrounds of the proposed classes' members also preclude commonality. "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" *See M.D. ex rel. Stukenberg*, 675 F.3d at 840 (quoting *Wal–Mart,* 564 U.S. at 350) (emphasis and alteration by Fifth Circuit). To prevail on Claim 2, a plaintiff would have to show that a previously unrecognized ethnic and racial group qualifies under the definition of SDG. *See* 86 Fed. Reg. at 28,330; 7 U.S.C. § 2279(a)(6). That definition extends the designation to groups "whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6). The proof required to show a history of discrimination would be entirely distinct from group to group. If Plaintiffs succeed in

---

[1] Moreover, Plaintiffs' Claim 3 is wholly without any factual basis, as USDA does not use any sort of "blood quantum" to determine membership in a SDG. Indeed, the Notice of Funding Availability expressly indicates that SDG status is determined by the applicant's self-reported membership "as reflected on FSA records at the time payment is made." 86 Fed. Reg. at 28,330.

demonstrating that farmers and ranchers with "Scotch-Irish" ancestry qualify as an SDG, for example, it will not remotely answer whether farmers and ranchers with Italian ancestry also qualify. Rather, "the merits of each class member's . . . claims depend on an individualized inquiry" regarding that member's specific group and the history of discrimination toward that group, and so the "'dissimilarities within the proposed class' would appear to prevent the class claims from asserting a common question of law that 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *M.D. ex rel. Stukenberg*, 675 F.3d at 843 (quoting *Wal-Mart*, 564 U.S. at 350)).

Third, and similarly, Plaintiffs lack sufficient commonality for claims challenging the use of the SDG definition in administering distinct USDA programs. The definition of "socially disadvantaged farmer or rancher" is used in many USDA programs. *See, e.g.*, 7 U.S.C. § 2204i(a) (requiring the Secretary of Agriculture to produce a report that includes information on socially disadvantaged farmers and ranchers). But the justifications for use of the statutory definition will involve separate showings for each program. A race-based policy must be narrowly tailored to serve a compelling government interest, such as remedying past discrimination. *See Grutter v. Bollinger*, 539 U.S. 306, 326-27 (2003); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 225 (1995). Whether the consideration of race in administering a particular program is constitutionally permissible requires close analysis of both the manner in which the government uses race in that context and the reasons supporting that use in that context. Plaintiffs have made no allegation concerning any USDA program other than the debt relief program authorized by § 1005; whether the use of race in administering that program is permissible is an entirely distinct question from whether it is valid in administering any other program, and will require entirely separate analysis. These kinds of extensive individualized determinations undercut any claim to commonality and

9

mean that there is no "common *answer*[] apt to drive the resolution of the litigation," as required

for commonality. *Wal-Mart*, 564 U.S. at 350 (citation omitted); *see also M.D. ex rel. Stukenberg*,

675 F.3d at 843.

Plaintiffs therefore cannot demonstrate commonality for the proposed class.

B.  Plaintiffs fail to establish that their claims are typical of either proposed class.

For related reasons, Plaintiffs cannot satisfy the typicality requirement of Rule 23(a).

Typicality and commonality "tend to merge," and both ultimately address "whether under the

particular circumstances maintenance of a class action is economical and whether the named

plaintiff's claim[s] and the class claim[s] are so interrelated that the interests of the class members

will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982)); *see also Flecha v. Medicredit,*

*Inc.*, 946 F.3d 762, 768 (5th Cir. 2020).

Only one Plaintiff has asserted any membership in any particular group. Plaintiff Sid

Miller[2] alleges that he is "primarily Scotch-Irish" and also that he has "approximately 2% black

ancestry." FAC ¶ 19. No other Plaintiff asserts any membership in any group other than "white,"

or any specific ancestry. *See id.* ¶¶ 20-23; *see also* Decl. of Greg Macha, ECF No. 18-4; Decl. of

James B. Meek, ECF No. 18-5; Decl. of Jeff W. Peters, ECF No. 18-6; Decl. of Lorinda

O'Shaughnessy, ECF No. 18-7. Without evidence that these Plaintiffs belong to a particular group

within the scope of Claims 2 or 3, they would not receive any redress from prevailing on those

claims and therefore lack standing to assert those claims. *See Lujan v. Defs. of Wildlife*, 504 U.S.

---

[2] Plaintiffs do not contend that Mr. Miller should be a representative plaintiff for the first class who "encounter[] . . . racial discrimination . . . on account of section 1005," presumably because Mr. Miller does not have a loan guaranteed by the FSA that would be eligible for relief. *See* FAC ¶ 19. It less clear whether Plaintiffs believe Mr. Miller would nonetheless be a member of the proposed class. *See infra* section IV (discussing ascertainability).

555, 560 (1992) (redressability necessary for standing). There is no allegation, much less evidence, that these purportedly representative plaintiffs are even situated to pursue either Claim 2 or Claim 3 even on their own behalf. They certainly cannot establish that whatever claims they might pursue in that regard are typical of the absent class members' claims, which will turn on each class member's specific characteristics. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) ("[T]he critical inquiry [for typicality] is whether the class representative's claims have the same essential characteristics of those of the putative class." (quoting *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001))).

And even as to Plaintiff Miller, proceeding on a class basis would not be economical because each potential class member who asserts that he or she is a member of an unrecognized SDG will have to litigate that group's history of discrimination. Any claims Mr. Miller might make with regard to inclusion of "Scotch-Irish" as a SDG will be entirely distinct from those class members who belong to some other racial or ethnic group. Moreover, Mr. Miller lacks standing to bring *any* claim: there is not so much as an allegation that he has been denied any benefit because of USDA's use of the SDG definition, and he evidently lacks any USDA loans that would be eligible for relief under § 1005. Even Mr. Miller, then, cannot satisfy the typicality requirement to pursue a class action.

Finally, as explained above, Plaintiffs' allegations concern only administration of the § 1005 debt relief program. Any challenge to that program is atypical of a putative class member's challenge to some other program, as such challenges will require distinct analysis of the particular program in light of the applicable legal standard.

11

C.  The named Plaintiffs' claims are in inherent conflict with the interests of the proposed
classes.

The relief Plaintiffs seek in this lawsuit presents an irreconcilable conflict with the class

members they hope to represent, and so Plaintiffs therefore do not satisfy the adequacy requirement

of Rule 23. Plaintiffs seek to prohibit USDA from using the SDG definition in administering any

of its programs, but seek to represent members who might benefit from programs relying on that

definition. Classes certified under Rule 23(b)(2), as Plaintiffs propose, are mandatory—any and

every person within the class will be bound by this Court's judgment without the opportunity to

opt-out, either before or after judgment. *See, e.g.*, *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d

639, 645 (6th Cir. 2006) ("Rule 23(b)(2) authorize[s] 'mandatory' class actions under which

potential class members do not have an automatic right to notice or a right to opt out of the class.");

*Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 (5th Cir. 1981) ("[I]t is clear that the

Federal Rules do not provide objectors a right to opt out of class actions brought under Rule

23(b)(2)."). As the Fifth Circuit has observed, "the existence of a class fundamentally alters the

rights of present and absent members, particularly for mandatory classes such as the one here."

*Chavez v. Plan Benefit Servs. Inc.*, 957 F.3d 542, 547 (5th Cir. 2020). Accordingly, before a Rule

23(b)(2) class can be certified, the Court must rigorously examine whether the proposed class

representatives will adequately represent the interests of the absent class members. *See, e.g.*,

*Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001). This inquiry "serves to

uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Id.*

(quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997)).

The conflicts of interest here are clear. Plaintiffs contend that the USDA uses the definition

of SDG to the benefit of those within its ambit, while excluding others from those benefits. As

relief, they seek to compel an interpretation of SDG that includes certain additional groups—thus

conferring the benefits of SDG membership on members of those additional groups—or to prohibit USDA from using the SDG definition at all—thus denying the benefits of SDG membership to those additional groups. Plaintiffs seek to represent class members who may be "Irish, Italians, Germans, Jews, [or] eastern Europeans," FAC ¶ 31, for example, and who might benefit from inclusion in the definition of SDG if they can demonstrate that members of that particular group "have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," 7 U.S.C. § 2279(a)(6). And yet Plaintiffs seek, as their primary relief, to deny these class members the benefit of the SDG designation by prohibiting USDA from using that definition at all. Plaintiffs' interests are therefore not aligned with those of the class they seek to represent, and they therefore cannot adequately represent the class members.

### III.   Plaintiffs do not meet the requirements of Rule 23(b)(2).

Plaintiffs seek a mandatory class under Rule 23(b)(2). Certification under Rule 23(b)(2) is permitted only when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Fifth Circuit has explained, "this rule seeks to redress what are really group as opposed to individual injuries," thus "render[ing] the notice and opt-out provisions of (b)(3) unnecessary." *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (quoting *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 n.22 (5th Cir. 2000)). Certification under this provision is permissible "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart.*, 564 U.S. at 360. And the relief sought "must be specific." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007).

Plaintiffs cannot satisfy these requirements. First, USDA has not "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Plaintiffs do not allege that

USDA has denied any request by any Plaintiff for debt relief under § 1005—USDA has not "acted or refused to act" *at all* with respect to these Plaintiffs' eligibility under § 1005. To be sure, Plaintiffs allege that they are not within the groups identified in the Notice of Funds Availability, but that notice expressly offers members of other groups an opportunity to seek inclusion of those groups by submitting a written request with supporting explanation; the Secretary will consider such requests on a case-by-case basis with regard to the specific racial or ethnic group. Even had the Secretary denied inclusion to a specific ethnic group of which Plaintiffs were members, that decision would not "apply generally" to others within the putative class but outside the specific ethnic group. Because the grounds for such decision would vary from group to group, Plaintiffs cannot satisfy Rule 23(b)(2)'s first requirement.

Nor can Plaintiffs satisfy the separate requirement that the proposed declaratory judgment be "appropriate," Fed. R. Civ. P. 23(b)(2), by providing "relief to each member of the class," *Wal-Mart*, 564 U.S. at 360. Plaintiffs seek three forms of relief. The first, a declaration that broadly prohibits use of the SDG designation, FAC ¶¶ 29-30, would not provide relief *at all* to those class members whose groups are not currently recognized SDGs but who seek recognition. The second, a declaration that the statutory term SDG "must be construed, as a matter of statutory interpretation, to include ethnic groups of all types that have been subjected to racial and ethnic prejudice, including (but not limited to) Irish, Italians, Germans, Jews, and eastern Europeans," FAC ¶ 31, would not provide relief to class members not within the listed groups.[3] The third, a declaration that the statute "must be construed, as a matter of statutory interpretation, to include

---

[3] Moreover, except for Plaintiff Miller, Plaintiffs have not alleged membership in any of these groups. FAC ¶¶ 19-23. And Mr. Miller alleges only that he is "Scotch-Irish"—not Italian, German, Jewish, or Eastern European. *Id.* ¶ 19.

individuals who have any discernible trace of minority ancestry," FAC ¶ 34, would not provide relief to any class member without "any discernible trace of minority ancestry."[4] *Id.*

The relief Plaintiffs seek, even setting aside whether they have standing to seek it, would not provide "relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. And Defendant has not "acted or refused to act" on grounds generally applicable to the class. Plaintiffs therefore fail to satisfy Rule 23(b)(2)'s requirements.

## IV.    Plaintiffs have not identified an ascertainable class.

The Fifth Circuit requires that, "to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam); *see also John*, 501 F.3d at 445 ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). "An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)." *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012). This requirement of a definable and ascertainable class protects absent plaintiffs "by defining who is entitled to relief" and protects defendants "by enabling a final judgment that clearly identifies who is bound by it." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 679 (N.D. Ga. 2016) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:1 (5th ed. 2011)).

Neither proposed class is adequately defined or clearly ascertainable. As to the first proposed class—"all farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act"—the phrase "encountering . . . racial

---

[4] Indeed, this remedy would provide relief to *no* party because USDA has not set any minimum threshold of minority ancestry when determining eligibility.

discrimination" has such an uncertain scope that it precludes ascertainability. *See John*, 501 F.3d at 445 n.3 ("[A] class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" (citation omitted)); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam). It is unclear whether it would include, for example, a Pacific Islander who contends that the program documents are not available in her language; an Alaskan Native who contends the program offices are inaccessible in his region; or a Latino farmer who contends that program administrators denied him relief because of his ethnicity, even though he falls within the definition of SDG. These scenarios clearly do not involve the kind of conduct Plaintiffs challenge, and yet are arguably within the class.

Plaintiffs' second proposed class—"all farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)-(6)[,] and as interpreted by the Department of Agriculture"—fares no better. That class is not limited to those who have suffered any injury as a result of the fact that they do not fall within the definition of a "socially disadvantaged farmer or rancher." Many farmers and ranchers do not want or seek benefits from USDA. Others—like Mr. Miller appears to be with regard to § 1005—are ineligible for programs without regard to their SDG status. Without tying the scope of the proposed class to some ascertainable concrete impact, Plaintiffs have identified a putative class so overly broad that it cannot be certified. *See Camp v. Allstate Ins. Co.*, 100 F.3d 953 (5th Cir. 1996) (unpublished) (affirming dismissal of complaint seeking certification of class including members who "might" be injured, due to lack of standing); *Lee v. Am. Airlines, Inc.*, Civ. A. No. 3:01-CV-1179-P, 2002 WL 31230803, at *4 (N.D. Tex. Sept. 30, 2002) (explaining that "the class must not be defined so broadly that it encompasses individuals who have little

connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative").

Even a class definition that actually tracked the allegations in the FAC would be insufficient for certification. Claim 2 seeks to expand the scope of SDGs to include racial and ethnic groups that allegedly meet the definition of SDGs but are not yet recognized as such. However, other than alleging as examples the "Irish, Italians, Germans, Jews, and eastern Europeans," Plaintiffs provide no criteria by which the Court could determine who belongs to these purported SDGs. *See* FAC ¶¶ 16, 31-33. A class definition based on Claim 3 would fare no better. That claim seeks relief for any "individuals who have any discernable trace of minority ancestry." *Id.* ¶ 34; *see also id.* ¶¶ 34-39. Plaintiffs never explain what counts as a "discernable trace" or define which groups constitute a "minority." Plaintiffs' use of those terms is so vague that they are meaningless and therefore useless in ascertaining class membership. *See Conrad*, 283 F.R.D. at 328.

## V.    Plaintiffs' proposed classes do not satisfy Article III.

Even if the Court were to conclude that one or both of Plaintiffs' proposed classes satisfies Rule 23, it must then confront the failure of the proposed class to satisfy Article III. *See Flecha*, 946 F.3d at 768-69 (noting that courts should address Article III questions related to a class only after concluding the class satisfies Rule 23). *But see id.* at 770 (Oldham, J., concurring) (observing that this sequencing rule rests on since-abandoned principles of law and that a class action cannot proceed if "[c]ountless unnamed class members lack standing") (citation omitted).

"[N]o class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006). Plaintiffs claim standing, in their own right, based on their alleged exclusion from debt relief under § 1005 that they would be eligible for but for the SDG requirement. But many members of the proposed classes—such as Mr. Miller

17

appears to be—would be ineligible for wholly unrelated reasons, and therefore will get no redress from the relief sought. Plaintiffs' second proposed class, in particular, suffers this problem. That class includes "all farmers and ranchers" who "are currently excluded from the definition of 'socially disadvantaged farmer or rancher'"—but there is no indication whether or how many of these farmers and ranchers suffer injury from their exclusion from the scope of SDGs. Many such class members may never be eligible for any program that uses the SDG designation without regard to that designation; such class members plainly lack standing. Still others may reject government assistance as a matter of principle, without regard to their SDG designation. These class members, too, would plainly lack standing. Article III therefore precludes adjudication of the class claims. [5]

## CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification.

---

[5] The Fifth Circuit has not definitively resolved whether the standing of absent class members presents an Article III problem (as in the Second Circuit) or only a Rule 23 problem. *See Flecha*, 946 F.3d at 769; *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014). Regardless, the fact that such a large percentage of the proposed classes have no claim at all demonstrates in stark terms that the class members do not suffer the "same injury" or have the same contentions. It also underscores the problems with ascertainability described in section IV.

Dated: June 11, 2021                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        LESLEY FARBY
                                        Assistant Branch Director
                                        Civil Division, Federal Programs Branch

                                         /s/ *Michael F. Knapp*
                                        EMILY SUE NEWTON (VA Bar No. 80745)
                                        Senior Trial Counsel
                                        KYLA M. SNOW (Ohio Bar No. 96662)
                                        MICHAEL F. KNAPP (CA Bar. No. 314104)
                                        Trial Attorneys
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW Room 12008
                                        Washington, D.C. 20530
                                        (202) 514-2071 (telephone)
                                        (202) 616-8470 (facsimile)
                                        Michael.F.Knapp@usdoj.gov

                                        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

On June 11, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

*/s/ Michael F. Knapp*
Michael F. Knapp