**PROPOSED _AMICUS_ BRIEF OF THE NATIONAL BLACK FARMERS ASSOCIATION AND THE ASSOCIATION OF AMERICAN INDIAN FARMERS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

The National Black Farmers Association (NBFA) and the Association of American Indian Farmers (AAIF) are non-profit, membership-based organizations that advocate for the interests of Black and Native American farmers and ranchers, respectively. Exh. 1, Decl. of J. Boyd ("J. Boyd Decl.") ¶ 3; Exh. 2, Decl. of K. Boyd ("K. Boyd Decl.") ¶ 3. NBFA and AAIF have a substantial interest in this case because they have both advocated at length for the debt relief provisions in Section 1005 of the American Rescue Plan Act (the "Act") that Plaintiff seeks to preliminarily enjoin, and because many of their members are eligible for the law's loan forgiveness provisions. _See_ Boyd. Decl. ¶ 5; K. Boyd Decl. ¶¶ 7-8. NBFA and AAIF submit this _amicus_ brief to ensure that the voices of the farmers and ranchers who are actually affected by Section 1005 are heard as the Court balances the equities and the public interest in entertaining Plaintiff's request to enjoin the law nationwide. Those interests tilt the balance decidedly against granting the extraordinary relief requested.

Whether to grant a preliminary injunction is "often dependent as much on the equities of a given case as the substance of the legal issues it presents." _Trump v. Int'l Refugee Assistance Project_, 137 S. Ct. 2080, 2087 (2017). This requires a court "to explore the relative harms to applicant and respondent, as well as the interests of the public at large." _Id._

Therefore, in considering Plaintiff's request, the Court must weigh how an injunction would impact the socially disadvantaged farmers and ranchers who relied on the Government's representation that they would receive loan relief. NFBA and AAIF's members establish that financially vulnerable farmers and ranchers made plans based on their expectation that they would receive debt forgiveness based on the Government's legislation. Thus, in the event of an injunction,

unlike Plaintiff, they would suffer real and palpable harms, tilting the balancing decidedly against such relief.

NBFA member Ivan Isidore Williams, for instance, is a 60-year-old African-American farmer who grows soybeans and corn on over 65 acres in his hometown of Beulaville, NC (population 1,296)—where his family has farmed for generations. Exh. 3, Decl. of Ivan Isidore Williams ("Williams Decl.") ¶ 1. Mr. Williams works second jobs to make ends meet and presently works a manufacturing job at a fiber optic plant. *Id.* ¶ 4. Mr. Williams took out a USDA loan around the year 2000 to purchase farm equipment and fund operating expenses for his farm. *Id.* ¶ 5. He has personally experienced racial discrimination from USDA representatives, who discouraged him in the past from applying for additional loans because of his outstanding balance—even though Mr. Williams is aware that white farmers in his area have routinely been able to take out additional USDA loans notwithstanding existing loan balances. *Id.* ¶ 8. Mr. Williams currently carries an outstanding balance on his loan and while he has generally made payments in a timely manner, he has been threatened with foreclosure by USDA when he has been late. *Id.* ¶ 7. Recently, Mr. Williams asked his local USDA representative about the Act's loan forgiveness provisions—and the representative confirmed that his outstanding debt would be forgiven. *Id.* ¶ 10. As a result, Mr. Williams has looked forward to repurposing money that would have been used to make his annual loan payment on other important life expenses, such as his mortgage payment on his residential home. *Id.* ¶ 10.

NBFA member Shade Lewis is similarly situated. Mr. Lewis is a 30-year-old, first-generation African-American rancher who took out a USDA loan in 2014 to purchase a cattle farm in his hometown of La Grange, MO (population 958), where he currently raises between 100-200 heads of cattle on 100 acres of land. Exh. 4, Decl. of Shade Lewis ("Lewis Decl.") ¶¶ 2-3, 6. Mr.

4

Lewis spent years building up his ranching experience and credit to pursue this goal. *Id.* ¶ 4. Like Mr. Williams, Mr. Lewis works a second job so he can maintain his ranch due to the unpredictability of the ranching business. *Id.* Despite these efforts, Mr. Lewis has been late on certain loan payments and as a result, he has also received warnings from USDA threatening foreclosure on his property. *Id.* ¶¶ 7, 9. When Mr. Lewis learned about the passage of Section 1005, he immediately accounted for how the law would affect his financial situation. *Id.* ¶ 10. For example, he invested time and effort exploring how loan forgiveness would allow debt he has incurred for purchasing livestock. *Id.* ¶ 10.

Plaintiff's request for a nationwide injunction would therefore harm socially disadvantaged farmers and ranchers like Messrs. Williams and Lewis and undermine the expectations that the Government has established in the months following the Act's passage. Doing so at this moment is particularly disruptive given Section 1005 concerns farm loans. It is presently planting season in many parts of the country, during which farmers and ranchers must stretch their cash and credit in order to ensure their yields and income. *See* Boyd Decl. ¶ 7. Farmers and ranchers who have reasonably relied on the expectations of loan forgiveness set by the Government thus may have already made investments that would be undermined by any injunction.

On the other side of the ledger is an entirely hypothetical harm. Plaintiff's purported harm assumes he is right on the merits and thus, he assumes that the public is served because his argument vindicates his constitutional rights. For Plaintiff, his thought exercise completes the balancing inquiry—but in reality, the Court must consider his request's effect on the lives of real farmers and ranchers who reasonably believed they could rely on enacted Government programs. When those interests are considered, the equities strongly disfavor a preliminary injunction.

**Dated: June 11, 2021**

Respectfully submitted,
HENDLER FLORES LAW, PLLC

Scott M. Hendler
Texas Bar No. 09445500
Rebecca R. Webber
Texas Bar No. 24060805
901 S. MoPac Expy, Bldg. 1, Suite #300
Austin, Texas 78746
Telephone: (512) 439-3200
Facsimile: (512) 439-3201
shendler@hendlerlaw.com
rwebber@hendlerlaw.com

*Counsel for the National Black Farmers
Association and the Association of American
Indian Farmers*

Of Counsel:

PUBLIC JUSTICE, P.C.
Randolph T. Chen*
David Muraskin*
Jessica Culpepper*
1620 L Street NW, Suite 630
Washington, D.C. 20036
Telephone: (202) 797-8600
jculpepper@publicjustice.net
dmuraskin@publicjustice.net
rchen@publicjustice.net

* Motion for *Pro Hac Vice* Admission forthcoming.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on June 11, 2021, which will serve all counsel of record.

*/s/ Scott M. Hendler*
Scott M. Hendler

6

**<u>EXHIBIT 1</u>**

## DECLARATION OF JOHN BOYD, JR.

My name is John Boyd, Jr. I am over the age of 18 and fully competent to make this declaration.

1.      I am the Founder and President of the National Black Farmers Association (NBFA). I am authorized to speak about NBFA's activities as they relate to this matter.

2.      I am a fourth-generation Black farmer who has been farming for over 38 years. I currently farm soybeans, corn, wheat, and hay; I also raise approximately 100 head of beef cattle on farms covering over 1,500 acres in Mecklenburg County, Virginia. I have been farming in Mecklenburg County since 1983.

3.      NBFA is a non-profit, membership-based organization that represents the interests of Black farmers and ranchers. NBFA has over 116,000 members nationwide in 46 states, consisting largely of Black farmers and ranchers. NBFA members vote on the organization's agenda items and resolutions in annual meetings.

4.      A core part of NBFA's mission is promoting education and advocacy regarding civil rights, land retention, access to public and private loans, education and agricultural training, and rural economic development for Black and other small farmers and ranchers.

5.      As part of NBFA's mission and in my capacity as NBFA President, I have for decades advocated for legislation that provides loan forgiveness to Black farmers and ranchers. For example, on July 19, 2019, I testified before Congress on behalf of NBFA, where I described the United States Department of Agriculture's (USDA) history of racial discrimination and called on Congress to "set aside $5 Billion to help address the needs of black and other small scale farmers."[1]

---

[1] Testimony of J. Boyd (Appendix at 77, 79), U.S. House Hr'g re: *Promoting Econ. Growth: Exploring the Impact of Recent Trade Policies on the U.S. Econ.* (June 19, 2019), https://www.congress.gov/116/chrg/CHRG-116hhrg39451/CHRG-116hhrg39451.pdf

6.     NBFA has focused on the issue of loan forgiveness because it remedies how USDA has long discriminated against Black farmers and ranchers in the agency's lending practices. To provide just one example, USDA frequently imposed on Black farmers and ranchers various forms of supervised loan provisions that were rarely imposed on their white counterparts. These provisions restrict how the loan can be spent—for instance, by requiring certain purchases to be approved by a loan officer or limiting the suppliers from whom farm equipment and supplies could be purchased.

7.     These provisions cause significant harm because they lead to frequent delays in the farmers' access to equipment and supplies. Agriculture is a time-sensitive industry—the planting season is narrow, and even minor delays can negatively impact a farmer's crop yields.

8.     USDA's history of discrimination has disproportionately affected Black farmers and ranchers. Due in major part to discriminatory practices such as these, Black farmers and ranchers have faced distinct obstacles to paying off debts held by USDA. Accordingly, NBFA has made loan forgiveness a priority issue in its advocacy efforts.

9.     I have personal experience with USDA's history of discrimination. When I first sought USDA loans to start my own farming business in the 1980s, I was myself subjected to a supervisory loan provision that required me to buy certain supplies from a specific supplier. I also experienced direct racial discrimination, where USDA representatives referred to me using racial slurs. In addition, at the time, Black farmers in my area seeking to apply for USDA loans could only obtain appointments with USDA representatives on a single day of the week, whereas white farmers were not subject to such restrictions.

10.     NBFA's participation in this lawsuit is a key part of its mission to advocate for and defend programs that provide financial assistance and support to Black farmers and ranchers.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____June 8, 2021_____

_____
JOHN BOYD, JR.
Founder & President
National Black Farmers Association

3

**EXHIBIT 2**

## <u>DECLARATION OF KARA BOYD</u>

My name is Kara Boyd. I am over the age of 18 and fully competent to make this declaration.

1.      I am the Founder and President of AAIF. I am authorized to speak about AAIF's activities relating to this matter.

2.      I am a farmer and an enrolled member of the Lumbee Tribe of North Carolina. I co-manage 1,500 acres of a family farm that includes farmland in the towns of Boydton, Baskerville, and Bracey in southern Virginia. On these farms, I grow crops such as hemp and vegetables; I also raise swine, poultry, and goats.

3.      AAIF is non-profit, membership-based organization that represents the interests of Native American farmers. AAIF has over 350 members nationwide, comprised mostly of Native American farmers and ranchers.

4.      AAIF invites its members to vote on the organization's agenda items and resolutions in annual meetings. AAIF members are represented by regional representatives at these meetings, who vote on their constituent members' behalf.

5.      AAIF's mission is focused on providing outreach, advocacy, and technical assistance to Native American farmers and ranchers. AAIF also seeks to promote investment in support of Native American farmers and ranchers.

6.      AAIF's participation in this lawsuit is an integral part of its mission to advocate for and defend programs that provide financial assistance and support to Native American farmers and ranchers.

7.      In my capacity as President of AAIF, I advocated to federal legislators in early 2021 in support of legislation that would provide loan forgiveness to Native American farmers

and ranchers. I also built support for this legislation by networking with other groups that advocate for the interests of Native American farmers.

8.      I am aware that AAIF has members that are eligible for financial benefits under Sections 1005 and 1006 of the American Rescue Plan Act and that they would be injured should this lawsuit enjoin those laws.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on: ___June 8, 2021___            _____
                                            KARA BOYD
                                            Founder & President
                                            Association of American Indian Farmers

2

**EXHIBIT 3**

## <u>DECLARATION OF IVAN ISIDORE WILLIAMS</u>

My name is Ivan Isidore Williams. I am over the age of 18 and fully competent to make this declaration.

1.  I am an African-American farmer who is a member of the National Black Farmers Association (NBFA). I want the NBFA to represent my interests in this lawsuit.

2.  I live in Beulaville, NC, where I was also born and raised. Beulaville is rural town of approximately 1,296 people in the southeastern part of North Carolina.

3.  I operate a farm of over 65 acres in Beulaville, where I grow soybeans and corn. I own some of my land, and also lease a portion of my land. I am a third-generation farmer who has operated this farm for over 40 years. I am 60 years old.

4.  In addition to farming, I typically work a second job to supplement my income. For example, I have worked at a textile plant performing manufacturing work and I have also worked as a meter reader at a utility company. I presently work a manufacturing job at a fiber optic plant.

5.  Around the year 2000, I took out USDA loans in the amount of approximately $40,000. I used the loans for operating expenses and purchasing farm equipment.

6.  As of January 1, 2021, the outstanding balance on my loan was approximately $12,000.

7.  Generally, I have timely made my payments on my loan. However, I have also missed payments or been late on payments due to a variety of factors that affected my farming business, including drought, floods, or other difficulties harvesting my crop. When I have been late on my payments, I have received letters from USDA warning about potential foreclosure on my property.

8.      I believe I have experienced racial discrimination from USDA representatives. For example, in the past, I have attempted to take out additional USDA loans to operate my farm and upgrade my equipment. However, USDA representatives discouraged me from applying for additional loans by telling me I would be ineligible because I already had existing USDA loans. To my knowledge, white farmers in my area have routinely been able to take out additional USDA loans even though they similarly have existing USDA loan balances.

9.      I believe I am eligible for loan forgiveness under Section 1005 of the American Rescue Plan Act because I am a socially disadvantaged farmer who has an outstanding balance on a loan with USDA.

10.     In fact, last month, I received a letter from USDA regarding the issue of loan forgiveness. I then followed up regarding the issue with my local USDA representative, and he informed me that my outstanding balance would be forgiven. When I found out that my loan was going to be forgiven, I looked forward to repurposing money that I would have used to make my annual loan payment toward other important life expenses, such as the mortgage payment on my residential home.

11.     If Section 1005 is enjoined, I would therefore suffer injury.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 06-08-2021                                    By: _____
                                                        IVAN ISIDORE WILLIAMS

**EXHIBIT 4**

DocuSign Envelope ID: B8BC2687-3744-423B-BCDA-F729F35A5EF7

## DECLARATION OF SHADE MARSHALL LEWIS

My name is Shade Marshall Lewis. I am over the age of 18 and fully competent to make this declaration.

1.     I am an African-American rancher who is a member of the National Black Farmers Association (NBFA). I want the NBFA to represent my interests in this lawsuit.

2.     I live in La Grange, MO, a rural town of 958 people in northeast Missouri. I was born and raised in La Grange.

3.     I own and operate a cattle farm in La Grange, where I raise between 100-200 heads of cattle on over 100 acres of land. I have operated my cattle farm since 2014.

4.     In addition to my job as a rancher, I also work a second job conducting maintenance on power transmission lines. I work a second job for financial stability, as the cattle farming business can be unpredictable and vary significantly from year-to-year.

5.     I am 30 years old and a first-generation rancher. Prior to starting my own cattle farm, I spent years building up my ranching experience, as well as the credit necessary to purchase property for a cattle farm. I believe everyone deserves a fair chance at farming, especially beginning farmers.

6.     In 2014, I was able to take out a USDA loan for $300,000. I used this loan to buy the property for my cattle farm.

7.     As of January 1, 2021, the outstanding balance on my loan was approximately $197,000.

8.     My loan has an annual payment term and I have made many payments. However, due to fluctuations in the cattle farming business from year-to-year, I have also missed annual

payments on my loan. As a result of being late on my loan payments, I have received warnings from USDA threatening foreclosure on my property.

9.      I believe I am eligible for loan forgiveness under Section 1005 of the American Rescue Plan Act because I am a socially disadvantaged rancher who has an outstanding balance on a direct farm loan with USDA.

10.     After learning about the passage of Section 1005, I factored the law's debt forgiveness provision into my business plans. For example, I explored how receiving this loan forgiveness would enable me to pay down other loans I have taken out to purchase livestock.

11.     Thus, if Section 1005 is enjoined, I would suffer injury.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in La Grange, MO.

Date: _____      6/8/2021

By: _____

DocuSigned by:

6E7CD79EC5F3463...

SHADE MARSHALL LEWIS

2