UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Sid Miller**, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>**Tom Vilsack**, in his official capacity as Secretary of Agriculture,<br><br>      Defendant. | Case No. 4:21-cv-00595-O |

### REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

## TABLE OF CONTENTS

Table of contents ................................................................................................... i

Table of authorities ............................................................................................... ii

    I.   The plaintiffs' proposed classes satisfy the commonality requirement ........... 2

    II.  The plaintiffs' proposed classes satisfy the typicality requirement ................. 4

    III. There is no conceivable conflict of interest among the class members with respect to Claim 1, the only claim on which the plaintiffs are currently seeking classwide relief ................................................................ 4

    IV. The proposed classes meet the requirements of Rule 23(b)(2) ..................... 4

    V.  The proposed classes are ascertainable ........................................................ 6

    VI. The proposed classes satisfy Article III ....................................................... 8

Conclusion .......................................................................................................... 9

Certificate of service .......................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Barr v. American Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ................................................................................... 5

*Cole v. City of Memphis*,
   839 F.3d 530 (6th Cir. 2016) ......................................................................... 7

*DeBremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) (per curiam) .................................................... 6

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .......................................................................... 9

*Department of Commerce v. New York*,
   139 S. Ct. 2551 (2019) ................................................................................... 8

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) ....................................................................................... 1

*Finch v. New York State Office of Children and Family Services*,
   252 F.R.D. 192 (S.D.N.Y. 2008) ................................................................... 7

*In re Deepwater Horizon*,
   739 F.3d 790, 812 (5th Cir. 2014) .................................................................. 3

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004) ......................................................................... 7

*In re Rodriguez*,
   695 F.3d 360 (5th Cir. 2012) ......................................................................... 8

*John v. National Security Fire & Casualty Co.*,
   501 F.3d 443 (5th Cir. 2007) ......................................................................... 6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020) ................................................................................... 8

*McKenzie v. City of Chicago*,
   118 F.3d 552 (7th Cir. 1997) ......................................................................... 1

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ......................................................................... 8

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) ............................................... 7

*Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) ........................................ 8

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
   547 U.S. 47 (2006) ......................................................................................... 8

*Shelton v. Bledsoe*,
    775 F.3d 554 (3rd Cir. 2015) .................................................................................. 7
*Shook v. El Paso County*,
    386 F.3d 963 (10th Cir. 2004) ................................................................................ 7
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................ 2
*Zepeda v. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) .................................................................................. 1

**Other Authorities**

Vikram David Amar, *How Much Protection Do Injunctions Against Enforcement of Allegedly Unconstitutional Statutes Provide?*, 31 Ford. Urb. L.J. 657 (2004) ............................................................................... 2

Robert G. Bone, *Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres*, 65 U. Kan. L. Rev. 913, 913 (2017) ................................................................................................................. 6

Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017) ....................................................... 1

Richard H. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853 (1991) ............ 1

Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. Kan. L. Rev. 325 (2017) 7

Michael T. Morley, *Nationwide Injunctions, Rule 23(b)(2), and the Remedial Powers of the Lower Courts*, 97 B.U. L. Rev. 615 (2017) ....................... 7

The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act. *See* Mot. for Prelim. Inj. (ECF No. 17) ("The plaintiffs respectfully move for a preliminary injunction to prevent the Department of Agriculture from discriminating on account of race or ethnicity in administering section 1005 of the American Rescue Plan Act."). They are not asking for classwide relief on the second or third claims in their complaint, and they are not seeking a preliminary injunction with respect to those claims. And the Court need not and should not resolve those claims at all if it determines (as it should) that the use of racial criteria in distributing government benefits violates the Constitution.

The plaintiffs are asking for a preliminary injunction that will stop the defendants from enforcing section 1005's unconstitutional racial exclusions against anyone. To obtain this relief, it is appropriate for the plaintiffs to seek and obtain class certification rather than demand a "nationwide injunction," a controversial and widely criticized remedy that is hard to square with Article III and the binding pronouncements of the Supreme Court. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."); *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("[T]he question at issue [is] whether a court may grant relief to non-parties. The right answer is no."); *Zepeda v. I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983) ("[An] injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs."); Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017).[1] The defendants' objections to class certification are meritless and

---

1. *See also* Richard H. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853, 854 (1991) ("[T]he binding effect of the federal judgment extends no further than

largely irrelevant at this stage of the litigation, where the plaintiffs are requesting class-wide relief only with respect to the patently unconstitutional racial exclusions that appear in section 1005's loan-forgiveness program.

## I. THE PLAINTIFFS' PROPOSED CLASSES SATISFY THE COMMONALITY REQUIREMENT

The defendants deny that there is any "common legal question between the distinct claims Plaintiffs pursue,"[2] but that is not the test for commonality. The commonality inquiry has nothing to do with whether there is a common legal question among the different *claims* asserted. It is instead concerned with whether there is a question of law or fact common to the *members of the proposed class. See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) ("The crux of this case is commonality—the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" (quoting Fed. R. Civ. P. 23(a)(2)). And this test is easily satisfied because each of the proposed classes presents at least one question of law common to every class member. For the first class, which consists of farmers and ranchers who are encountering racial discrimination on account of section 1005, the common question is whether the Department of Agriculture can discriminate on account of race when administering a loan-forgiveness program. And for the second class, the common question is whether the government can limit aid of any sort to those who qualify as "socially disadvantaged farmers and ranchers." A single common legal question is all that is needed to satisfy the commonality requirement, and that is exactly what exists

---

the parties to the lawsuit. Against nonparties, the state remains free to lodge criminal prosecutions."); Vikram David Amar, *How Much Protection Do Injunctions Against Enforcement of Allegedly Unconstitutional Statutes Provide?*, 31 Ford. Urb. L.J. 657, 663 (2004) ("All injunctive relief, of course, including preliminary injunctions, binds only the defendants before the court, and applies only to protect the specific plaintiffs who have brought the suit.").

2. Def.'s Br. (ECF No. 28) at 7 ("[T]here is no common legal question between the distinct claims Plaintiffs pursue, so there cannot be commonality.").

here. *See Wal-Mart*, 564 U.S. at 360 ("[E]ven a single [common] question will do." (citation and internal quotation marks omitted)); *In re Deepwater Horizon*, 739 F.3d 790, 812 (5th Cir. 2014) (same).

The defendants complain that the proposed classes cannot satisfy "commonality" with respect to Claims 2 and 3, but that is no reason to deny class certification. As long as there is *one* question of fact or law common to each member of a proposed class, then the commonality requirement is satisfied. And the plaintiffs are not even seeking classwide relief on Claims 2 or 3 at this time. If and when the plaintiffs decide to seek classwide relief on those claims, the defendants can at that time object to classwide relief and insist that the plaintiffs seek certification of a differently defined class that would be appropriate for a classwide resolution of those claims. The defendants cannot invoke these other claims to defeat the plaintiffs' efforts to obtain classwide relief on Claim 1—a claim that is clearly appropriate for classwide relief under the class definitions that the plaintiffs have proposed.

The defendants also complain that their purported "justifications" for limiting relief to "socially disadvantaged farmers and ranchers" will vary from program to program. *See* Def.'s Br. (ECF No. 28) at 9. But that has nothing to do with the commonality inquiry, which asks only whether there is a single question of law and fact common to the members of the proposed classes. The plaintiffs are not at this time seeking classwide relief against any program other than the loan-forgiveness regime in section 1005, and the appropriateness of classwide relief with respect to other programs can be considered if and when the plaintiffs ask for that relief. The plaintiffs will almost certainly propose to certify a different class (with different class representatives) if they decide to seek classwide relief against other Department programs, and the issues of commonality and the appropriateness of classwide relief regarding those programs can be debated at that time. It is no reason to deny class certification and prevent the plaintiffs from seeking *any* classwide relief with respect to section 1005.

## II. The Plaintiffs' Proposed Classes Satisfy The Typicality Requirement

The defendants' objections to typicality are equally off base. As with commonality, they complain about a supposed lack of "typicality" regarding Claims 2 and 3, but those are *not* the claims on which the plaintiffs are seeking classwide relief. And the defendants do not even attempt to argue that the proposed classes lacks "typicality" with respect the legal issues presented in Claim 1. There is no potential for conflicts of interest because the plaintiffs are not seeking classwide relief on Claims 2 or 3 at this time, and they will propose different classes (with different representative plaintiffs) if and when they decide to pursue classwide relief on those claims.

## III. There Is No Conceivable Conflict Of Interest Among The Class Members With Respect To Claim 1, The Only Claim On Which The Plaintiffs Are Currently Seeking Classwide Relief

The defendant try to generate conflicts of interest by focusing on Claims 2 and 3, but (to repeat) the plaintiffs do *not* intend to use these proposed classes (or these proposed class representatives) to pursue classwide relief on those claims. These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005—and the class representatives are asserting *only* Claim 1 in their motion for preliminary injunction. The plaintiffs agree with the defendants that these proposed classes would not be suitable for pursuing classwide remedies on Claims 2 and 3, and a new class (and a new group of class representatives) will need to be proposed if classwide relief on those claims is ever pursued.

## IV. The Proposed Classes Meet The Requirements Of Rule 23(b)(2)

Certification under Rule 23(b)(2) is allowed when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This requirement is easily satisfied with respect to each of the proposed

classes. The first proposed class consists of "all farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act." A class of that sort satisfies Rule 23(b)(2) by definition. The defendants are discriminating against each member of the proposed class on account of race in administering section 1005's loan-forgiveness program, because the text of section 1005 requires them to do so.

The defendants say that we have not yet alleged that the USDA has actually denied a plaintiff's request for loan forgiveness, but it is not necessary to make that showing when a federal statute contains an explicit and mandatory racial classification. The defendants also note that white farmers and ranchers may submit a request to be counted as a "socially disadvantaged farmer or rancher," which will be considered "on a case-by-case basis." Def.'s Br. (ECF No. 28). But that is *still* unconstitutional racial discrimination; the government cannot give certain racial groups an automatic pass into the "socially disadvantaged" category while requiring members of other races to "prove" their social disadvantage with supporting evidence. And the members of the proposed class are each experiencing this discriminatory treatment, which makes declaratory or injunctive relief "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b).

The defendants are also wrong to say that a declaratory judgment that broadly prohibits the use of the "socially disadvantaged farmer or rancher" designation would "not provide relief" to class members. A remedy of this sort would remove the racially discriminatory treatment that the class members are experiencing at the hands of the government, and that provides relief even if it does not ultimately include them in the benefits that are currently available only to members of designated racial groups. *See, e.g., Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2355 (2020) (opinion of Kavanaugh, J.) ("[A] plaintiff who suffers unequal treatment has

standing to challenge a discriminatory exception that favors others."); *see also id.* (collecting authorities).

## V. THE PROPOSED CLASSES ARE ASCERTAINABLE

Nothing in the text of Rule 23 requires a class to be "ascertainable" or "identifiable."[3] But numerous courts—including the Fifth Circuit—have imposed an "ascertainability" requirement on top of the criteria for class certification spelled out in Rule 23. *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) ("[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."). This "ascertainability" doctrine allows courts to deny certification to vague or poorly defined classes. *See John v. National Security Fire & Casualty Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" (citation omitted)). *DeBremaecker*, for example, rejected a proposed class of "residents of this State active in the 'peace movement,'" because of the "patent uncertainty of the meaning of 'peace movement' in view of the broad spectrum of positions and activities which could conceivably be lumped under that term." *Id.*

There is nothing vague or imprecise about the proposed class definitions. A person is either encountering racial discrimination on account of section 1005, or he isn't. And a person is either included with the definition of "socially disadvantaged farmer or rancher," or he's not. The Department knows full well whether it treats someone as "socially disadvantaged" based on how it administers its programs; it is unfathomable that the entities in charge of administering the programs limited to

---

3. *See* Robert G. Bone, *Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres*, 65 U. Kan. L. Rev. 913, 913 (2017) ("[C]lass ascertainability . . . [is] neither mandated by the text of Rule 23 nor supported by a reasonable interpretation of the Rule's language and purpose.").

"socially disadvantaged farmers or ranchers" can simultaneously denying knowing who qualifies and who doesn't.

More importantly, the requirement of "ascertainability" is applied with far less rigor when certification is sought under Rule 23(b)(2). At least three circuits hold that "ascertainability" is categorically inapplicable to (b)(2) classes.[4] And the Fifth Circuit (along with many other courts) has recognized that the ascertainability requirement is greatly relaxed in the (b)(2) context:

> [T]he precise definition of the [ (b)(2) ] class is relatively unimportant. If relief is granted to the plaintiff class, the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance.

*In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 n.6 (5th Cir. 2004) (quoting *Rice v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974)).[5] *In re Rodriguez*, 695 F.3d

---

4. *See Shelton v. Bledsoe*, 775 F.3d 554, 563 (3rd Cir. 2015) ("[A]scertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("The advisory committee's notes for Rule 23(b)(2) assure us that ascertainability is inappropriate in the (b)(2) context."); *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) ("[W]hile the lack of identifiability [of class members] is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2).").

5. *See also Finch v. New York State Office of Children and Family Services*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008) ("A Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class"); *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007) ("[L]ess precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(2), where mandatory notice is required by due process . . . . Manageability is not as important a concern for injunctive classes as for damages classes." (citations omitted)); Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. Kan. L. Rev. 325, 390 (2017) ("Conditioning certification on the ascertainability of class members should not apply to Rule 23(b)(2) classes because it is immaterial whether individual class members can be identified."); Michael T. Morley, *Nationwide Injunctions, Rule 23(b)(2), and the Remedial Powers of the Lower Courts*, 97 B.U. L. Rev. 615, 638–39 (2017) ("The definiteness and ascertainability requirements either do not apply in Rule 23(b)(2) cases, or apply in a far less demanding and precise manner.").

360 (5th Cir. 2012), and *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999), approved (b)(3) classes despite the extensive individualized inquiries that were required; that creates an even steeper hill for the defendants, who must explain why this Court should reject ascertainability in the more forgiving (b)(2) context.

## VI. The Proposed Classes Satisfy Article III

Any person who is "encountering racial discrimination" on account of section 1005 is suffering Article III injury by definition. *See, e.g.*, *Northeast Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993). We do not understand the defendants to be arguing to the contrary. Instead, the defendants object primarily to the second proposed class, which includes any farmer or rancher currently excluded from the definition of "socially disadvantaged farmer or rancher." The defendants complain that some of these class members will never suffer Article III injury because they would never be eligible for government relief even in the absence of racial exclusions, or they might never apply for that relief.

To our knowledge, the Fifth Circuit has never held that every member of a Rule 23(b)(2) class must have Article III standing, and this idea is very hard to square with the Supreme Court's repeated pronouncements that only one plaintiff needs to establish standing to seek declaratory or injunctive relief. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("Under our precedents, at least one party must demonstrate Article III standing for each claim for relief. . . . The Third Circuit accordingly erred by inquiring into the Little Sisters' independent Article III standing."); *Department of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ("For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue."); *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) ("[T]he presence of one party

with standing is sufficient to satisfy Article III's case-or-controversy requirement."). The defendants correctly observe that the Second Circuit requires every absent class member to have Article III standing,[6] but that is not a binding pronouncement and should not (in our view) be followed. If the Court decides that Article III standing is indeed necessary for every absent class member, then it can simply tweak the class definitions and narrow them to individuals who are suffering Article III injury in fact on account of the Department's racially discriminatory practices. It is no reason to deny class certification across the board.

## CONCLUSION

The motion for class certification should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 

| | |
|---|---|
| Gene P. Hamilton<br>Virginia Bar No. 80434<br>Vice-President and General Counsel<br>America First Legal Foundation<br>300 Independence Avenue SE<br>Washington, DC 20003<br>(202) 964-3721<br>gene.hamilton@aflegal.org<br><br>H. Dustin Fillmore III<br>Texas Bar No. 06996010<br>Charles W. Fillmore<br>Texas Bar No. 00785861<br>The Fillmore Law Firm, L.L.P.<br>201 Main Street, Suite 801<br>Fort Worth, Texas 76102<br>(817) 332-2351 (phone)<br>(817) 870-1859 (fax)<br>dusty@fillmorefirm.com<br>chad@fillmorefirm.com | Jonathan F. Mitchell<br>Texas Bar No. 24075463<br>Mitchell Law PLLC<br>111 Congress Avenue, Suite 400<br>Austin, Texas 78701<br>(512) 686-3940 (phone)<br>(512) 686-3941 (fax)<br>jonathan@mitchell.law<br><br><br><br><br><br><br><br><br><br><br>*Counsel for Plaintiffs and<br>the Proposed Classes* |

---

6. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing.").

# CERTIFICATE OF SERVICE

I certify that on June 18, 2021, I served this document through CM/ECF upon:

Emily Sue Newton
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-8356 (phone)
(202) 616-8460 (fax)
emily.s.newton@usdoj.gov

*Counsel for Defendants*

                                                        /s/ Jonathan F. Mitchell
                                                       Jonathan F. Mitchell
                                                       *Counsel for Plaintiffs and*
                                                       *the Proposed Class*