**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| SID MILLER, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 4:21-cv-595-O |
| | ) | |
| TOM VILSACK, in his official capacity as SECRETARY OF AGRICULTURE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.     Plaintiffs lack standing to pursue most of their claims. ....................................... 5

       A.     No Plaintiff has standing to challenge non-§ 1005 USDA programs. .................... 6

       B.     Plaintiffs do not have standing to bring their second claim for relief. ................... 9

       C.     Plaintiffs lack standing to challenge what they concede is a non-existent
              policy ..................................................................................................................... 10

II.    Plaintiffs fail to state a claim under Title VI of the Civil Rights Act of 1964 because
       Title VI does not apply to federal agencies. ................................................... 11

CONCLUSION ................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Adarand Constructors, Inc.* v. *Pena*,
515 U.S. 200 (1995) ..................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... 11

*Bolling v. Sharpe*,
347 U.S. 497 (1954) ..................................................................................... 4

*California v. Texas*,
No. 19-840, 2021 WL 2459255 (U.S. June 17, 2021) ................................ 5, 7, 9, 11

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979) ................................................................................... 13

*Carney v. Adams*,
141 S. Ct. 493 (2020) ......................................................................... *passim*

*Casillas v. Madison Avenue Assocs., Inc.*,
926 F. 3d 329 (7th Cir. 2019) ...................................................................... 8

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ................................................................................. 6

*Cleveland v. Hunton*,
No. 1:16-cv-01732, 2017 WL 1153011 (E.D. Cal. Mar. 27, 2017), *report and
recommendation adopted,* 2017 WL 1491006 (E.D. Cal. Apr. 26, 2017) ................ 12

*Cuvillier v. Taylor*,
503 F.3d 397 (5th Cir. 2007) ...................................................................... 11

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ..................................................................................... 5

*Fagan v. Small Bus. Admin.*,
783 F. Supp. 1455 (D.D.C.), *aff'd*, 19 F.3d 684 (D.C. Cir. 1992) ...................... 12, 13

*Flowers v. Brown*,
No. 1:17-cv-460, 2021 WL 1143783 (E.D. Tex. Mar. 5, 2021), *report and
recommendation adopted,* 2021 WL 1134272 (E.D. Tex. Mar. 23, 2021) .............. 12

*George v. Farmers Elec. Coop., Inc.*,
   715 F.2d 175 (5th Cir. 1983)..................................................................................... 7

*Halim v. Donovan*,
   951 F. Supp. 2d 201 (D.D.C. 2013) ........................................................................ 12

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) .................................................................................................. 5

*Jersey Heights Neighborhood Ass'n  v. Glendening*,
   174 F.3d 180 (4th Cir. 1999)................................................................................... 13

*Jones v. Greninger*,
   188 F.3d 322 (5th Cir. 1999)................................................................................... 11

*Lewis v. Casey*,
   518 U.S. 343 (1996) .................................................................................................. 5

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990) ................................................................................................ 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 5, 6

*Marsaw v. Trailblazer Health Enters., L.L.C.*,
   192 F. Supp. 2d 737 (S.D. Tex. 2002) .................................................................... 12

*NAACP v. Kyle*,
   626 F.3d 233 (5th Cir. 2010)..................................................................................... 5

*NAACP v. Med. Ctr., Inc.*,
   599 F.2d 1247 (3d Cir. 1979) .................................................................................. 13

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*,
   40 F.3d 698 (5th Cir. 1994)..................................................................................... 12

*Nat'l Rifle Ass'n v. ATF*,
   700 F.3d 185 (5th Cir. 2012)................................................................................. 5, 6

*Regents of Univ. of Cal. v. Bakke*,
   438 U.S. 265 (1978) ................................................................................................ 12

*Sims v. City of Dallas*,
   No. CIV. A. 3:95-CV-177, 1996 WL 722052 (N.D. Tex. Dec. 5, 1996)................................... 7

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983) ..................................................................................................... 12

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .................................................................................................................. 6

*TransUnion LLC v. Ramirez*,
   No. 20-297 (U.S. June 25, 2021) ..................................................................................... 6, 8, 11

*United States v. Kennedy*,
   No. 17-0396, 2017 WL 4837473 (W.D. La. Oct. 5, 2017), *report and recommendation
   adopted,* 2017 WL 4817892 (W.D. La. Oct. 25, 2017) ........................................................... 12

*Williams v. Glickman*,
   936 F. Supp. 1 (D.D.C. 1996) ................................................................................................. 12

*Wise v. Glickman*,
   257 F. Supp. 2d 123 (D.D.C. 2003) ........................................................................................ 12

*Women's Equity Action League v. Cavazos*,
   906 F.2d 742 (D.C. Cir. 1990) ................................................................................................ 13

**Constitutional Provisions**

U.S. Const. amend. V............................................................................................................... 4

U.S. Const. Art. III, § 2............................................................................................................ 11

**Statutes**

7 U.S.C. § 1627c ................................................................................................................ 1, 3, 7

7 U.S.C. § 1985.................................................................................................................... 3, 7

7 U.S.C. § 2003 ....................................................................................................................... 1

7 U.S.C. § 2204i ...................................................................................................................... 3

7 U.S.C. § 2279 ............................................................................................................. *passim*

42 U.S.C. § 2000d ......................................................................................................... 4, 11, 13

iv

42 U.S.C. § 2000d-1 ........................................................................................... 13

42 U.S.C. § 2000d-3 ........................................................................................... 12

42 U.S.C. § 2000d-4 ........................................................................................... 12

American Rescue Plan Act, ("ARPA"), Pub. L. No. 117-2, 134 Stat. 4 (2021) ........................ 1, 2

**Regulations**

66 Fed. Reg. 21,617-01 (Apr. 30, 2001) ................................................................. 3

74 Fed. Reg. 31,567 (July 2, 2009) ........................................................................ 3

75 Fed. Reg. 27,165 (May 14, 2010) ...................................................................... 3

86 Fed. Reg. 28,329 (May 26, 2021) .................................................................. 3, 10

**Other Authorities**

H.R. Rep. No. 117-7 (2021) .................................................................................... 2

Zach Ducheneaux, *American Rescue Plan Socially Disadvantaged Farmer Debt Payments*,
   USDA (Mar. 26, 2021), https://www.farmers.gov/connect/blog/loans-and-grants/american-
   rescue-plan-socially-disadvantaged-farmer-debt-payments .................................................... 10

# INTRODUCTION

As one part of a broad economic stimulus bill enacted in the midst of a global pandemic, Congress authorized the U.S. Department of Agriculture (USDA) to provide debt relief to "socially disadvantaged farmer[s] and rancher[s]." American Rescue Plan Act (ARPA) § 1005, 134 Stat. 4, 12-13 (2021). Some Plaintiffs allege that they are excluded from the benefits of this provision solely because of their race, and that this exclusion violates both the Constitution and federal civil rights laws.

But Plaintiffs' claims go well beyond challenging the administration of the program that they contend unlawfully excludes them. The statutory terms "socially disadvantaged farmer or rancher" (SDFR) and "socially disadvantaged group" (SDG), 7 U.S.C. § 2279(a), are used in a wide range of programs administered by USDA.[1] Plaintiffs make no allegation that they are in any way injured by the use of these defined terms in these other programs, but they nonetheless seek to foreclose the use of those terms in those programs. Article III precludes such claims and denies this Court the power to adjudicate them. Plaintiffs cannot establish standing to raise such claims because they cannot establish that they have been or will be injured by the challenged conduct, or that they are "able and ready" to seek any benefit under any particular program other than § 1005. *Carney v. Adams*, 141 S. Ct. 493, 500 (2020).

Plaintiffs also argue, in the alternative, that the statutory term "socially disadvantaged farmer or rancher" must be read in specific ways. But the only Plaintiff for whom these alternative forms of relief could apply has not alleged any injury that would be redressed by that relief. And Plaintiffs concede that, for one of their claims, USDA has not adopted the interpretation Plaintiffs contend is unlawful. Because Plaintiffs have not adequately alleged standing to pursue these claims, they must be dismissed for lack of jurisdiction.

Finally, Plaintiffs' claims under Title VI of the Civil Rights Act of 1964 must be dismissed

---

[1] Plaintiffs appear to also challenge the similar but distinct statutory definitions set forth in 7 U.S.C. § 2003(e)(1,2). *See* FAC ¶ 10 (referencing 7 U.S.C. § 1627c, which incorporates the SDFR definition set out in § 2003(e), *see* 7 U.S.C. § 1627c(a)(11)).

for failure to state a claim because it is well-established that Title VI does not apply to a federal agency administering its own program.[2]

## BACKGROUND

In March 2021, Congress passed ARPA, which provides widespread pandemic relief to the American people, including farmers. *See* Pub. L. No. 117-2 (2021). ARPA "takes a multipronged approach to tackle the public health and economic crises resulting from the COVID-19 pandemic." American Rescue Plan Act of 2021, H.R. Rep. No. 117-7, at 3 (2021). The House Report accompanying the bill shows that Congress was focused on the "most vulnerable communities . . . forced to bear the brunt of" the pandemic and resultant economic crisis "as underlying health and economic inequities grow worse." *Id.* at 2. Among those communities were minority farmers who generally could not obtain credit in the private market and had "received a disproportionately small share of the farm loans and payments administered by USDA as a result of . . . longstanding and widespread discrimination." *Id.* at 12.

Thus, as part of ARPA, Congress passed § 1005, which authorizes funds to pay up to 120 percent of certain direct or guaranteed USDA farm loans held by "socially disadvantaged farmers or ranchers" and outstanding as of January 1, 2021. *See* § 1005. For purposes of § 1005, Congress gave the term "socially disadvantaged farmer or rancher" the same meaning as in § 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990, codified at 7 U.S.C. § 2279(a). *See id.* § 1005(b)(3). That provision defines a "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group," 7 U.S.C. § 2279(a)(5), which is further defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," *id.* § 2279(a)(6).

---

[2] Defendants do not contest, at this motion to dismiss stage, that at least one plaintiff has standing to challenge the administration of the § 1005 debt relief program. Nor do Defendants seek to dismiss such a claim under Rule 12(b)(6). Concurrent with this motion, Defendants have filed a Partial Answer.

Many of the programs USDA administers incorporate, to one degree or another, consideration of the statutory terms "socially disadvantaged group" or "socially disadvantaged farmer or rancher." *See, e.g.*, 7 U.S.C. § 2204i(a) (requiring the Secretary of Agriculture to produce a report that includes information on socially disadvantaged farmers and ranchers); 7 U.S.C. § 2279(c)(4) (grants program); 7 U.S.C. § 1627c(d) (grant program); 7 U.S.C. § 1985 (land sale program). USDA has long interpreted "socially disadvantaged group[s]" to include the following five groups: American Indians or Alaskan Natives; Asians; Blacks or African Americans; Hispanics or Latinos; and Native Hawaiians or other Pacific Islanders. *See, e.g.*, Outreach & Assistance for Socially Disadvantaged Farmers & Ranchers Program, 66 Fed. Reg. 21,617-01, 21,617 (Apr. 30, 2001) (interpreting 7 U.S.C. § 2279 to include those groups for purposes of Outreach and Assistance for SDFRs Program); Livestock Indemnity Program and General Provisions for Supplemental Agricultural Disaster Assistance Programs, 74 Fed. Reg. 31,567, 31,571 (July 2, 2009) (same for Risk Management Purchase Waiver); Conservation Reserve Program and Transition Incentives Program, 75 Fed. Reg. 27,165 (May 14, 2010) (same for Conservation Reserve Program). For debt relief under the § 1005 program, USDA confirmed in a Notice of Funds Availability that SDGs would continue to "include, but are not limited to," those same five groups, while others could be considered for inclusion on a case-by-case basis by the Secretary in response to a written request with a supporting explanation. *See* Notice of Funds Availability, American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed. Reg. 28,329, 28,330 (May 26, 2021). For purposes of § 1005, membership in an SDG is based on the borrower's self-certified identity. *Id.* at 28,330.

On April 26, 2021, Plaintiff Sid Miller, on behalf of himself and others similarly situated, filed a putative class action challenging USDA's implementation of § 1005. Compl., ECF No. 1. On June 2, Plaintiff filed an Amended Complaint adding four additional Plaintiffs. Am. Compl. (FAC), ECF No. 11. All Plaintiffs are farmers or ranchers who self-identify as "white," *id.* ¶¶ 19-23; Plaintiff Miller alleges that he is "primarily Scotch-Irish" and "also has approximately 2% black ancestry," *id.* ¶ 19. Four Plaintiffs—but not Mr. Miller—allege that they hold FSA direct

and guaranteed loans. *Id.* ¶¶ 19-23.

Plaintiffs bring numerous and broad claims. Most narrowly, Plaintiffs challenge the consideration of race or ethnicity in determining eligibility for § 1005 debt relief. Plaintiffs contend that this violates Title VI, 42 U.S.C. § 2000d, and the equal protection component of the Fifth Amendment, U.S. Const. amend. V; *see Bolling v. Sharpe*, 347 U.S. 497 (1954). More broadly, Plaintiffs contend that USDA violates both the Fifth Amendment and Title VI when it uses any statutory SDG designation for *any* USDA program. *See, e.g.*, FAC ¶ 29-30 (targeting "any statute" and USDA's "programs" without limitation). Plaintiffs also contend, in the alternative, that the statutory definition of SDG must be interpreted to include additional groups beyond those already recognized by USDA, FAC ¶¶ 31-33, and to prohibit the hypothetical use of a "blood-quantum threshold" to determine SDG membership, FAC ¶¶ 34-39.

Also on June 2, Plaintiffs moved for class certification, ECF No. 13, and a preliminary injunction, ECF No. 18 (PI Mot.). The motion for a preliminary injunction addresses only Plaintiffs' challenge to § 1005 and not their broader challenge to all USDA interpretations of "socially disadvantaged farmer or rancher"; their Title VI allegations; or any other allegations in their Amended Complaint. *See generally* PI Mot.

Defendants now move under Rules 12(b)(1) and 12(b)(6) to dismiss all of Plaintiffs' claims except their claim that § 1005 violates the Fifth Amendment.

## ARGUMENT

Defendants seek partial dismissal under both Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim. Plaintiffs lack standing to challenge programs other than the § 1005 debt relief program, and they also lack standing to pursue their hypothetical challenges in Claim 2 and Claim 3. In addition, Plaintiffs' challenge to the § 1005 program under Title VI of the Civil Rights Act of 1964 in Claim 1 must be dismissed for failure to state a claim because Title VI does not apply to federal agencies.

# I.     Plaintiffs lack standing to pursue most of their claims.

As the Supreme Court has explained repeatedly, the "judicial power" with which federal courts are endowed is inherently limited to resolving true "cases or controversies." This limitation, the Court just recently reiterated, is necessary to preserve the separation of powers and to deny "unelected judges a general authority to conduct oversight of decisions of the elected branches of Government." *California v. Texas*, No. 19-840 (U.S. June 17, 2021), slip op. at 9, 2021 WL 2459255. "The doctrine of standing implements this requirement by insisting that a litigant 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The parties seeking access to federal court bear the burden of establishing their standing." *Nat'l Rifle Ass'n v. ATF*, 700 F.3d 185, 190 (5th Cir. 2012). "Article III standing is a jurisdictional requirement," *NAACP v. Kyle*, 626 F.3d 233, 237 (5th Cir. 2010), and "[w]ithout jurisdiction the court cannot proceed *at all* in any cause." *Id.* (citation omitted) (emphasis in original). These principles preclude jurisdiction over most of Plaintiffs' complaint in this case.

The requirement that Plaintiffs have standing encompasses three elements, all of which must be satisfied for each claim and for each form of relief. *Nat'l Rifle Ass'n*, 700 F.3d at 190 (citing *Lujan,* 504 U.S. at 560); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff must demonstrate standing for each claim . . . [and] separately for each form of relief sought"); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross."). The first required element of standing is "an 'injury in fact,' which is a 'concrete and particularized . . . invasion of a legally protected interest.'" *Nat'l Rifle Ass'n*, 700 F.3d at 190-91 (quoting *Lujan*, 504 U.S. at 560) (omission by Fifth Circuit). "The second is that 'there must be a causal connection between the injury and the conduct complained of,'" that is, the injury must be "'fairly . . . trace[able] to the challenged action of the defendant.'" *Id.* at 191 (quoting *Lujan*, 504 U.S. at 560) (omission and alteration by Fifth Circuit). "Third, 'it must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).

The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (emphases in original; internal citation omitted). These requirements assure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). "Where that need does not exist, allowing courts to oversee legislative or executive action would significantly alter the allocation of power away from a democratic form of government." *Id.* (internal alternations and citation omitted); *see also TransUnion LLC v. Ramirez*, No. 20-297, slip op. at 7–8 (U.S. June 25, 2021).

A.     No Plaintiff has standing to challenge non-§ 1005 USDA programs.

Plaintiffs attempt to challenge USDA's use of the SDG and SDFR designations in a wide number of programs. But Plaintiffs lack standing to challenge these programs because they do not allege either that they are injured by the administration of these programs or that any injury would be redressed by an injunction restraining USDA from using the SDG or SDFR designation in those programs. Plaintiffs cannot simply challenge the use of the SDG or SDFR designations in the administration of programs that Plaintiffs themselves are not eligible for, or "able and ready" to apply for.  *Carney*, 141 S. Ct. at 500. Rather, Plaintiffs must show that "at the time [they] filed suit," the use of such designations in those programs "caused [them] a concrete, particularized 'injury in fact' over and above the abstract generalized grievance suffered by all citizens" from the existence of an allegedly unlawful program. *Id.* at 499. Plaintiffs have not alleged sufficient facts to establish that they are injured by the manner in which these non-§ 1005 programs are administered.

Many such programs, for example, are not open to individuals *at all*. *E.g.*, 7 U.S.C. § 2279(c)(4) (authorizing grants to certain educational institutions or organizations). Others are

open only to certain types of farmers or ranchers. *E.g.*, *id.* § 1627c(d) (authorizing grants to "independent producer[s]" of "a value-added agricultural product"). Others are open only under specified circumstances in specific locations. *E.g.*, *id.* § 1985 (authorizing the acquisition and sale of property under specified circumstances). To challenge any aspect of these programs, Plaintiffs must plead (and later prove) not only that they have suffered a concrete injury, but also that this injury was actually caused by the allegedly illegal conduct. If a plaintiff would suffer the same alleged injury (such as denial of a benefit) for reasons *other than* the challenged conduct (such as ineligibility or failure to pursue the benefit), he cannot establish standing. *See, e.g.*, *California*, No. 19-840, slip op. at 14-16 (states lacked standing to challenge constitutionality of ACA's individual mandate based on financial costs that were traceable only to other, unchallenged ACA provisions); *George v. Farmers Elec. Coop., Inc.*, 715 F.2d 175, 178 (5th Cir. 1983) (plaintiff "could in no way show that she was injured" where she independently would have been terminated under seniority-based provision of anti-nepotism policy); *see also Sims v. City of Dallas*, No. CIV. A. 3:95-CV-177, 1996 WL 722052, at *2 (N.D. Tex. Dec. 5, 1996) (denying motion for temporary restraining order due to lack of injury where plaintiffs challenged promotion exam but were not eligible for promotion).

The Supreme Court's decision in *Carney* is particularly instructive. There, a lawyer in Delaware brought a constitutional challenge to his state's mechanism for appointing judges to certain courts. *See* 141 S. Ct. at 497. Because the plaintiff had not actually applied for, or been denied, a position as judge, the Supreme Court asked whether he "was 'able and ready' to apply for a judgeship in the reasonably foreseeable future." *Id.* at 501. The Court concluded that the plaintiff "did not show the necessary 'injury in fact,'" but instead had suffered only a "generalized grievance" insufficient to confer standing, *id.* at 499, because (among other reasons) he had never previously applied for any judgeship and made no specific "preparations or investigations" to apply for one in the reasonably foreseeable future, *id.* at 501.

Similarly here, Plaintiffs have not alleged any injury-in-fact from USDA's administration of non-§ 1005 programs. "If 'the plaintiff does not claim to have suffered an injury that the

7

defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, No. 20-297, slip op. at 7 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F. 3d 329, 333 (7th Cir. 2019)). Plaintiffs have not alleged that they have previously applied for benefits under such programs, that they satisfy the necessary qualifications such that they would be eligible but-for their SDG status, or that they are otherwise "able and ready" to seek such benefits in the future. *Cf., e.g.*, *Adarand Constructors, Inc.* v. *Pena*, 515 U.S. 200, 212 (1995) (finding standing to challenge bid rules when plaintiff had bid on every project and such projects were put out to bid at least once a year). Indeed, just as the plaintiff in *Carney* had failed to make "efforts to determine likely openings" or perform other "preparations or investigations," 141 S. Ct. at 501, it is evident that these Plaintiffs have not made even a rudimentary examination of their eligibility for the programs they challenge, much less demonstrated that they are able and ready to pursue benefits under those programs.

Plaintiffs have not alleged that they are otherwise eligible for any of these programs, that they have made any inquiry or investigation into the availability of any benefits under these programs, that they have prepared applications for these programs, or that they have applied to, and been rejected from, such programs in the past. Plaintiffs have not alleged even the "general intent" to seek benefits under these programs that was inadequate to establish standing in *Carney*. Rather, it is apparent that Plaintiffs merely seek to "vindicate [their] view of the law"—a desire patently inadequate to satisfy Article III. *Carney*, 141 S. Ct. at 501. To permit these Plaintiffs to challenge programs for which they have alleged no specific intention to pursue benefits would, as in *Carney*, "significantly weaken the longstanding legal doctrine preventing this Court from providing advisory opinions at the request of one who, without other concrete injury, believes that the government is not following the law." *Id.* Plaintiffs lack standing to raise, and this Court accordingly lacks jurisdiction to consider, challenges to programs other than the debt relief program established by ARPA § 1005.

    B.    <u>Plaintiffs do not have standing to bring their second claim for relief.</u>

In their second claim, Plaintiffs seek a declaration that the statutory terms SDG and SDFR "unambiguous[ly]" include "white ethnic groups that have been subjected to racial and ethnic prejudice" and an injunction prohibiting USDA "from excluding Irish, Italians, Germans, Jews, eastern Europeans, and any other ethnic group that has suffered racial and ethnic prejudice," from those definitions. FAC ¶ 33. But Plaintiffs have not alleged facts that would support standing for this claim, because they have not alleged an injury that would be redressed by the remedy they seek.

Plaintiffs have alleged a specific ethnicity only for Plaintiff Sid Miller, who identifies his "ancestry [as] . . . primarily Scotch-Irish." FAC ¶ 19. But Plaintiffs have not alleged that Mr. Miller holds any loans administered by or guaranteed by the FSA, such that he would be eligible for relief under § 1005 even if he were considered a member of an SDG. Nor have Plaintiffs identified any other way in which Mr. Miller is injured by his non-SDG status. Thus, as to Mr. Miller, Plaintiffs have not alleged facts showing that he either has an injury or that such an injury would be redressed by a judicial decree requiring USDA to treat him as a member of an SDG.

As to the other four Plaintiffs, they also have not alleged facts to show redressability. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California*, No. 19-840, slip op. at 7. But these Plaintiffs have not alleged facts to suggest that any injury they suffer would be remedied by a declaration of the kind they seek. To benefit from such a declaration, Plaintiffs would need to be members of one of the five additional groups that Plaintiffs contend should be included in the definition of SDG; Plaintiffs have made no such allegations. As such, no Plaintiff has standing to bring claim two, and it must be dismissed.[3]

---

[3] For similar reasons, no Plaintiff has standing to pursue Claim 3, which seeks a declaration that SDG includes "individuals who have any discernible trace of minority ancestry." FAC ¶ 34. Mr. Miller has not identified any injury from being excluded from the SDG designation, and no other Plaintiff has alleged any particular ancestry.

C.      Plaintiffs lack standing to challenge what they concede is a non-existent policy.

Plaintiffs' third claim seeks both a declaration "that the statute, at 7 U.S.C. § 2279(a)(5)–(6), prohibits the Department of Agriculture from establishing a blood-quantum threshold for status as a member of a 'socially disadvantaged group,['] and that any person with any traceable amount of minority ancestry must be regarded as a member of a 'socially disadvantaged group,'" and also an injunction enjoining USDA "from excluding any person with any traceable amount of minority ancestry from the definitions" of SDG or SDFR. FAC ¶¶ 38-39. Plaintiffs lack standing to pursue these claims because they have not alleged that Defendants engage in allegedly unlawful conduct that causes them injury.

Instead, as Plaintiffs themselves concede, the USDA does not use the method for determining SDG membership that Plaintiffs contend would be unlawful. *See* FAC ¶ 18 ("[N]othing in the relevant statutes (or in the Department's purported interpretations of these statutes) establishes a blood-quantum cut-off."). As the Notice of Funding Availability for § 1005 makes clear, USDA uses the borrower's self-certified identity to determine membership in an SDG.[4] *See* 86 Fed. Reg. at 28,330; *see also* Zach Ducheneaux, *American Rescue Plan Socially Disadvantaged Farmer Debt Payments*, USDA (Mar. 26, 2021), https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments ("A borrower, including those with guaranteed loans, can contact their local USDA Service Center to verify, update or submit a new ethnicity and race designation using the AD-2047."). There is thus no government action here to be complained of, let alone one causing a redressable injury in fact. Plaintiffs accordingly have not alleged (and nor could they) that they have suffered any injury that would support this claim.

What Plaintiffs seek is a quintessential advisory opinion, "an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477

---

[4] Other USDA programs—which Plaintiffs lack standing to challenge, *see supra* section I.A—use different methods or forms to identify race or ethnicity. But none uses any "blood quantum" method.

(1990) (internal quotation marks omitted). This is exactly what an Article III court constitutionally cannot provide. *See, e.g.*, *Carney*, 141 S. Ct. at 498 ("The Constitution grants Article III courts the power to decide 'Cases' or 'Controversies.' Art. III, § 2. We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions."); *California*, No. 19-840, slip op. at 8-9 (similar). "Federal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion*, slip op. at 8. Without an actual case or controversy raising this entirely hypothetical issue, this Court must dismiss Plaintiffs' Claim 3 in its entirety.

## II.    Plaintiffs fail to state a claim under Title VI of the Civil Rights Act of 1964 because Title VI does not apply to federal agencies.

To avoid a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Rule 12(b)(6), the court accepts "all well-pleaded facts [of the complaint] as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). A claim must be dismissed if, taking all adequately pleaded facts as true, the plaintiff still fails to "raise a claim of entitlement to relief." *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly,* 550 U.S. at 558).

Plaintiffs contend that "[t]he [USDA] is violating . . . Title VI [of the Civil Rights Act of 1964] by discriminating on the grounds of race, color, and national origin in administering its programs." FAC ¶ 28. This claim must be dismissed because Title VI does not apply to federal agencies directly administering their programs.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute defines "program or activity" to mean "all of the operations of" departments or instrumentalities of state or local governments, colleges and certain public systems of higher education, certain corporations and other private organizations, and other entities established by a

combination of two or more of the foregoing entities. *See id.* § 2000d–4a. "Notably, the statutory definitions of 'program or activity' and 'program' do not include federal agencies." *Halim v. Donovan*, 951 F. Supp. 2d 201, 207 (D.D.C. 2013).

"Accordingly, as courts consistently hold, Title VI does not apply to programs conducted directly by federal agencies," *id.*,[5] including direct and guaranteed loan programs like those under Section 1005, *see Cleveland v. Hunton*, No. 1:16-cv-01732, 2017 WL 1153011, at *4 (E.D. Cal. Mar. 27, 2017), *report and recommendation adopted,* 2017 WL 1491006 (E.D. Cal. Apr. 26, 2017) (dismissing Title VI claim against the USDA and USDA employees involved in the FSA loan program because "Title VI does not create a cause of action against the federal government or waive the government's sovereign immunity"). This view is consistent with the Fifth Circuit's recognition that the "essential elements" for a Title VI claim are "(1) that the defendant have received federal financial assistance . . . (2) that was applied by the defendant to discriminatory programs or activities." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 706 & n.9 (5th Cir. 1994) (citing 42 U.S.C. § 2000d–3); *cf. Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 284 (1978) ("Examination of the voluminous legislative history of Title VI reveals a congressional intent to halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution."). Thus, while a *recipient* of federal funds may be sued under Title VI, a federal agency directly administering its programs may not. *See Fagan*

---

[5] *See, e.g., Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) (concluding, based on an examination of the statutory language, legislative history, and inferences from the case law, that Title VI was not intended to apply to direct federal benefit programs); *Flowers v. Brown*, No. 1:17-cv-460, 2021 WL 1143783, at *4 (E.D. Tex. Mar. 5, 2021), *report and recommendation adopted,* 2021 WL 1134272 (E.D. Tex. Mar. 23, 2021) ("Courts have routinely held that [Title VI] does not apply to federal agencies administering their own funds."); *United States v. Kennedy*, No. 17-0396, 2017 WL 4837473, at *5 (W.D. La. Oct. 5, 2017), *report and recommendation adopted,* 2017 WL 4817892 (W.D. La. Oct. 25, 2017); *Wise v. Glickman*, 257 F. Supp. 2d 123, 132 (D.D.C. 2003) ("[T]he caselaw recognizes that a plaintiff may not bring suit under Title VI for programs maintained directly by federal agencies.") (citing cases); *Marsaw v. Trailblazer Health Enters., L.L.C.*, 192 F. Supp. 2d 737, 750 (S.D. Tex. 2002) ("Title VI does not apply to programs administered directly by a federal agency."); *Williams v. Glickman*, 936 F. Supp. 1, 5 (D.D.C. 1996) (same).

*v. Small Bus. Admin.*, 783 F. Supp. 1455, 1465 n.10 (D.D.C.), *aff'd*, 19 F.3d 684 (D.C. Cir. 1992) (explaining that the plaintiff "ha[d] no claim under . . . § 2000d because that section does not apply to direct benefit programs, but only to non federal entities that receive federal funding and provide that funding to the ultimate beneficiary").

As the Fourth Circuit has explained, "Title VI creates a two-pronged attack on discrimination by federal funding recipients: direct action against those recipients by private parties," *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999) (citing 42 U.S.C. § 2000d; *Cannon v. Univ. of Chi.*, 441 U.S. 677, 703 (1979)), "and action by funding agencies to secure voluntary compliance or to terminate funds altogether," *id.* (citing 42 U.S.C. § 2000d-1). As explained, Section 2000d applies to recipients of federal funding, not the federal government. And aggrieved individuals can access the remedies under § 2000d-1 only by petitioning the federal funding agency. *See id.* Congress did not "intend[] those same individuals to circumvent that very administrative scheme through direct litigation against federal agencies." *Id.* (citing *NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254-55 & n.27 (3d Cir. 1979)); *see also Cannon*, 441 U.S. at 714 & n.51 (observing that Title VI "appears to have been a compromise aimed at protecting individual rights without subjecting the Government to suits"); *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 747 (D.C. Cir. 1990) ("*Cannon*'s examination of the legislative history of Title VI suggested that Congress wished to ward off suits against the government of the very kind plaintiffs now press."). Thus, where Plaintiffs' Title VI challenge rests on their allegation that USDA has discriminated against them, and those similarly situated, in administering its programs, *see* FAC ¶¶ 27-28, their Title VI claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims insofar as they relate to USDA programs other than ARPA's § 1005, and Claims 2 and 3 in their entirety, for lack of jurisdiction. The Court should also dismiss all claims premised on alleged violations of Title VI for failure to state a claim.

Dated:  June 29, 2021                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Acting Assistant Attorney General

                                         LESLEY FARBY
                                         Assistant Branch Director
                                         Civil Division, Federal Programs Branch

                                         */s/ Michael F. Knapp*
                                         EMILY SUE NEWTON (VA Bar No. 80745)
                                         Senior Trial Counsel
                                         KYLA M. SNOW (Ohio Bar No. 96662)
                                         MICHAEL F. KNAPP (Cal. Bar. No. 314104)
                                         Trial Attorneys
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         Tel: (202) 514-2071 / Fax: (202) 616-8460
                                         michael.f.knapp@usdoj.gov

                                         *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2021, a copy of the foregoing was filed electronically via

the Court's ECF system, which effects service upon counsel of record.

*/s/ Michael F. Knapp*
MICHAEL F. KNAPP (Cal. Bar No. 314104)
Trial Attorney, U.S. Department of Justice
