# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| SID MILLER, on behalf of himself and others similarly situated, | ) ) ) ) |
|  | ) ) |
| *Plaintiff*, | ) |
|  | )   Civil Action No. 4:21-cv-595-O |
| *v.* | ) )|
| TOM VILSACK, in his official capacity as SECRETARY OF AGRICULTURE, | ) ) ) |
|  | ) |
| *Defendant*. | ) ) |
|  | ) |

# DEFENDANT'S OPPOSITION TO
## MOTION TO OPT OUT OF CERTIFIED CLASSES

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (OHIO BAR NO. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-8356 / Fax: (202) 616-8460
emily.s.newton@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION...........................................................................................................1

BACKGROUND........................................................................................................ 2

I.      The Instant Litigation Challenging Section 1005 ...............................................2

II.     Parallel Litigation Challenging Section 1005.....................................................4

ARGUMENT ............................................................................................................ 7

I.      This Court Should Deny Movants' Motion To Opt Out Of The Mandatory
        Classes...........................................................................................................7

        A.      Rule 23(b)(2) Classes Are Mandatory Classes with No Opportunity
                To Opt Out.........................................................................................8

        B.      Discretionary Factors Counsel Against Permitting Movants To Opt
                Out of the Mandatory (b)(2) Classes....................................................12

        C.      Neither Due Process Nor the First Amendment Require This Court
                To Permit Movants To Opt Out of the Mandatory (b)(2) Classes. .................21

        CONCLUSION...........................................................................................26

# TABLE OF AUTHORITIES

Cases

*7547 Partners v. Fistek,*
 114 F.3d 1183 (5th Cir. 1997) ........................................................................... 20, 21, 22

*Allen v. Isaac,*
 100 F.R.D. 373 (N.D. Ill. 1983) ........................................................................... 21, 22

*Allison v. Citgo Petroleum Corp.,*
 151 F.3d 402 (5th Cir. 1998) ................................................................................... *passim*

*Amara v. Cigna Corp.,*
 775 F.3d 510 (2d Cir. 2014) ........................................................................................ 9

*Ayers v. Thompson,*
 358 F.3d 356 (5th Cir. 2004) ................................................................................... *passim*

*Bernard v. Gulf Oil Co.,*
 619 F.2d 459 (5th Cir. 1980) ..................................................................................... 25

*Berry v. Schulman,*
 807 F.3d 600 (4th Cir. 2015) .................................................................................. 9, 22

*Boles v. Moss Codilis, LLP,*
 10-cv-1003, 2012 WL 12861080 (W.D. Tex. Jan. 17, 2012) ...................................... 10

*Bolin v. Sears, Roebuck & Co.,*
 13-cv-2469, 231 F.3d 970 (5th Cir. 2000) ................................................................. 12

*Boos v. AT & T, Inc.,*
 252 F.R.D. 319 (W.D. Tex. 2008) ............................................................................ 12

*Carpenter v. Vilsack,*
 21-cv-103 (D. Wyo. Aug. 16, 2021) ..................................................................... *passim*

*DeGier v. McDonald's Corp.,*
 76 F.R.D. 125 (N.D. Cal. 1977) ........................................................................... 13, 21

*DeHoyos v. Allstate Corp.,*
 240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................ 19

*Dunlap v. Vilsack,*
 21-cv-942 (D. Or. Sept. 21, 2021) .............................................................................. 5

*Ebert v. Gen. Mills, Inc.,*
   823 F.3d 472 (8th Cir. 2016) ....................................................................................9

*Faust v. Vilsack,*
   21-cv-548 (E.D. Wis. Aug. 23, 2021) ...........................................................6, 7, 22

*Fowler v. Birmingham News Co.,*
   608 F.2d 1055 (5th Cir. 1979) ..................................................................................23

*Gooch v. Life Invs. Ins. Co. of Am.,*
   672 F.3d 402 (6th Cir. 2012) ....................................................................................9

*Holmes v. Cont'l Can Co.,*
   706 F.2d 1144 (11th Cir. 1983) ...............................................................................11

*Horton v. Goose Creek Indep. Sch. Dist.,*
   690 F.2d 470 (5th Cir. 1982) ...................................................................................20

*Humphrey v. United Way of Tex. Gulf Coast,*
   H-05-0758, 2007 WL 2330933 (S.D. Tex. Aug. 14, 2007) ..............................13, 19

*In re Allstate Ins. Co.,*
   400 F.3d 505 (7th Cir. 2005) ...................................................................................11

*In re Enron Corp.,*
   No. MDL 1446, 2006 WL 1662596 (S.D. Tex. June 7, 2006).............................12, 16

*In re Monumental Life Ins. Co.,*
   365 F.3d 408 (5th Cir. 2004) ...................................................................................20

*Johnson v. Gen. Motors Corp.,*
   598 F.2d 432 (5th Cir. 1979) ...................................................................................23

*Joyner v. Vilsack,* ("*Joyner* Order")
   21-cv-1089, 2021 WL 3699869 (W.D. Tenn. Aug. 19, 2021).............................*passim*

*Kincade v. Gen. Tire & Rubber Co.,*
   635 F.2d 501 (5th Cir. Jan. 1981) ....................................................................8, 9, 21, 22

*LaChapelle v. Owens-Illinois, Inc.,*
   513 F.2d 286 (5th Cir. 1975) ...............................................................................9, 10

*McKinney v. Vilsack,*
   2:21-cv-212(E.D. Tex.  Aug. 30, 2021) ...............................................................*passim*
*Messier v. Southbury Training Sch.,*
   183 F.R.D. 350 (D. Conn. 1998) ..................................................................13, 20, 24, 25

*Mote v. Walthall,*
   902 F.3d 500 (5th Cir. 2018) ...........................................................................................24

*Penson v. Terminal Transp. Co.,*
   634 F.2d 989 (5th Cir. Unit B Jan.1981) ...........................................................8, 10, 20

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ..................................................................................................21, 22

*Reagan v. United States,*
   18-cv-433, 2019 WL 2807577 (N.D. Tex. May 24, 2019) .............................................15

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) .........................................................................................................24

*Robinson v. Union Carbide Corp.,*
   544 F.2d 1258 (5th Cir. 1977) ........................................................................................10

*Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.,*
   137 S. Ct. 77 (2016) ...........................................................................................................9

*Serna v. Transp. Workers Union of Am., AFL-CIO,*
   13-cv-2469, 2014 WL 7721824 (N.D. Tex. Dec. 3, 2014).............................................13

*Shelton v. Bledsoe,*
   775 F.3d 554 (3d Cir. 2015) ...............................................................................................9

*Smith v. Tower Loan of Miss., Inc.,*
   216 F.R.D. 338 (S.D. Miss. 2003) ..............................................................................11, 23

*Sosna v. Iowa,*
   419 U.S. 393 .....................................................................................................................22

*Tiegs v. Vilsack,*
   21-cv-103 (D.N.D. Sept. 7, 2021) .............................................................................*passim*

*Tellis v. LeBlanc,*
   18-cv-0541, 2019 WL 1103420 (W.D. La. Mar. 8, 2019)..............................................13

*United States v. U.S. Steel Corp.,*
   520 F.2d 1043 (5th Cir. 1975).........................................................................................10

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ..................................................................................................*passim*

*Woolen v. Surtran Taxicabs, Inc.,*
   684 F.2d 324 (5th Cir. 1982) .....................................................................................21, 23

**Statutes**

7 U.S.C. § 2279........................................................................................................................................3

**Rules**

Fed. R. Civ. P.  23(b)......................................................................................................................*passim*

Fed. R. Civ. P. 23(c)..................................................................................................................9, 10

**Other Authorities**

1 McLaughlin on Class Actions  § 5:21 (17th ed. 2020)....................................................................10

3 Newberg on Class Actions, § 9:51 (5th ed. 2021) ........................................................................10

Advisory Committee Notes,
    39 F.R.D. 98 (1966) .................................................................................................................8

## INTRODUCTION

Movants are members of the classes this Court certified to challenge Section 1005 of the American Rescue Plan Act ("ARPA") on equal protection grounds. If the classes succeed in their challenge, the Government will be enjoined from providing debt relief targeted to socially disadvantaged farmers and ranchers. Yet, Movants seek to opt out of the classes here so that they can attempt to obtain the same relief, on essentially the same grounds, in five separate district courts. Six district courts recently rejected Movants' (and similarly situated plaintiffs') efforts to proceed with their duplicative litigation, concluding instead that fairness and efficiency concerns warranted staying those proceedings in favor of this class action. This Court should deny Movants' effort to re-litigate those decisions under the guise of their opt-out request.

Movants first argue that this Court should exercise its discretion to permit them to opt out of the classes it certified under Rule 23(b)(2). The Supreme Court has recognized, however, that (b)(2) classes are mandatory classes with no opportunity for class members to opt out. Indeed, allowing Movants to do so would have no practical effect—any declaratory or injunctive relief would impact all class members regardless—and it would undermine the fairness and efficiency interests that led this Court to certify the classes in the first place and six district courts to stay parallel proceedings.

Even if this Court could grant Movants' opt-out request, Movants do not seek the type of individual monetary relief that courts have relied on to justify opt-outs from (b)(2) classes in the past. And Movants provide no relevant authority, or any other basis, on which to permit them to opt out of the (b)(2) classes. Movants do not cite a single case in which a court has granted a request to opt out of a (b)(2) class where, like here, Movants seek only declaratory or injunctive relief. And Movants' (and like plaintiffs') discretionary arguments were roundly rejected by six district courts in denying their similar attempts to proceed with their individual lawsuits during the pendency of this class action.

Movants argue secondarily that due process and the First Amendment *require* this Court to permit them to opt out of the (b)(2) classes it certified. But the Fifth Circuit has repeatedly held that a member of a (b)(2) class has no absolute right to opt out of the class. And it has explicitly rejected the arguments that either due process or the First Amendment confer such a right.

Movants' requested relief is foreclosed by Supreme Court and Fifth Circuit precedent and would undermine the very purpose of a (b)(2) class action. This Court should deny Movants' motion.

## BACKGROUND

### I.   The Instant Litigation Challenging Section 1005[1]

On April 26, 2021, Plaintiffs filed a complaint challenging Section 1005 on equal protection, among other, grounds. Dkt. 1. On June 2, 2021, Plaintiffs filed an amended complaint, Dkt. 11, a motion to certify two classes of farmers and ranchers under Federal Rule of Civil Procedure 23(b)(2), Br. in Supp. of Mot. for Class Cert., Dkt. 13, and a motion for a preliminary injunction, Dkt. 18. Both motions relied solely on Plaintiffs' challenge to Section 1005 in Count I of the Amended Complaint. *See* Br. in Supp. of Mot. for Class Cert. 3; Tr., Mot. Hr'g 2:20-25, 3:1-10 (June 30, 2021).

On July 1, 2021, this Court granted both motions. *See* Order on Class Cert. & PI, Dkt. 60. The Court enjoined the U.S. Department of Agriculture ("USDA") from disbursing funds under Section 1005 while this case is adjudicated on the merits. *See id.* at 22-23. And the Court certified the following two classes under Rule 23(b)(2):

> 1. All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act.

---

[1] Defendants have set forth the background of this matter in other filings in this Court. *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj., Dkt. 27; Defs.' Partial Mot. to Dismiss, Dkt. 49. Here, Defendants include only the background most pertinent to the instant motion and respectfully refer the Court to those previous filings for any additional background necessary.

> 2. All farmers and ranchers in the United States who are currently excluded from the definition of "socially disadvantaged farmer or rancher," as defined in 7 U.S.C. § 2279(a)(5)–(6)3 and as interpreted by the Department of Agriculture.

*Id.* at 5-6. Consistent with Plaintiffs' request, the Court certified both classes only with respect to Plaintiffs' challenge to Section 1005 in Count I of the Amended Complaint. *See id.* at 10, 13; Class Cert. Reply 1, Dkt. 41 ("The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act."); Class Cert. Reply at 4 ("These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005.").[2]

In certifying the classes, the Court made the requisite findings under Rule 23(b)(2). Among them, the Court found the commonality requirement satisfied because "[a]nswering Plaintiffs' substantive legal question will provide a common answer for all class members regarding a common issue of law: the availability of USDA program benefits to them absent racial and ethnic discrimination." Order on Class Cert. & PI 8. The Court found the typicality requirement satisfied because "the class representative's claims [in Count I] have the same essential characteristics of those of the putative class," "arise from a similar course of conduct," and "share the same legal theory." *Id.* at 9.[3] It found that class counsel "will adequately represent the interests of class members similarly situated in zealously pursuing the requested relief." *Id.* at 12. And it found the key requirement for a (b)(2) class met because "the USDA acts on grounds that apply generally to the classes in administering the debt-relief program" and the injunction Plaintiffs seek "would apply generally to the classes as a whole." *Id.* at 14-15. The Court thus concluded that Plaintiffs had satisfied the requirements for class treatment,

---

[2] On September 22, 2021, the Court granted Plaintiffs leave to file, and the clerk docketed, a Second Amended Complaint wherein Plaintiffs narrowed their claims to an equal protection and Title VI challenge to Section 1005. *See* Dkt. Nos. 85-87.

[3] Herein, all internal alterations, citations, and case history are omitted unless otherwise indicated.

justifying the "'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Id.* at 3 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)).

## II.     Parallel Litigation Challenging Section 1005

After Plaintiffs filed suit in this Court, farmers and ranchers filed lawsuits in eleven other jurisdictions across the country, also challenging Section 1005 on equal protection grounds and seeking declaratory and injunctive relief.  *See Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.); *Wynn v. Vilsack*, 3:21-cv-00514 (M.D. Fla.); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.);  *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.). Movants' counsel represents those plaintiffs in five such challenges, in which nearly identical complaints seeking the same nationwide injunctive and declaratory relief were filed in five different jurisdictions between May 18, 2021, and July 6, 2021.  *Wynn*, 3:21-cv-514; *Dunlap*, 2:21-cv-942; *Kent*, 3:21-cv-540; *McKinney*, 2:21-cv-212; *Tiegs*, 3:21-cv-147.

Because this Court certified classes that include the plaintiffs in all of the other pending lawsuits challenging Section 1005, the Government moved to stay proceedings in all but one of the other lawsuits in favor of proceeding in this class action.[4]  In its stay motions, the Government explained that courts in such circumstances routinely stay, or even dismiss, the individual action in favor of the class action, to facilitate judicial economy by avoiding multiple suits on the same subject matter and to prevent inconsistent results.  *See, e.g., Wynn*, Defs.' Mot. to Stay Proceedings (July 12, 2021), Dkt. 44; Defs.' Repl. in Supp. of Mot. to Stay Proceedings (Aug. 30, 2021), Dkt. 59.  Six of the seven courts to have ruled on the stay motions have agreed with the Government, granting stays of those cases

---

[4] In *Nuest*, 21-cv-1572, the parties stipulated to a stay.  *See id.*, Dkt. 19.

4

pending resolution of this class action. *See McKinney*, Order (Aug. 30, 2021), Dkt. 40, Ex. 1; *Carpenter*, Order (Aug. 16, 2021), Dkt. 33, Ex. 2; *Joyner*, 2021 WL 3699869 (W.D. Tenn. Aug. 19, 2021), Ex. 3; *Faust*, Decision & Order (Aug. 23, 2021), Dkt. 66, Ex. 4; *Tiegs*, Order (Sept. 7, 2021), Dkt. 20, Ex. 5; *Dunlap*, Op. & Order (Sept. 21, 2021), Dkt. 42, Ex. 6.[5]

The majority of those courts stayed proceedings, in part, because they recognized that the respective plaintiffs would likely be unable to opt out of the mandatory (b)(2) classes this Court certified. *See Carpenter* Order 5-6 (calling "speculative" a scenario in which the plaintiff would be permitted to opt out of the *Miller* classes because "Rule 23(b)(2) classes are 'mandatory classes' with no opt-out opportunity") (quoting *Walmart*, 564 U.S. at 362); *Joyner* Order 3 (explaining the plaintiff's "inability" to opt out of the (b)(2) classes) (citing same); *Faust* Order 2 (noting that "Rule 23(b)(2) classes generally do not mandate notice and an opportunity to opt-out") (citing same); *Tiegs* Order 3 (finding it "unlikely" that the plaintiffs would be able to opt out of the Rule 23(b)(2) classes in *Miller*) (citing same). The only court to have denied the Government's stay motion, *see Holman*, Order (Aug. 2, 2021), Dkt. 49, subsequently granted the Government's stay motion in *Joyner*, where the Government had the opportunity to file a reply brief, bringing to the court's attention that the plaintiffs should not be able to opt out of the (b)(2) classes in this case, *compare Holman* Order 3 (noting, without analysis or briefing on the issue, that "Plaintiff may choose to opt out of the *Miller* classes"), *with Joyner* Order 3 (citing "Plaintiff's inability to opt out of the *Miller* class action" because (b)(2) classes are "mandatory").[6]

In granting the stay motions, the courts also rejected the plaintiffs' arguments that they should be permitted to litigate their individual claims with their chosen counsel in their chosen fora on the

---

[5] Movants include the plaintiffs in three of the cases (*McKinney*, *Tiegs*, and *Dunlap*) in which courts have granted Defendants' stay motions and in a fourth (*Kent*) where the court administratively stayed the case pending a decision on the stay motion. In the fifth (*Wynn*), the stay motion is pending.

[6] In denying the Government's stay motion, the court in *Holman* also "relie[d] on issues unique to the Sixth Circuit and that case," *Tiegs* Order 6 n.4, including the existence of a loan forgiveness claim that none of the Movants bring in their respective challenges, *see Holman* Order 3.

grounds that, *inter alia*: (1) doing so would waste judicial, party, and taxpayer resources, *see Carpenter* Order 9 ("The public interests at stake include the … prompt and efficient resolution of th[]e issues from the overall perspective of the litigation pending in all twelve district courts. The taxpayer interests are not served by requiring the government to defend multiple suits on the same subject matter in all twelve courts."); *Faust* Order 2 ("the interests of judicial economy and efficiency militate in favor of a stay … [b]ecause Plaintiffs are members of the classes certified by the *Miller* court, *Miller* involves the same parties, claims, and requests for relief"); *Joyner* Order 3 ("Not only will Defendants be prejudiced by litigating identical claims in two separate courts, but the judicial system itself will be harmed by the inefficiencies arising from such."); *McKinney* Order 4 (staying the case to "avoid unnecessary, duplicative government action and allow for efficient, consistent litigation"); *Tiegs* Order 6 (staying the case to "avoid defendants responding to the same arguments in different courts" and the burden of "duplicative litigation"); *Dunlap* Order 3 ("A stay will avoid unnecessary, duplicative government action and allow for efficient, consistent litigation."); (2) this Court had determined that class counsel will adequately represent the interests of all class members, *see McKinney* Order 4; *Joyner* Order 2-3; *Dunlap* Order 3; and (3) the plaintiffs could use procedural mechanisms, such as intervention or amicus filings, to raise any concerns with class counsel, *see McKinney* Order 4; *Joyner* Order 2-3; *Faust* Order 2.

On September 3, 2021, Movants—the plaintiffs in *Wynn*, *Dunlap*, *Kent*, *McKinney*, and *Tiegs* (the five cases mentioned above)—filed a motion to opt out of the (b)(2) classes this Court certified or, in the alternative, to amend the class certification order to exclude them from the classes. Mot. to Opt Out Of Certified Classes ("Mot."), Dkt. 78. Movants do not dispute that they are members of the certified classes or the propriety of (b)(2) certification. They nonetheless argue that they should be permitted to opt out of the (b)(2) classes because they "believe that they should be allowed to pursue their chosen claims, with their chosen counsel, in their chosen forums," Mot. 2, and, secondarily,

because they maintain this Court is required by due process and the First Amendment to allow them to opt out of the classes.

## ARGUMENT

### I.   This Court Should Deny Movants' Motion To Opt Out Of The Mandatory Classes.

As four other district courts recently observed, Movants' opt-out request is contrary to the mandatory nature of (b)(2) classes, recognized by the Supreme Court in *Wal-Mart* and the persuasive authority interpreting it.  *See supra* BG § II (citing *Carpenter* Order 5-6; *Joyner* Order 3; *Faust* Order 2; *Tiegs* Order 3).  And to the extent Movants could be permitted to opt out of the mandatory (b)(2) classes, they provide no discretionary basis that could support such relief.  Like all class members, Movants admittedly seek declaratory and injunctive relief that would apply to the class as a whole— not the type of individual monetary relief that has warranted the rare permissions to opt out of (b)(2) classes in the past.  And Movants' arguments for why they should be permitted to opt out of the mandatory classes find no support in the case law and were roundly rejected by the district courts that recently concluded that class treatment here is preferable to continuing to litigate Movants' (and like plaintiffs') individual claims in multiple district courts.

Movants' secondary argument that this Court is *required* to permit them to opt out of the mandatory classes is meritless.  The Fifth Circuit has consistently held that there is no absolute right to opt out of a (b)(2) class, and it has explicitly rejected arguments that due process or the First Amendment require courts to grant such opt-out requests.  This Court should deny Movants' motion to opt out of the mandatory (b)(2) classes it certified.  For the same reasons, the Court should also deny Movants' alternative, one-paragraph request to amend the class certification order to exclude them from the certified classes.  *See* Mot. 18 (requesting the alternative relief "for the same reasons").

### A.   Rule 23(b)(2) Classes Are Mandatory Classes with No Opportunity To Opt Out.

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court elaborated on the history and nature of the Rule 23(b)(2) class. As the Court explained, "Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Id.* at 360 (quoting Fed. R. Civ. P. 23(b)(2)). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class"—not "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant" or "an individualized award of monetary damages." *Id.* at 360-61.

Rule 23(b)(2) "was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) (citing Advisory Cmte. Notes, 39 F.R.D. 98, 102 (1966)); *see also Wal-Mart*, 564 U.S. at 361 ("[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of what (b)(2) is meant to capture."); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 (5th Cir. 1981) ("most class actions in the civil rights area" are "brought under Rule 23(b)(2)"). And because the relief sought in a (b)(2) class "must perforce affect the entire class at once," (b)(2) classes are "mandatory classes." *Wal-Mart*, 564 U.S. at 361-62. Unlike for a (b)(3) class, *see* Fed. R. Civ. P. 23(c)(2)(B), Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action," *Wal-Mart*, 564 U.S. at 362. "The procedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are … unnecessary to a (b)(2) class" because "[w]hen a class seeks an indivisible injunction benefiting all its members at once," it is

8

"self-evident" that "class issues predominate" and a "class action is a superior method of adjudicating the dispute." *Id.* at 362-63.

Appellate courts have largely interpreted *Wal-Mart* as not permitting opt-outs from a (b)(2) class in light of the class's mandatory nature. *See Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) ("Because a (b)(2) class is mandatory, the rule provides no opportunity for (b)(2) class members to opt out[.]"); *Berry v. Schulman*, 807 F.3d 600, 609, 612 (4th Cir. 2015) (rejecting objectors' request to opt out of (b)(2) class on ground that opt-out is not provided by the Rule and is "unnecessary" because "the relief sought is uniform"), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016); *Gooch v. Life Invs.' Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) (holding that "class members may not opt out" of Rule 23(b)(2) classes); *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015) ("[T]here is no right to opt out from [a (b)(2)] class."); *see also Amara v. Cigna Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) ((b)(2) class members "need not be given notice and opt-out rights").

Likewise, before and after *Wal-Mart*, the Fifth Circuit and courts within it have held that class members are not permitted to opt out of a (b)(2) class. *See LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 n.7 (5th Cir. 1975) ("[C]lass members may opt out only when the action is maintainable under subdivision (b)(3) of Rule 23. When either subdivision (b)(1) or (b)(2) applies, the rule does not allow a class member to avoid the effect of judgment by disassociating himself from the suit."); *Kincade*, 635 F.2d at 506 ("The right to opt out of a class in a pending class action is provided for in Rule 23(c)(2) …; significantly, that right, as well as the right to notice, is explicitly limited to class actions brought under Rule 23(b)(3)."); *Robinson v. Union Carbide Corp.*, 544 F.2d 1258, 1260 (5th Cir. 1977) (explaining that Rule 23(b)(2) "compels inclusion and therefore promotes judicial economy, consistency of result, and binding adjudication more effectively than 23(b)(3)"); *United States v. U.S. Steel Corp.*, 520 F.2d 1043, 1057 (5th Cir. 1975) ("[I]nsofar as this action continues toward final repose as a Rule 23(b)(2) class action, there will be no 'opting out' by individual class members at any point.") (citing *LaChapelle*,

513 F.2d at 288 n.7); *Boles v. Moss Codilis, LLP*, 10-cv-1003, 2012 WL 12861080, at *12 n.26 (W.D. Tex. Jan. 17, 2012) ("While a court has discretion to mandate notice requirements for classes certified under 23(b)(2), … a court does not have discretion to allow a class member to opt-out.") (citing same).

After *LaChapelle*, the Fifth Circuit also held that "although a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class, a district court may mandate such a right pursuant to its discretionary power under Rule 23." *Penson*, 634 F.2d at 993. This discretion was necessary because of the increasing use of "hybrid" Rule 23(b)(2) class actions that sought "individual monetary relief … in addition to classwide injunctive or declaratory relief." *Id.* at 994. In such cases, the Fifth Circuit explained, the nominally 23(b)(2) class "begins to resemble a 23(b)(3) action," which raised courts' "concern with protecting the due process rights of the individual class members." *Id.*

Such reasoning was subsequently abrogated by the Supreme Court's decision in *Wal-Mart*, which held that individualized monetary relief was inconsistent with a Rule 23(b)(2) class action. 564 U.S. at 360 (holding that "claims for monetary relief" may not be certified under Rule 23(b)(2) except where the relief is "incidental to the injunctive or declaratory relief"). Thus, although the Fifth Circuit has not directly addressed whether courts retain discretion to permit opt-outs from a (b)(2) class after *Wal-Mart*, *Wal-Mart* and the aforementioned cases interpreting it compel the conclusion that courts do not. *See* 1 McLaughlin on Class Actions § 5:21 (17th ed. 2020) ("The Supreme Court's decision in *Wal-Mart* … casts doubt on the continuing validity of … decisions" authorizing "district courts, in their discretion, to require both notice and the right to opt out of Rule 23(b)(2) classes.").

In any event, regardless of whether courts retain such discretion as a general matter, that discretion extends only to requests to opt out of a (b)(2) class involving "'hybrid' Rule 23(b)(2) class actions, in which individual monetary relief for certain class members is sought in addition to class-wide injunctive or declaratory relief." *Ayers v. Thompson*, 358 F.3d 356, 375–76 (5th Cir. 2004); *see also*

3 Newberg on Class Actions, § 9:51 (5th ed. 2021) ("[C]ases in which courts have enabled class members to opt out of (b)(1) or (b)(2) classes tend to be those that involve individualized monetary damages…. *Wal-Mart* … undermines the very viability of these particular types of class actions."). Thus, as the Fifth Circuit explained in *Ayers*, "no basis exist[s] for [a district court] to exercise its discretion" to permit opt-outs where, as here, the parties seek "solely injunctive and declaratory relief" and "do not request any individual relief, whether monetary or otherwise." 358 F.3d at 376.

The aforementioned authority therefore provides "no basis" for Movants to opt out of the mandatory (b)(2) classes certified here. This is not a hybrid (b)(2) class action. Like all of the class members, Movants seek only declaratory and injunctive relief, namely a declaration that Section 1005 is unconstitutional and an injunction precluding its enforcement as currently configured. *See* Mot. 6; *Wynn*, Compl. 20–21 (Prayer for Relief). This Court thus found Rule 23(b)(2)'s requirements met because "USDA acts on grounds that apply generally to the classes" and the injunction Plaintiffs seek "would apply generally to the classes as a whole." Order on Class Cert. & PI 14-15. Because the relief Plaintiffs seek "must perforce affect the entire class at once," the classes this Court certified are "mandatory classes" that provide "no opportunity" for Movants to opt out. *Wal-Mart*, 564 U.S. at 361-62; *see also Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 377-78 (S.D. Miss. 2003), *aff'd sub nom. Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004) (upholding district court's "mandatory class certification" and denial of requests to opt out of the (b)(2) class where the "demand for declaratory relief seeks redress for injuries allegedly uniformly sustained across the Class").

Because of the "indivisible nature" of the remedy Movants (and all class members) seek, *Wal-Mart*, 564 U.S. at 360, allowing Movants to pursue their individual claims would be fruitless and counter-productive. As the Seventh Circuit has explained, because the "declaratory or injunctive relief [sought by a (b)(2) class] will usually have the same effect on all the members of the class as individual suits would," "there wouldn't be any purpose in allowing individual members of the class to opt out

and seek their own injunction." *In re Allstate Ins. Co.*, 400 F.3d 505, 506-07 (7th Cir. 2005); *see also Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155–57 (11th Cir. 1983) ("Opting out of a (b)(2) suit for injunctive relief would have little practical value or effect. Even class members who opted out could not avoid the effects of the judgment. A (b)(2) injunction would enjoin all illegal action, and all class members would necessarily be affected by such broad relief."); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000) ("The uniformity of the injury across the class is what renders the notice and opt-out provisions of (b)(3) unnecessary."). And allowing individual class members to do so would undercut the very purpose of class certification. "[T]he class action device exists primarily, if not solely, to achieve a measure of judicial economy, which benefits the parties as well as the entire judicial system." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998). Recognizing as much, courts prefer mandatory class certification under Rule 23(b)(1) or (b)(2) to certification under Rule 23(b)(3) to preserve these benefits. *See In re Enron Corp.*, 2006 WL 1662596, at \*19 (S.D. Tex. June 7, 2006) ("If actions certifiable under the first two subdivisions [(b)(1) or (b)(2)] were certified under the general provision, (b)(3), which allows class members to opt out, this would permit the institution of separate litigation, thus unduly burdening the judicial system."); *Boos v. AT&T, Inc.*, 252 F.R.D. 319, 324 (W.D. Tex. 2008) (recognizing "preference for certification under (b)(1) and (b)(2)"). Six other district courts recently granted the Government's motions to stay individual proceedings in favor of this class action in part because doing so would preserve judicial, party, and taxpayer resources. *See supra* BG § II (citing orders granting Government's stay motions). Those efficiency gains, coupled with the futility of "opting out" of classes seeking relief that will invariably impact all class members, illustrate why (b)(2) classes are mandatory and consequently why Movants cannot opt out of them.

**B. Discretionary Factors Counsel Against Permitting Movants To Opt Out of the Mandatory (b)(2) Classes.**

Even if the Court did retain discretion post-*Wal-Mart* to permit Movants to opt out of the (b)(2) classes, Movants provide no basis for the Court to do so. Movants concededly do not seek the

type of individual monetary relief that could warrant permitting them to opt out of the (b)(2) classes. *See* Mot. 3; *Ayers*, 358 F.3d at 376 ("[T]he district court correctly concluded that no basis existed for it to exercise its discretion to allow Appellants to opt out" where the plaintiffs "sought solely injunctive and declaratory relief" and "d[id] not request any individual relief, whether monetary or otherwise."); *Tellis v. LeBlanc*, 2019 WL 1103420, at *6 n.4 (W.D. La. Mar. 8, 2019) ("[A]llow[ing] class members to opt out of a Rule 23(b)(2) class … is most logical in the context of a 23(b)(2) class that also seeks damages."). This Court determined, *see* Order on Class Cert. & PI 12, and Movants do not dispute, *see* Mot. 12, that class counsel will adequately represent class members' interests. *See Messier v. Southbury Training Sch.*, 183 F.R.D. 350, 358 (D. Conn. 1998) (denying movants' opt-out request where they were adequately represented in the litigation). And the same futility and efficiency concerns discussed above counsel against permitting Movants to opt out, even if the Court could allow them to do so.

In seeking to opt out of the certified classes, Movants do not contend with any of these issues or cite any relevant case law to support their arguments. For instance, they ignore the well-established distinctions between class members seeking purely declaratory and injunctive relief and those seeking individual monetary relief. As a result, they rely on inapposite cases involving the latter while failing to cite a single decision permitting a movant to opt out of a (b)(2) class when he was seeking purely injunctive and declaratory relief, as movants (and all class members) seek here.[7] Movants cite "differences in litigation strategy" as a basis to opt out, Mot. 7, but likewise ignore the case law (discussed

---

[7] For instance, Movants cite two cases as examples of courts in this circuit exercising discretion to grant notice and opt-out rights to (b)(2) class members. Mot. 6 (citing *Serna v. Transp. Workers Union of Am., AFL-CIO*, 2014 WL 7721824, at *11 (N.D. Tex. Dec. 3, 2014); *Humphrey v. United Way of Tex. Gulf Coast*, 2007 WL 2330933, at *10 (S.D. Tex. Aug. 14, 2007)). But in both cases, class members sought individual monetary damages; the court in *Serna* noted that it was giving class members the opportunity to opt out for that reason, *see Serna*, 2014 WL 7721824, at *11; and the court in *Humphrey* did *not* grant opt-out rights, *see Humphrey*, 2007 WL 2330933, at *10. Movants otherwise cite a case from the Northern District of California as an example of a court "allow[ing] opt-outs even in 23(b)(2) classes." Mot. 18 (citing *DeGier v. McDonald's Corp.*, 76 F.R.D. 125, 126 (N.D. Cal. 1977)). But again, in conditionally certifying the class, the court in *DeGier* permitted class members to opt out if they so

below) holding that such differences do not merit opt-outs where class members are adequately represented by class counsel, as Movants concede they are, *see* Mot. 12.  And Movants do not address the futility and efficiency concerns that have led courts to deny requests to opt out of pure (b)(2) classes like these—concerns that led six district courts to reject plaintiffs' similar attempts to continue to proceed with their individual, duplicative litigation.  *See supra* BG § II.

Moreover, the arguments Movants do make have never been found sufficient to support an opt-out request in circumstances like this, and the district courts rejected nearly all of them in granting the Government's stay motions based on their shared conclusion that class adjudication here is preferable to the individualized adjudications Movants seek.  Movants make four primary arguments.  *First*, Movants argue that they should be permitted to opt out of the certified classes because their claims are "sufficiently distinct from Plaintiffs'," emphasizing that Movants have "focused exclusively on Section 1005," while Plaintiffs' Amended Complaint contains additional claims. Mot. 7.  The court rejected the same argument in *Joyner*, noting that it "ignores the language of [this C]ourt's certification order which clearly establishes classes only as to the challenge to the validity of Section 1005" and "exclude[es] all other claims."  *Joyner* Order 3; *see also* BG § I; Order on Class Cert. & PI 10 ("Plaintiffs only seek classwide relief on Claim One and pleaded Claim Two and Three in the alternative.").  As the court recognized in *Joyner*, the pertinent question is not whether Movants' claims are distinct from those in the Amended Complaint; it is whether Movants' claims are "separate and distinct from *the claims for class-wide relief*."  *Ayers*, 358 F.3d at 376.  As this Court and others have found, they are not. *See* Order on Class Cert. & PI 9 (finding that "the class representative's claims [in Count I] have the same essential characteristics of those of the putative class," "arise from a similar course of conduct,"

---

chose "[s]ince [the] plaintiff [sought] damages for pain and suffering, back pay and punitive damages," such that "the case may [have] require[d] official certification under (b)(3)."  *DeGier*, 76 F.R.D. at 127. Because Movants do not seek individual monetary relief, far from supporting their request, these decisions undermine it.

and "share the same legal theory"); *McKinney* Order 4 ("Plaintiff belongs to the classes certified in the *Miller* case, involves the same defendants, claims and request for relief as here."); *Tiegs* Order 4 (finding that the *Miller* 'class and plaintiffs are challenging the same law on the same grounds"); *Dunlap* Order 4 (finding that the *Miller* case involves "the same defendants, general claims, and request for relief as in the present case"). And if there were any doubt on that score, Plaintiffs have now amended their complaint again to focus, like Movants, exclusively on Section 1005. *See* 2d Am. Compl., Dkt. 87. As such, Movants' claims do not provide a basis to permit them to opt out. *See Ayers*, 358 F.3d at 376 ("[S]ince Appellants have failed to show the existence of individual claims that are separate and distinct from the claims for class-wide relief, the district court correctly concluded that no basis existed for it to exercise its discretion to allow Appellants to opt out.").

Movants also argue that their claims are sufficiently distinct from Plaintiffs' because Movants bring a claim under the Administrative Procedure Act ("APA"), request nominal damages, and, unlike Plaintiffs here, are seeking discovery in *Wynn*. Mot. 7-8. Again, Movants (and similarly situated plaintiffs) made each of these arguments in opposing the Government's stay motions in the parallel litigation challenging Section 1005, *see, e.g., Dunlap* Order 2, and the courts rejected them for good reason. As those courts found, the minor differences in litigation strategy that Movants cite do not render their claims distinct from those of the classes in any meaningful way or otherwise justify proceeding with individual, duplicative litigation. Movants' APA claim is entirely coextensive with their equal protection claim. *See, e.g., Wynn*, Compl. ¶¶ 60 (incorporating the same factual allegations as those in support of equal protection claim), 67 (alleging that "the 'socially disadvantaged' provisions of Section 1005 violate the equal protection component of the Due Process Clause of the Fifth Amendment" and "*[a]ccordingly*, the USDA's implementation of Section 1005 violates the APA") (emphasis added). Movants cannot obtain damages against USDA, *see Reagan v. United States*, 2019 WL 2807577, at *5 (N.D. Tex. May 24, 2019), nor have they cited any case in which a court has permitted a class member

to opt out of a (b)(2) class based on the existence of a request for $1.00 in nominal damages, *see Wynn*, Compl. 21 (Prayer for Relief ¶ 5). Movants' mere desire to conduct fact discovery in *Wynn* "does not sufficiently distinguish this case from *Miller*," *Tiegs* Order 5, where Mr. Wynn conceded that he "does not anticipate extensive discovery from Defendants," *see Wynn*, Jt. Notice 2, Dkt. 42, and Movants' need for fact discovery is questionable in any event given that their challenge to Section 1005 "is facial, not as-applied," *Tiegs* Order 5. And rather than permit duplicative litigation—as Movants' request would lead to—Movants could "raise th[eir] concerns with class counsel or file an *amicus* brief" if they want "to pursue an APA claim or discovery." *McKinney* Order 5; *see also Tiegs* 5 (noting that plaintiffs' concerns about their ability to conduct discovery "may ... be remedied by filing amicus briefs and seeking intervention in *Miller*").[8]

    *Second*, Movants argue that allowing them to opt out "will increase fairness and efficiency and avoid prejudice to Movants." Mot. 8. Unsurprisingly, Movants do not cite a single case in which a court has granted an opt-out request for reasons of efficiency. That is because, as discussed, the very purpose of a class action is to promote judicial economy and enhance efficiency. *See Allison*, 151 F.3d at 410 (class actions "preserve[] the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion"). For that reason, "[a] class action would [also] be fairer than individual actions before different judges in different fora." *In re Enron Corp.*, 2006 WL 1662596, at *18 ("Efficiency is clearly served here because

---

[8] There is also no merit to Movants' contention that they should be permitted to opt out of the certified classes because "[i]t is unclear whether Plaintiffs ... seek the same alternative forms of relief as Movants." Mot. 8 n.6. Counsel made clear at the preliminary injunction hearing that Plaintiffs seek the same forms of relief as Movants. *See* Tr. 5:20-8:3 (June 31, 2021). The *McKinney* court found as much. *See McKinney* Order 4. And this Court certified classes on the basis that "a single injunction or declaratory judgment ... would provide relief to each [class] member." Order on Class Cert. & PI 15. And in any event, any divergence in relief requested does not provide a discretionary basis to permit Movants to opt out of the classes. *See Ayers*, 358 F.3d at 376 (where Appellants' interests and claims were generally aligned with Plaintiffs, Appellants' "belie[f] that they [we]re entitled to greater class-wide injunctive relief" did not provide a discretionary basis to permit Movants to opt out of the classes).

Defendants' alleged course of conduct … affected … all … participants and beneficiaries, a class action avoids multiple individual actions and trials on the same liability issues, it is economically feasible and economically and judicially efficient for plan participants and beneficiaries … to bring all the claims on behalf of the plans in one action in one forum, and the mandated plan-wide relief makes a class action the superior method to pursue."). Six district courts thus recently weighed the competing interests and found proceeding in this class action, rather than in individual lawsuits, would promote the fair and efficient resolution of class members' claims. *See supra* BG § II. And in certifying the classes, this Court already struck the balance "between the need and efficiency of a class action" and "the interests of class members to pursue their claims separately." *Allison*, 151 F.3d at 412–13.

Movants nevertheless argue they will be prejudiced if not permitted to opt out because they could face "years of undue delay in getting their cases resolved," Mot. 8, while they are "relegated to the sidelines," *id.* at 9. As an initial matter, Movants' claims will be resolved—in this action. And in any event, Movants' predictions of delay are speculative. Four of Movants' cases (*Kent*, *Dunlap*, *McKinney*, and *Tiegs*) are at earlier stages than this one; *Kent* is subject to an administrative stay, *see* Order, Dkt. 18 (July 19, 2021); and the last three have been stayed altogether. There is thus no reason to expect those cases would be resolved more quickly than this one. The only concrete evidence of delay Movants cite is the fact that under the schedule (now adopted, *see* Dkt. 85) in this case, merits briefing will be completed two months later than in *Wynn*. Mot. 9. A two-month discrepancy is not undue delay. And it does not outweigh the prejudice to the Government and the judiciary, including the delays that would likely result in this and parallel litigation to accommodate competing court schedules and Defendants' obligations if multiple lawsuits were permitted to proceed along with this class action.

*See, e.g., Carpenter* Order 7 (noting Government's burden if required to defend against multiple cases "simultaneously on varying schedules and in different jurisdictions").[9]

Moreover, far from being "relegated to the sidelines," Mot. 9, Movants are indisputably "members of both classes," *Tiegs* Order 2, meaning their claims are being litigated before this Court right now. Thus, they can and will obtain a decision in this case, *id.*. at 5, along with all other members of the classes to which they belong, and they can avail themselves of various procedural mechanisms to make their voices heard, *see supra* BG § II (citing *McKinney* Order 4; *Joyner* Order 2-3; *Faust* Order 3). In the meantime, as multiple district courts recently found, Movants' interests are protected by three preliminary injunctions that will remain in place while this action is litigated. *See Carpenter* Order 6 ("Plaintiff's interests … are adequately protected by the *Miller* court's preliminary injunction."); *Joyner* Order 2 ("[T]his Court and others have imposed a preliminary injunction to preserve the status quo for Plaintiff."); *Tiegs* Order 5 (finding that the plaintiffs would not be prejudiced "[b]ecause section 1005 is now enjoined and plaintiffs can obtain relief in *Miller*").

*Third*, Movants argue that allowing them to opt out will not prejudice other class members or the Government. That is incorrect. As one court recently put it, "There is no dispute that [it] is a burden on the government and, consequently on the taxpaying public," if the Government is required to defend against multiple cases "simultaneously on varying schedules and in different jurisdictions." *Carpenter* Order 7; *see also Faust* Order 3 (finding that "a stay would avoid hardship to the government, which would otherwise be tasked with defending against numerous, identical actions across the country at the same time"); *Tiegs* Order 6 ("[T]he continued presence of duplicative litigation burdens de-

---

[9] Moreover, Movants' unsupported speculation about *future* delays plainly does not warrant opting out *now*. *See, e.g., Faust* Order 3 (noting that the plaintiffs could seek relief in that court "[i]n the event progress in the *Miller* case is significantly delayed"); *Carpenter* Order 9 (similar).

fendants."); *McKinney* Order 4 (staying the case to "avoid unnecessary, duplicative government action").[10]  "Not only will Defendants be prejudiced by litigating identical claims in two separate courts, but the judicial system itself will be harmed by the inefficiencies arising from such." *Joyner* Order 3.[11]

More broadly, permitting individual suits seeking injunctive and declaratory relief that "must perforce affect the entire class at once," *Wal-Mart*, 564 U.S. at 361, invites the possibility of conflicting judgments that would burden Defendants, the judiciary, and possibly other class members. The burden on Defendants of complying with conflicting injunctions is apparent, but conflicting judgments would also burden the judiciary tasked with untangling them and class members for whom any ordered relief might be undermined by conflicting orders of another court. If this Court, for example, orders the expansion of Section 1005 benefits to all farmers and ranchers without regard to membership in a socially disadvantaged group, but another court (at Movants' behest) prohibits USDA from administering Section 1005 altogether, class members could be denied the benefit of their judgment.

*Fourth*, Movants argue they should be permitted to opt out of the (b)(2) classes because their and Plaintiffs' interests are not completely aligned. Mot. 11. But certified (b)(2) classes are presumed to be cohesive, and this Court so concluded. *See* Order on Class Cert. & PI 12. "[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." *Allison*, 151 F.3d at 412–13. The assumption of cohesiveness is one reason (b)(2) class members are not given opt-out rights. *See Humphrey*, 2007 WL 2330933, at *8 ("The lack of automatic

---

[10] In so doing, those courts rejected Movants' argument that percolation in multiple courts outweighs the benefits of a class action. *See Tigges* Order 3; *see supra* BG § II (citing orders relying on reasons of judicial economy and efficiency in granting the Government's stay motions).

[11] Movants contend Defendants invited multiple lawsuits by opposing class certification and arguing that preliminary relief should be limited to the named plaintiffs in the respective lawsuits challenging Section 1005. Mot. 11. Neither of the Government's positions, which did not prevail, has any bearing on whether, once this Court certified classes, class resolution is preferable to duplicative litigation. Movants' request for nationwide relief could be said to have invited a single resolution to their cases.

procedural protections reflects that (b)(1) and (b)(2) classes are more cohesive."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 295 (W.D. Tex. 2007) (a (b)(2) class "has a greater degree of cohesiveness … than in 23(b)(3) actions, which minimizes the need for ... a right to opt out of the class").

Movants do not undermine that assumption. Instead, their motion shows they simply prefer to maintain their preferred counsel and control the litigation. *See* Mot. 11-12 (citing only that Movants chose to be represented by another organization and Plaintiffs here "have litigated the issues … differently"). But such a preference does not show that Movants' interests are not aligned with those of the class. *See Carpenter* Order 6 ("Plaintiff's argument that her interests are only adequately served by her own attorneys flies against the *Miller* court's finding that counsel in the *Miller* case will adequately represent the interests of class members."). Nor have Movants demonstrated the kind of "antagonistic interests," Mot. 11, that might be sufficient to permit class members to opt out of a (b)(2) class. Instead, courts have rejected opt-out requests even where some members of the class "may be satisfied with the challenged activity," concluding that "[t]he presence of conflicting views within a class does not require that dissenters be allowed to opt out where their positions are being adequately represented … in the litigation." *Messier*, 183 F.R.D. at 355, 358 (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 487 (5th Cir. 1982) (ruling that although some plaintiff class members approved of school drug searches in a case challenging their constitutionality, class certification remained appropriate where the dissenters' interests were aggressively represented by the defendant school district)). Even less so here, where Movants challenge the same activity as the other class members on the same grounds, this Court found that "[a]ll indications are that Plaintiffs are willing and able to … protect the interests of absent class members," Order on Class Cert. & PI 12, and Movants concede that they will be adequately represented by class counsel, *see* Mot. 12.

In sum, Movants provide no basis for this Court to permit them to opt out of the mandatory classes it certified.

### C.  Neither Due Process Nor the First Amendment Require This Court To Permit Movants To Opt Out of the Mandatory (b)(2) Classes.

Movants argue secondarily that due process and the First Amendment *require* this Court to grant their motion to opt out of the classes certified under Rule 23(b)(2).  *See* Mot. 12-18.  As evidenced by the numerous decisions denying requests to opt out of a (b)(2) class (and upholding such denials), *see, e.g., supra* Arg. § I.A-B, that is incorrect.  Instead, the Fifth Circuit has consistently held that "a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class."  *Penson*, 634 F.2d at 993; *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 417 (5th Cir. 2004) ("[T]here is no absolute right of opt-out in a rule 23(b)(2) class, 'even where monetary relief is sought and made available.'"); *7547 Partners v. Fistek*, 114 F.3d 1183 (5th Cir. 1997) ("A significant effect of certifying an action pursuant to 23(b) (1) and (b)(2) and not (b)(3) is that class members have no opt out rights."); *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 326 n.1 (5th Cir. 1982) ("no right to opt out in a (b)(2) action"); *Kincade*, 635 F.2d at 507 ("[T]he right to opt out … is denied when a Rule 23(b)(2) case is tried.").  And it has explicitly rejected the arguments that due process or the First Amendment confer such a right.  *See 7547 Partners*, 114 F.3d 1183 (holding that appellant was not denied due process where class was certified under Rule 23(b)(1) and (b)(2) and appellant "was not allowed to opt out and was not given adequate notice"); *Kincade*, 635 F.2d at 506 (rejecting as "without merit" the argument that "the settlement agreement violated [the plaintiffs'] right to due process because it did not provide them a means of opting out of the class to pursue their claims individually" and explaining that "[t]he right to opt out of a class in a pending class action is … explicitly limited to class actions brought under Rule 23(b)(3)"); *Ayers*, 358 F.3d at 376 (rejecting the plaintiffs' argument that denying them the right to opt out of a Rule 23(b)(2) class violates the First Amendment).

In arguing that due process requires that they be permitted to opt out of the certified classes, Movants again rely on cases and dicta involving class members who sought monetary relief, where

individual determinations could have led to real conflicts within the class. *See* Mot. 13-14 (citing *De-Gier*, 76 F.R.D. 125; *Allen v. Isaac*, 100 F.R.D. 373 (N.D. Ill. 1983); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)). As noted, Movants do not seek such relief and instead seek the same declaratory and injunctive relief sought by the classes. *See* Mot. 3, 6; Order on Class Cert. & PI 10 (noting that classes seek injunctive and declaratory relief, not monetary damages). As such, the cases Movants rely on only undermine their position. For instance, in *DeGier*, the court required that the notice "include a provision that a class member may opt out" "*[s]ince* plaintiff seeks damages for pain and suffering, back pay and punitive damages, [such that] the case may require official certification under (b)(3)," 76 F.R.D. at 126-27 (emphasis added). In *Allen*, the court distinguished between a "pure (b)(2)" class that seeks uniform injunctive relief and "a hybrid (b)(2) class" that also seeks individualized monetary relief and granted class members the opportunity to opt out of the class because their claims involved the latter, namely varying claims for backpay, *see* 100 F.R.D. at 376-77. And in *Shutts*, the Court specifically "limited" its holding requiring opt-out rights "to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments," 472 U.S. at 812 n.3.

As in those cases, courts distinguish between classes seeking individualized relief, such as individual monetary damages, which are typically certified under Rule 23(b)(3), and classes like this one seeking uniform declaratory and injunctive relief, which are typically certified under Rule 23(b)(2). *See, e.g., Allison*, 151 F.3d at 412; *Berry v. Schulman*, 807 F.3d 600, 611–13 (4th Cir. 2015) (similar). As the Fifth Circuit explained in *Allison*, "when monetary relief is the predominant form of relief sought[,] … the monetary interests of class members require [the] enhanced procedural safeguards" of (b)(3) certification, 151 F.3d at 413. On the other hand, "'the problems [warranting notice and opt-out] associated with a Rule 23(b)(3) class action … are not present'" in "'[t]he absence of a claim for monetary relief and [when] the nature of the claim asserted disclose that a Rule 23(b)(2) class action was contemplated.'" *Id.* (quoting *Sosna v. Iowa,* 419 U.S. 393, 398 n.4 (1975)). Accordingly, due process

22

requires notice and the opportunity to opt out in "a class action predominantly for money damages" and possibly in a class action where monetary claims are present but "do not predominate," *Wal-Mart*, 564 U.S. at 363, but it does not require such procedural protections where, as here, class members seek uniform declaratory or injunctive relief, *see 7547 Partners*, 114 F.3d 1183; *Kincade*, 635 F.2d at 506.[12]

In the case of a (b)(2) class, rather than mandating that class members be permitted to opt out, the Fifth Circuit has long held that class members' due process rights are protected by ensuring adequacy of counsel. *See Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 437 (5th Cir. 1979) ("When only equitable relief is sought in an action involving a cohesive plaintiff group such as a class of black employees …, the due process interests of absent members will usually be safeguarded by adequate representation alone."); *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1058 (5th Cir. 1979) ("Due process considerations are addressed through the determination of adequate representation."); *Woolen*, 684 F.2d at 326 n.1 (recognizing "no right to opt out in a (b)(2) action" and explaining that the due process inquiry "generally becomes one of adequacy of representation"); *see also Smith*, 216 F.R.D. at 379 ("Constitutional guarantees for absent members of a mandatory class are preserved through fulfillment of the adequacy of representation requirement of Rule 23(a) and the homogeneity requirements of Rule 23(b)(1)(A) and Rule 23(b)(2)."). Where this Court concluded that class counsel will adequately represent class members' interests, and Movants do not dispute that conclusion, the aforementioned cases show that Movants' due process interests are sufficiently protected.[13]

---

[12] Movants are incorrect that dicta in *Wal-Mart* suggests the lack of an opt-out right violates due process. *See* Mot. 14. The Court was referencing the possibility of a due process issue in a case where, unlike here, class members sought monetary relief even if the monetary claims did not "predominate." *Wal-Mart*, 564 U.S. at 363. Indeed, the Court explained that the due process concerns implicated by claims seeking *monetary* relief were "an additional reason not to read Rule 23(b)(2) to include … monetary claims"—that is, because claims omitting monetary relief avoided those concerns. *Id.*

[13] Consistent with this precedent, courts have specifically rejected Movants' argument that they have a property interest in their lawsuits that would be deprived without opt-outs rights, Mot. 14-15. *See Smith*, 216 F.R.D. at 379 (members of properly certified (b)(2) class "have no constitutionally-protected property right to personally vindicate their claims for monetary relief in separate litigation").

There is also no merit to Movants' argument that denying them the ability to opt out would violate their rights of association. *See* Mot. 16-18. "The First Amendment protects the right of all persons to associate together in groups to 'advanc[e] beliefs and ideas.'" *Mote v. Walthall*, 902 F.3d 500, 507 (5th Cir. 2018). "Put another way, 'the [F]irst [A]mendment protects the right of all persons to associate together in groups to further their lawful interests.'" *Id.* That is precisely what Rule 23(b)(2) is designed to do. *Messier*, 183 F.R.D. at 357 ("The entire purpose behind Rule 23(b)(2) is to resolve disputes concerning the existence of a policy and practice of discrimination against a broad class."). And although the First Amendment also protects "a freedom not to associate," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *see* Mot. 16, that protection extends only where forced association "may impair the ability of the original members to express only those views that brought them to-gether," *Roberts*, 468 U.S. at 623. That is not the case here. As this Court found, "the class representa-tive's claims [in Count I] have the same essential characteristics of those of the putative class," "arise from a similar course of conduct," and "share the same legal theory." Order on Class Cert. & PI 9. Namely, both Movants and Plaintiffs claim the racial classifications used to implement Section 1005 violate equal protection and thus, both seek to enjoin implementation of Section 1005 as currently configured. *See supra* BG § I. Indeed, Movants do not identify any objection to the "beliefs and ideas" of Plaintiffs or class counsel that could support a First Amendment claim. *Mote*, 902 F.3d at 507. Instead, they simply wish to control the litigation so they can make their preferred arguments, conces-sions, and appeal decisions. *See* Mot. 12. Such litigation preferences do not raise a constitutional issue.

Indeed, no court has ever held that denying a movant's request to opt out of a class certified under Rule 23(b)(2) would violate First Amendment rights of association. And the Fifth Circuit re-jected that argument in *Ayers*, noting that the plaintiffs who were denied the ability to opt out of the Rule 23(b)(2) class "provide[d] no authority for the proposition that denying them the right to opt out of a Rule 23(b)(2) class violates the First Amendment," 358 F.3d at 376. Movants likewise provide no

relevant authority here. The only case Movants cite to support their argument that "[t]he use of the class device" may infringe First Amendment freedoms is a forty-year-old opinion in which the Fifth Circuit held that a court order pursuant to Rule 23(d), enjoining all parties and counsel from communicating with class members who were not formal parties to the suit, was an unconstitutional prior restraint. *See* Mot. 16 (citing *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 475 (5th Cir. 1980)); *see Bernard*, 619 F.2d at 465, 467. *Bernard* is plainly inapposite: it did not involve an effort to opt out of a class, much less support Movants' argument that their inability to do so would violate their rights of association.[14]

Not only do Movants fail to cite any relevant authority to support their First Amendment argument, it is belied by the pertinent authority. Movants' view, premised on their disagreement with class counsel as to "features of the litigation," Mot. 15, would preclude a court from denying a motion to opt out of a certified class any time a movant disagrees with a litigation position of class counsel— even where, as here, Movants do not dispute adequacy of representation, *see id.* at 12. That view cannot be squared with Fifth Circuit precedent holding that "a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class," *Ayers*, 358 F.3d at 375, or the numerous cases in which courts have denied motions to opt out of a Rule 23(b)(2) class, despite even significant disagreement with the position of the named plaintiffs and the representation of class counsel, *see, e.g., id.* at 376 (upholding district court's denial of class members' motion to opt out of Rule 23(b)(2) class despite challenge to the adequacy of class counsel); *Messier*, 183 F.R.D. at 355–58 ("The presence of conflicting views within a class does not require that dissenters be allowed to opt out where their positions are being adequately represented by the defendants in the litigation."). As the aforementioned cases show, Movants' litigation preferences are not sufficient to permit them to opt out of the Rule 23(b)(2) class, and Movants have no First Amendment right to do so.

---

[14] Indeed, the Fifth Circuit did not even consider whether the district court's order violated First Amendment associational rights because of its prior restraint holding. *See Bernard*, 619 F.2d at 477-78.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Movants' motion to opt out of the classes certified in this case or to be excluded from those classes.

Date: September 24, 2021                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Acting Assistant Attorney General

                                            LESLEY FARBY
                                            Assistant Branch Director
                                            Civil Division, Federal Programs Branch

                                            _/s/ Kyla Snow_
                                            EMILY SUE NEWTON (VA Bar No. 80745)
                                            Senior Trial Counsel
                                            KYLA M. SNOW (Ohio Bar No. 96662)
                                            MICHAEL F. KNAPP (Cal. Bar No. 314104)
                                            Trial Attorneys
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW
                                            Washington, D.C. 20005
                                            Tel: (202) 305-8356 / Fax: (202) 616-8460
                                            emily.s.newton@usdoj.gov

                                            _Counsel for Defendant_

**Certificate of Service**

On September 24, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

  */s/ Kyla Snow*
KYLA M. SNOW
United States Department of Justice

27