IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, on behalf of himself and others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> TOM VILSACK, in his official capacity as SECRETARY OF AGRICULTURE, <br><br> *Defendant*. | Civil Action No. 4:21-cv-595-O |

# DEFENDANT'S RESPONSE TO THE
# FEDERATION'S MOTION TO INTERVENE AS DEFENDANT

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

KYLA M. SNOW (OHIO BAR NO. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-2071/ Fax: (202) 616-8460
michael.f.knapp@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT .................................................................................................................................. 5

    I.    STANDARD OF REVIEW ............................................................................................ 5

    II.    THE FEDERATION HAS NOT SHOWN THAT IT MAY INTERVENE AS OF RIGHT. ............................................................................................................. 7

    III.    ALTHOUGH UNNECESSARY, THE GOVERNMENT DOES NOT OPPOSE PERMISSIVE INTERVENTION UNDER REASONABLE CONDITIONS TO PREVENT UNDUE COMPLICATION AND DELAY. ........................................................................................................................... 13

CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Beauregard, Inc. v. Sword Servs. L.L.C.*,
  107 F.3d 351 (5th Cir. 1997) ................................................................................................... 14

*Brackeen v. Zinke*,
  2018 WL 10561984 (N.D. Tex. June 1, 2018) ................................................................. *passim*

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) ...................................................................................................... 9

*DeOtte v. Azar*,
  332 F.R.D. 173 (N.D. Tex. 2019) ....................................................................................... 5, 6, 7

*DOH Oil Co. v. QEP Res., Inc.*,
  No. MO:18-CV-0152-DC-RCG, 2019 WL 3816290 (W.D. Tex. May 20, 2019) ..................... 6

*Franciscan All., Inc. v. Azar*,
  414 F. Supp. 3d 928 (N.D. Tex. 2019) ..................................................................................... 14

*Franciscan All., Inc. v. Burwell*,
  2017 WL 2964088 (N.D. Tex. Jan. 24, 2017) ...................................................................... 9, 13

*Hopwood v. Texas*,
  21 F.3d 603 (5th Cir. 1994) ........................................................................................... 8, 10, 11

*John Doe No. 1 v. Glickman*,
  256 F.3d 371 (5th Cir. 2001) .................................................................................................... 15

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) .................................................................................................... 7

*NAACP v. New York*,
  415 U.S. 345 (1973) .................................................................................................................... 6

*Pigford v. Glickman, (Pigford I)*,
  185 F.R.D. 82 (D.D.C. 1999) ................................................................................................... 12

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) .................................................................................................... 12

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ................................................................................................. 5, 6

*Stringfellow v. Concerned Neighbors in Action*,
  480 U.S. 370 (1987) .................................................................................................................14

*Stupak–Thrall v. Glickman*,
  226 F.3d 467 (6th Cir. 2000) ....................................................................................................13

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
  834 F.3d 562 (5th Cir. 2016) ......................................................................................................6

*Wygant v. Jackson Bd. of Educ.*,
  476 U.S. 267 (1986) .................................................................................................................11

**Rules**

Fed. R. Civ. P. 24 ..................................................................................................................*passim*

**Regulations**

86 Fed. Reg. 28,329 (May 26, 2021) ...........................................................................................2

**Other Authorities**

Civil Rights at the USDA - A Report by the Civil Rights Action Team (1997) (CRAT Rep.),
  https://perma.cc/5DNF-PFJY .................................................................................................12

H.R. 1319, 117th Cong. (2021) ....................................................................................................2

Jackson Lewis LLP, "Civil Rights Assessment" Final Report (Mar. 31, 2011) (J-L Rep.)
  https://perma.cc/8X6Q-GZ5V .................................................................................................12

Politico (June 14, 2021), *available at* https://perma.cc/7K8A-TPBU ........................................7

**INTRODUCTION**

In this case, Plaintiffs challenge Section 1005 of the American Rescue Plan Act. The Federation of Southern Cooperatives/Land Assistance Fund has moved to intervene on behalf of its members, primarily Black farmers in the Southeast. The Federation seeks to defend Section 1005 alongside the United States. Because the United States represents the interests of the public in defending this challenge to a federal statute, the Government respectfully submits that intervention as of right would not be appropriate. But as explained below, the United States does not oppose permissive intervention in the unique circumstances of this case.

The Secretary has publicly stated his intention to forcefully defend Section 1005 to ensure that Black and other minority farmers receive the needed debt relief provided for under the statute. Indeed, the United States has zealously defended the statute in this and eleven other district courts. And it has done so based on the recognition that the debt relief is necessary because the U.S. Department of Agriculture ("USDA") has an unfortunate history of discrimination against minority farmers that has left them in an economically disadvantaged position today. The Federation believes that its members' interests differ from those of the government and that the government does not adequately represent its members' interests in this litigation. Although the government understands the Federation's interest in the case and, of course, recognizes that its members have a stake in the outcome, the Federation has not shown that Defendant is inadequately representing that interest, as it must to be granted intervention as of right. *See* Fed. R. Civ. P. 24(a)(2).

The Government, however, does not oppose permissive intervention in the current circumstances. Permissive intervention is largely a matter for this Court's discretion, and the Court could conclude that participation by the Federation as permissive intervenors is appropriate. Should the Court authorize permissive intervention, it should do so subject to reasonable limitations that will ensure that the resolution of this case is not "unduly delay[ed] or prejudice[d]," Fed. R. Civ. P. 24(b)(3),

as set forth below. Such restrictions would not impair the Federation's ability to meaningfully participate in the case, and Defendant does not believe they would be objectionable to the Federation. As an alternative, the Court may consider, and the Government would welcome, the Federation's active participation in this case as amicus curiae, including, potentially, the opportunity to submit declarations from its members, provided that such participation does not unduly complicate or delay the proceedings.

## BACKGROUND[1]

On March 11, 2021, the President signed into law the American Rescue Plan Act of 2021 ("ARPA"), providing $1.9 trillion in economic stimulus. *See* H.R. 1319, 117th Cong. (2021). Among that $1.9 trillion, Congress appropriated funds to pay off certain direct and guaranteed USDA farm loans held by "socially disadvantaged farmers or ranchers" ("SDFRs"). *See id.* § 1005. The USDA has interpreted SDFRs under Section 1005 as including, but not limited to, American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos. *See* Notice of Funds Availability, 86 Fed. Reg. 28,329, 28,330 (May 26, 2021).

On April 26, 2021, Plaintiff Sid Miller, a farmer who self-identifies as white, filed a complaint challenging Section 1005 on equal protection and other grounds. ECF No. 1. On June 2, 2021, Plaintiffs filed an amended complaint adding additional farmers, ECF No. 11, a motion to certify two classes of farmers and ranchers, Br. in Supp. of Mot. for Class Cert., ECF No. 13, and a motion for a preliminary injunction, ECF No. 18.

---

[1] Defendant has set forth the background of this matter in other filings in this Court. *See* Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj., ECF No. 27; Def.'s Partial Mot. to Dismiss, ECF No. 49; Def.'s Opp'n to Mot. to Opt Out, ECF No. 88. Here, Defendant includes only the background most pertinent to the instant motion and respectfully refer the Court to those previous filings for any additional background necessary.

The Government opposed both motions. In its opposition to Plaintiffs' motion for a preliminary injunction, the Government argued that Section 1005 is necessary to remedy the lingering effects of longstanding discrimination against minority farmers in USDA's loan programs and to ensure that the allocation of government funding is not perpetuating that discrimination. *See* Defs.' Opp'n to Pls.' PI Mot. 8, 19-20, ECF No. 27. In doing so, the Government documented the unfortunate, longstanding history of agency discrimination against minority farmers, as well as the lingering effects of that discrimination experienced by minority farmers today. *See id.* at 4-11, 17-20.

On June 15, 2021, the National Black Farmers Association ("NBFA") and the Association of American Indian Farmers ("AAIF"), non-profit organizations that advocate for the interests of Black and Native American farmers and ranchers, filed a proposed amicus brief in opposition to Plaintiffs' motion for a preliminary injunction, along with declarations from the associations' members, recounting their experiences of discrimination in USDA's farm loan programs. *See* ECF Nos. 29, 31. The Government did not oppose the associations' participation as amicus, and the Court granted the associations leave to file their amicus brief and accompanying declarations. *See* ECF No. 30. On June 9, 2021, the associations also filed a conditional motion to intervene. *See* Ass'ns' Cond'l Mot. to Intervene as Defs. 2, ECF No. 24. Therein, the associations noted that they "share the same objective as the Government in defending the laws challenged by this action," and thus were not seeking to intervene at that time. *Id.* They filed their conditional motion only as a placeholder to ensure timeliness and indicated that they would seek to intervene only if their interests diverged from the Government's in the future. *See id.* at 2.[2]

On July 1, 2021, the Court granted Plaintiffs' motion for a preliminary injunction and certified two classes to challenge Section 1005. *See* Order on Class Cert. & PI, ECF No. 60. The Government

---

[2] To date, the NBFA and AAIF have not sought to intervene.

filed a notice shortly thereafter, informing the Court of its interpretation of the scope of the preliminary injunction, as preventing the USDA from making payments under Section 1005 while this case is being adjudicated but permitting the agency to take preparatory steps, including sending offer letters to eligible borrowers, to enable prompt payments in the event the injunction is lifted. *See* Notice 2, ECF No. 61. The Court issued an Order on October 18, 2021, confirming that the agency could continue to ready itself by conducting such preparatory work. *See* Order 3, ECF No. 109.

After Plaintiff Miller filed suit in this Court, additional farmers filed lawsuits in eleven other district courts, likewise challenging Section 1005 on equal protection grounds.[3] In two of those lawsuits, the courts also preliminarily enjoined USDA from making payments under Section 1005. *See Wynn*, Order (June 23, 2021), ECF No. 41; *Holman*, Order (July 8, 2021), ECF No. 41.

After this Court certified classes that included the plaintiffs in all of the other pending lawsuits challenging Section 1005, the Government sought to stay proceedings in the other lawsuits in favor of proceeding in this class action. To date, the Government has succeeded in having eight of the cases largely stayed; one court has denied the motion to stay; and stay motions are pending in two others. On September 3, 2021, plaintiffs in five of the cases challenging Section 1005 moved to opt out of the classes certified here in order to proceed in their individual lawsuits instead. *See* ECF No. 78. The Government opposed the motion, *see* ECF No. 88, and on October 13, 2021, this Court denied the movants' motion to opt out of the certified classes, *see* ECF No. 100.

On September 22, 2021, the Court granted Plaintiffs leave to file, and the clerk docketed, a Second Amended Complaint in which Plaintiffs narrowed their claims to an equal protection and Title

---

[3] *See Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.); *Wynn v. Vilsack*, 3:21-cv-00514 (M.D. Fla.); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.).

VI challenge to Section 1005. *See* ECF Nos. 85-87. That day, the Court also entered the parties' jointly proposed schedule to govern the resolution of the merits of this case, with initial expert reports to be exchanged by December 17, 2021, and summary judgment motions to be filed by March 11, 2022. *See* Order, ECF No. 85. Today, the Court granted Plaintiffs leave to file, and the clerk docketed, a Third Amended Complaint in which Plaintiffs narrowed their claims to just an equal protection challenge to Section 1005. *See* ECF Nos. 131-135.

On October 12, 2021, the Federation filed a motion to intervene as a defendant in this action. *See* Mot., ECF No. 93. The Federation seeks to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure and permission to intervene under Rule 24(b). *See* Mem. of Law in Support of Mot. to Intervene ("Mem.") 2, ECF No. 93-1.

## ARGUMENT

### I. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 24(a) permits a party to seek intervention as of right while Rule 24(b) allows a party to seek permissive intervention." *DeOtte v. Azar*, 332 F.R.D. 173, 178 (N.D. Tex. 2019) (citing Fed. R. Civ. P. 24).[4] For both forms of intervention, a motion to intervene must be timely filed. *See* Fed. R. Civ. P. 24(a), (b)(1); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977).

For intervention as of right, the movant must also satisfy the following elements under Rule 24(a)(2): (1) he "must have an interest relating to the property or transaction which is the subject of the action;" (2) he "must be so situated that the disposition of the action may, as a practical matter,

---

[4] Hereinafter, all alterations, citations, omissions, quotations, and subsequent history are omitted unless otherwise indicated.

impair or impede his ability to protect that interest; and" (3) his "interest must be inadequately represented by the existing parties to the suit." *DeOtte*, 332 F.R.D. at 178. "Failure to satisfy [any] one requirement precludes intervention of right." *Id.*[5]

Permissive intervention is largely committed to the sound discretion of the district court. *NAACP v. New York*, 415 U.S. 345, 366 (1973). For permissive intervention, "[f]irst, the district court must decide whether 'the applicant's claim or defense and the main action have a question of law or fact in common.'" *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (quoting Fed. R. Civ. P. 24(b)(2)). "If this threshold requirement is met," then the district court should "exercise its discretion in deciding whether intervention should be allowed." *Id.* In doing so, the court next "determines whether intervention 'will unduly delay or prejudice the adjudication of the original parties.'" *DOH Oil Co., v. QEP Res., Inc.*, No. MO:18-CV-0152-DC-RCG, 2019 WL 3816290, at *5 (W.D. Tex. May 20, 2019) (citing Fed. R. Civ. P. 24(b)). Courts may also consider "whether the intervenor's interests are adequately represented by other parties and whether the[] [intervenor] will significantly contribute to full development of the underlying factual issues in the suit." *Brackeen v. Zinke*, 2018 WL 10561984, at *5 (N.D. Tex. June 1, 2018). Permissive intervention "is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *DeOtte*, 332 F.R.D. at 185.

Whether seeking to intervene under Rule 24(a) or 24(b), the movant bears the burden of establishing that intervention is appropriate. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016).

---

[5] A movant may also intervene under Rule 24(a) if he has "an unconditional right to intervene by a federal statute," Fed. R. Civ. P. 24(a)(1), or under Rule 24(b) if he has "a conditional right to intervene by federal statute," Fed. R. Civ. P. 24(b)(1)(A). The Federation has not invoked a federal statute as the basis for intervention.

6

## II. THE FEDERATION HAS NOT SHOWN THAT IT MAY INTERVENE AS OF RIGHT.

The United States is presumptively an adequate representative of the public in a case challenging the constitutionality of a federal statute, and for this reason the Government consistently opposes intervention as of right in a case like this. In this case, the Government respectfully submits that the Federation is not entitled to intervene under Rule 24(a) because it has not shown that the Government is inadequately representing the interests of socially disadvantaged farmers, including the Federation's members. *See Brackeen*, 2018 WL 10561984, at *3–4 (noting the burden of showing inadequate representation rests with the putative intervenor). That is sufficient to deny intervention as of right; the Court need not address the other factors under Rule 24(a).

The Government is charged by law with defending the constitutionality of Section 1005. And the Government, accordingly, "ha[s] taken no action inconsistent with [movant]'s objective to demonstrate the constitutionality of [Section 1005]." *Brackeen*, 2018 WL 10561984, at *3. On the contrary, the Government has zealously defended Section 1005 in this and eleven other district courts. *See supra* Background ("BG"). Indeed, the Secretary of Agriculture has committed to doing so publicly. *See USDA will 'forcefully defend' debt relief for farms of color after judge's order*, Politico (June 14, 2021) ("USDA will continue to forcefully defend our ability to carry out this act of Congress and deliver debt relief to socially disadvantaged borrowers."), *available at* https://perma.cc/7K8A-TPBU. And the agency is taking all necessary preparatory steps to ensure that it will be ready to provide debt relief under Section 1005 promptly in the event the current injunctions are lifted. *See id.*; *supra* BG; Notice 2. Under these circumstances, the Federation has not shown that its interests are inadequately represented by the existing parties, as it must to establish a right to intervene. *See DeOtte*, 332 F.R.D. at 178; *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997) (governor and state attorney general's vigorous defense of challenged initiative both in court and in the political arena demonstrated

7

they were ready, willing, and able to protect prospective intervenor's asserted interest in upholding the initiative).

The Federation characterizes its burden to establish inadequate representation as "minimal," *see* Mem. 19, but, as the Fifth Circuit has held, "where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994). Indeed, the Fifth Circuit has recognized two "presumptions of adequate representation." *Brackeen*, 2018 WL 10561984, at *3. One presumption arises when the movant "has the same ultimate objective as a party to the lawsuit," in which case the movant "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* Another presumption arises in suits, like this, "involving a matter of sovereign interest," where the government "is presumed to represent the interests of all its citizens." *Hopwood*, 21 F.3d at 605. In such a case, the movant similarly "must show that its interest is in fact different from that of the [government] and that the interest will not be represented by [the government]." *Brackeen*, 2018 WL 10561984. Both presumptions apply here, and the Federation has not rebutted them.

The Federation shares the same ultimate objective as the Government—namely, the unimpeded implementation of Section 1005. *See* Mem. 2, 13 n.3 ("The Federation seeks the same relief as the Secretary."), 20; Proposed Answer to Pls.' 2AC, ¶¶ 22-24 (denying "that the Department of Agriculture is violating the Constitution and Title VI" and denying "that Plaintiffs are entitled to their requested relief, or any relief whatsoever"), ECF No. 93-3; Ass'ns' Cond'l Mot. to Intervene as Defs. 2. And the Federation does not argue that its interests and the Government's are actually adverse or allege that there are any issues of collusion or malfeasance. Consequently, the presumption that the

8

Government adequately represents the Federation's (and its members') interests stands, and the Federation is not entitled to intervene as of right. *See, e.g., Franciscan All., Inc. v. Burwell*, 2017 WL 2964088, at *4 (N.D. Tex. Jan. 24, 2017) (applying presumption to deny intervention as of right).

Nor does the Federation rebut the governmental presumption, which provides a second, independent, reason to deny intervention as of right. The Federation concedes that the governmental presumption applies, *see* Mem. 19, but it attempts to rebut the presumption by relying on *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014), to argue that the Government's "many interests" compromise the adequacy of its representation. Mem. 20. But as this Court has recognized in another case, *Brumfield* turned on factors that were unique to that case, where the defendant state's interests were not only broader than the intervenors' interests but were actually *at odds* with them. That is not the case here.

In *Brumfield*, the United States had sought to enjoin Louisiana from awarding school vouchers in districts under desegregation orders, unless authorized by the court overseeing the desegregation order. The Fifth Circuit held that parents whose children had received school vouchers had a right to intervene as defendants in the case. The court reasoned that while the parents' "only concern [wa]s keeping their vouchers," "[t]he state ha[d] many interests [to balance] in th[e] case," including maintaining "its relationship with the federal government and with the courts that have continuing desegregation jurisdiction." *Brumfield*, 749 F.3d at 346. The court also noted that the parents and the state had "stak[ed] out … significantly different" positions in the case, with the intervening parents challenging the jurisdiction of the district court while the state conceded it. *Id.* Because of "[t]he lack of unity in all objectives, combined with real and legitimate additional or contrary arguments" of the parents, the court concluded that Louisiana's representation may be inadequate and that the parents had a right to intervene. *Id.*

The Federation argues that it has a right to intervene here because, as in *Brumfield*, the Secretary "has 'many interests,'" while the Federation has "much more focused . . . concerns." Mem. 20. But the concerns animating the decision in *Brumfield* are not present here. As this Court recognized in another case with a federal defendant, "while the *Brumfield* intervenors feared the influence of the federal government over the state, here, the federal government *is* the defendant." *Brackeen*, 2018 WL 10561984, at *4 (emphasis added). In the present action, movants "have not demonstrated any reason to think the federal government will not zealously defend its own laws." *Id.* And unlike in *Brumfield*, the Federation and the Government are not making "contrary" arguments. Rather, both the Federation and the Government believe that the Section 1005 program is critical to address the USDA's longstanding discrimination against minority farmers, *see* Mem. 10, and the Government is vigorously defending the constitutionality of the statute on that basis, *see* Defs.' Opp'n to Pls.' PI Mot. 8, 19-20. This case is thus readily "distinguishable" from *Brumfield*, and the Federation "has not met its burden to show that it is inadequately represented." *Brackeen*, 2018 WL 10561984, at *4 (holding as much where proposed intervenor "ha[d] not shown that its goals and the goals of current parties [we]re, in any way, opposed").

The Fifth Circuit rejected an argument nearly identical to the Federation's in *Hopwood*, 21 F.3d 603. There, two associations representing Black law school applicants sought to intervene in an action by two white law school applicants who claimed that they were denied admission due to the university's affirmative action program. *Id.* at 604. The association argued that it had a right to intervene in the lawsuit because "the State must balance competing goals while they [we]re sharply focused on preserving the admissions policy" and that, "because of its competing goals, the State [wa]s not in as good a position to bring in evidence of present effects of past discrimination and current discrimination." *Id.* at 605. The Fifth Circuit disagreed and affirmed the lower court's decision to deny the

10

association's motion to intervene. The court explained that in order to justify the racial justice program at issue, "the State must show that there are 'present effects of past discrimination.'" *Id.* (quoting *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267 (1986)). And it upheld the district court's determination that the State could adequately do that, explaining that the associations "ha[d] not demonstrated that the State w[ould] not strongly defend [the] program," the association had not shown that they "ha[d] a separate defense . . . that the State ha[d] failed to assert," and that even if the associations had better access to evidence than the State, they could "act as amicus" to present that evidence. *Id.* at 606.

Just as the associations did in *Hopwood*, the Federation argues that due to the Government's alleged varied interests, it will not be able "to articulate the USDA's present-day and historical discrimination against minority farmers and inadequacies of previous reforms . . . to the same extent that victims of that discrimination will." Mem. 20. As in *Hopwood*, however, the Federation has not identified a separate defense that the Government has failed to assert. The Federation has not shown that the Government will not continue to strongly defend Section 1005, as it has to date. As in *Hopwood* then, the Federation has not shown inadequate representation and does not have a right to intervene. *See Hopwood*, 21 F.3d at 606.

The Federation's remaining arguments do not undermine that conclusion. The Federation argues that the Government's defense is inadequate because "[t]he record is currently devoid of any stories or narratives of Black farmers or other farmers of color." Mem. 20. But the record does include such narratives. The Government's opposition to Plaintiffs' motion for a preliminary injunction cites many of the same sources cited in the Federation's motion, including the report by the Civil Rights Action Team ("CRAT"), the *Pigford* lawsuits, and the Jackson Lewis Report, and incorporates numerous first-hand accounts from minority farmers, both within those reports and in the Government's briefing, including:

11

- Minority farmers' accounts of unexplained delays in processing their loan applications, arbitrary reductions in farm loans by county officials, and failures to receive promised loans at all, often leaving them "without enough money to repay suppliers and any mortgage or equipment debts," Def.'s Opp'n to Mot. for PI 22 (quoting CRAT Rep. 3, 6-7, 15-16);

- Allegations by African-American farmers that they received USDA loans after "planting season was over, [when] the loans w[ere] virtually useless," or received supervised loans requiring a county supervisor's co-signature before funds could be withdrawn, *id.* at 23 (quoting *Pigford v. Glickman, (Pigford I)*, 185 F.R.D. 82, 87 (D.D.C. 1999));

- Complaints by African-American farmers that "'[w]hen loans are approved for African Americans, FSA tends to 'control the purse strings' (uses supervised accounts), and the same is not true for Whites who receive loans," *id.* at 25 (quoting J-L Rep. 85-86).

The record also includes an amicus brief and conditional motion to intervene from the NBFA and the AAIF, accompanied by multiple declarations from minority farmers recounting their personal experiences of USDA discrimination. *See* ECF Nos. 24, 57. To the extent the Federation wants to introduce additional first-hand accounts from Black and other minority farmers, the Government supports the Federation acting as amicus in this case to provide those accounts. Alternatively, as discussed below, the Court may conclude that permissive intervention is appropriate under specified conditions, which the Government does not oppose.

Finally, the Federation argues that the Government's representation is inadequate because "the Federation will present the case of past governmental discrimination more comprehensively and compellingly than the government," and the Government cannot do so "to the same extent that victims of discrimination will." Mem. 21. But "it will often be the case that a private party has greater first-hand knowledge of the impact of [government action] on private individuals than the government." *Prete v. Bradbury*, 438 F.3d 949, 959 (9th Cir. 2006). That does not mean that the Government,

in such cases, provides inadequate representation. Otherwise, any individual directly affected by a government program would be able to demonstrate inadequate representation, rendering this prong of Rule 24(a) a nullity and vitiating the governmental presumption entirely. *See Stupak–Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (warning against construing Rule 24 to "pose[] no barrier to intervention at all."). Moreover, the Government is committed to presenting the case for Section 1005.

## III. ALTHOUGH UNNECESSARY, THE GOVERNMENT DOES NOT OPPOSE PERMISSIVE INTERVENTION UNDER REASONABLE CONDITIONS TO PREVENT UNDUE COMPLICATION AND DELAY

The Government does not oppose permissive intervention in the circumstances of this case. Permissive intervention is largely a matter of this Court's discretion, in which the Court considers whether participation by an intervenor would threaten to unduly delay the resolution of the case or unduly prejudice the interests of the parties and the public. *See* Fed. R. Civ. P. 24(b)(3). For the reasons given above, the Government does not believe that the Federation's participation as a defendant is necessary in this case, because the Government is forcefully defending the constitutionality of Section 1005 and adequately represents the interests of the Federation's members. *See Brackeen*, 2018 WL 10561984, at *5 (denying permissive intervention, in part, because the proposed intervenor had not demonstrated inadequate representation). The Government recognizes, however, that the Federation has an interest in this case. The Government thus does not object to permissive intervention. Should the Court authorize permissive intervention, however, it should do so under conditions that will prevent undue complication and delay of the litigation. In addition, the Court may consider, and Defendant would welcome, other measures to ensure that the perspective of the Federation's members is heard, including active participation as amicus curiae.

The Court must satisfy itself that intervention would not "unduly delay [and] prejudice the adjudication of the rights of the original parties." *Franciscan All.*, 2017 WL 2964088, at *4. Here, the

current parties have agreed that no discovery (other than expert discovery) is necessary to resolve this case. Moreover, as the Court is aware, the issues in this case have been narrowed to an equal protection challenge to Section 1005. The parties have agreed to a schedule, entered by this Court that allows the parties' experts to develop their reports while also ensuring the efficient resolution of this matter. The Federation's motion refers to discovery multiple times, *see* Mem. at 15-16, 22. But the Federation also indicates that it does not "intend to seek reconsideration of any rulings in the case to date." *Id.* at 15. In light of the Federation's statement that it does not seek to revisit any previously decided issues, we do not understand the Federation to be asking to participate in a manner that would involve seeking fact discovery or participating in expert discovery beyond participating in any depositions of any experts proffered by Plaintiffs.[6]

It is "a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997). Indeed, in accordance with Rule 24, if a court "determines that intervention would cause . . . undue delay or prejudice" to the parties, "a federal district court is able to impose almost any condition." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019). Such limitations have included preventing intervenors from asserting claims that have not already been asserted by one of the existing parties, *see Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 373 (1987), "conducting discovery," and "disrupting the dispositive motion schedule," *Franciscan All.*, 414 F. Supp. 3d at 940.

Imposing reasonable limitations would be appropriate here, and we do not believe they would be objectionable to the Federation. As noted, the claims in this case have been narrowed to a single distinct legal challenge to Section 1005. *See* BG; Pls.' 3AC, ECF No. 135. The parties agree that these proceedings can be resolved without fact discovery. *See* ECF No. 83-1. And the Court has already

---

[6] Defendant understands that the Federation does not seek to depose Defendant's expert. Defendant would allow the Federation to have access to Defendant's expert disclosures.

entered an agreed-upon scheduling order to govern the merits of these proceedings. *See* ECF No. 85. "[B]ecause an intervenor must accept the proceedings as he finds them," and "has no right to relitigate issues already decided," *John Doe No. 1 v. Glickman*, 256 F.3d 371, 378 (5th Cir. 2001), and consistent with what we understand to be the Federation's intent, an order permitting the Federation to permissively intervene should confirm that the Federation may not (1) assert any new claims or cross-claims in this matter, (2) seek to conduct fact discovery or written expert discovery,[7] or (3) otherwise disrupt the schedule this Court entered without agreement of the parties or the Court's approval.

## CONCLUSION

For the foregoing reasons, Defendant respectfully opposes the Federation's motion to intervene as of right but does not object to permissive intervention under the conditions set forth above. If the Court were to permit the Federation to intervene, Defendant requests that the conditions on intervention set forth above be imposed and confirmed in any order granting permissive intervention.

---

[7] As noted above, we understand the Federation, which would be permitted to intervene as a defendant, does not wish to depose Defendant's expert. Defendant does not object if the Federation, as an intervenor-defendant, wishes to depose any expert Plaintiffs may offer.

15

Date:  November 12, 2021							Respectfully submitted,

                                                  BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

 */s/ Michael F. Knapp*
KYLA M. SNOW (Ohio Bar No. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-2071 / Fax: (202) 616-8460
michael.f.knapp@usdoj.gov

*Counsel for Defendant*

## Certificate of Service

On November 12, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

 */s/ Michael F. Knapp*
MICHAEL F. KNAPP
United States Department of Justice

16