UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al.,<br><br>    *Plaintiffs,*<br><br>    *v.*<br><br>TOM VILSACK, in his official capacity as Secretary of Agriculture,<br><br>    *Defendant.* | No. 4:21-cv-00595-O |

**REPLY MEMORANDUM IN SUPPORT OF
THE FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE
FUND'S MOTION TO INTERVENE AS A DEFENDANT**

    Thousands of Black farmers and other socially disadvantaged farmers and ranchers ("SDFRs") are eligible for debt relief under Section 1005 of the American Rescue Plan Act ("Section 1005") to help mitigate the harm caused by the Department of Agriculture's ("USDA") discriminatory administration of its loan programs. But Plaintiffs' lawsuit threatens the prospect of debt relief promised to SDFRs by the statute. The Federation of Southern Cooperatives/Land Assistance Fund (the "Federation") moved to intervene to defend the interests of its members who are eligible for debt relief under Section 1005, many of whom relied upon the promised relief when making important decisions regarding farm operations and investments.

    Yet both the Secretary and Plaintiffs claim that the Federation does not qualify for intervention as of right. Though they do not deny that Black farmers have faced discrimination by USDA or that rescinding Section 1005 would cause great harm to SDFRs, both parties' main argument rests on the assumption that the government is "zealously" defending Section 1005 and thus adequately represents the interests of Black farmers. They are wrong. The government's

1

interest in avoiding liability impedes its ability to adequately represent the Federation's interests, which depend on a robust exposition of the discrimination in USDA lending programs that Congress sought to remediate in enacting Section 1005. The divergence in interest between the Secretary and the Federation is also demonstrated by the fact that during the pendency of this very lawsuit, USDA has issued letters to Federation members acknowledging their eligibility for loan relief but threatening acceleration of their loans and foreclosure of their farms.

The Secretary does not oppose permissive intervention by the Federation. Plaintiffs, however, in a cursory, three-page brief, argue that permissive intervention is also inappropriate because the Federation does not have a claim or defense in this suit. That is clearly not so, given that the Federation is prepared to defend the constitutionality of Section 1005, the sole basis of Plaintiffs' challenge to the law. The Court should thus permit the Federation to intervene.

**I.      The Federation is entitled to intervene as of right.**

Plaintiffs and the Secretary recognize that the Federation fulfills the first three requirements for intervention of right under *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001)[1]; their only contention is that the government adequately represents the Federation's interests. But any presumption of the adequacy of the government's representation of the Federation's interests is defeated by adversity of interests between the Federation and the government, including both the government's incentive to avoid presenting evidence that could expose USDA to liability for discriminatory practices and the fact that USDA has issued letters to farmers otherwise eligible for Section 1005 relief, threatening foreclosure of their farms.

---

[1] A prevailing motion to intervene as of right under Federal Rule of Civil Procedure 24(a) must satisfy the following requirements: 1) the motion to intervene is timely; 2) the movant has an interest that is related to the property or transaction that forms the basis of the lawsuit; 3) the disposition of the lawsuit may impair or impede the movant's ability to protect its interest; and 4) the existing parties do not adequately represent the movant's interest. *Glickman*, 256 F.3d at 375.

2

### A. Even if a presumption of adequate representation exists, the Federation overcomes it.

Even assuming *arguendo* a presumption of adequate representation exists, such presumption is overcome by the divergence of interests between USDA and the Federation. The Fifth Circuit recognizes two presumptions of adequate representation. *See Brackeen v. Zinke*, No. 4:17-CV-00868-O, 2018 WL 10561984, at *3 (N.D. Tex. June 1, 2018). One presumption applies when the intervenor has the same ultimate objective as the party. *Edwards*, 78 F.3d 983, 1005 (5th Cir. 1996). To overcome this presumption, the intervenor must show "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id*. Another presumption applies when the party is a governmental body or officer charged by law with representing the interests of the intervenor. *Id*. Like the first type, an intervenor can overcome the government-representative presumption if its interest is different from that of the government. *Id*.

Assuming without conceding[2] that either presumption of adequate representation applies, the Federation has rebutted it by showing adversity of interest between itself and USDA. *See Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015) (holding that prospective intervenor rebutted "one or both presumptions," assuming *arguendo* that they applied, "by showing adversity of interest between themselves and the Government"). "In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Id.*

The Secretary argues that the Federation cannot overcome these presumptions because the "government has zealously defended Section 1005." ECF No. 136 at 11. The government also cites two cases in which the proposed intervenors could not overcome these presumptions of

---

[2] The government asserts that the Federation has conceded that the governmental presumption applies. Def.'s Resp. at 9. Not so. Instead, the Federation merely explained that, given the facts of this case, it must demonstrate that its interests differ from the agency's. *See* ECF No. 93 at 19.

3

adequate representation, *Brackeen v. Zinke* and *Hopwood v. State of Texas*. In *Brackeen v. Zinke*, the proposed intervenors could not show that the defendants did not adequately represent its interests because both groups shared the same objective of protecting the constitutionality of the Indian Child Welfare Act. 2018 WL 10561984, at *4. The Court noted that the proposed intervenors "have not demonstrated any reason to think the federal government will not zealously defend its own laws." *Id*. Similarly, *Hopwood* concerned proposed intervenors who did not meet their burden of demonstrating a separate interest inadequately represented by the State because both parties wanted to defend an affirmative action program. *Hopwood v. State of Texas*, 21 F.3d 603, 606 (5th Cir. 1994).

The government's reliance on *Brackeen* and *Hopwood* is inapplicable here because there is adversity of interest between the Federation and the government. To be sure, both the Federation and the Secretary want to uphold the constitutionality of Section 1005. But that broad shared interest is not necessarily enough to determine that the government is adequately representing the Federation's interests in this case. *See Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). If it were, potential intervenors would always be rejected when opposing a challenge to a statute. Indeed, "the lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate[.]" *Id.* at 34. And showing that representation *may* be inadequate is enough to satisfy "the minimal burden" that mandates intervention. *Id.*

The government suggests that *Brumfield* does not apply because "the Federation and the [g]overnment are not making 'contrary' arguments," given that they both support the constitutionality of the debt relief program. ECF No. 136, at 10. The Fifth Circuit rejected that precise argument in *Brumfield*. *See* 749 F.3d at 345–46 (holding that even where a proposed

4

intervenor and the government share the same goal of upholding a governmental program, intervention is proper where "their interests *may not* align precisely") (emphasis added).

The Secretary and Plaintiffs' claim that the government is "zealously" defending Section 1005 (and the Federation's interests, by extension) rings hollow. As explained in more detail below, the Federation has a much stronger incentive to present evidence of discrimination by USDA—particularly in recent years—than the Secretary does. More strikingly, over the course of this litigation, USDA has sent letters to SDFRs, including members of the Federation, informing them that even though they are members of a socially disadvantaged group that may be eligible for debt relief under Section 1005, the agency intends to accelerate their loans and initiate foreclosure proceedings. *See* Supp. App. at 001–006. According to the letter, the agency will take action to sell "real estate, personal property, crops, livestock, equipment, or any other assets in which the Agency has a security interest." *Id*. These letters contradict the Federation's interests in defending Section 1005 (i.e., promoting the financial stability of its members) and cast serious doubt on the notion that the Secretary is committed to "zealously" defending the interests of the Federation's members—especially given that USDA stands to benefit financially from foreclosure of SDFRs' farms and other property.

In *Texas v. United States*, the proposed intervenors sought to uphold Deferred Action for Parents of Americans ("DAPA"). 805 F.3d at 663. Although the government and proposed intervenors shared the same interest in preserving DAPA, their interests diverged. *Id*. Specifically, the government took the position that States could refuse to issue driver's licenses to deferred action recipients, which was directly adverse to the proposed intervenors who were eligible for deferred action. *Id*. The proposed intervenors thus overcame the presumption of the government's adequate representation. *Id*. Like the government in *Texas*, here USDA has taken a

position directly adverse to the Federation by deciding that farmers eligible for debt relief may still be subjected to loan acceleration and foreclosure proceedings. The divergent interests between the government and the Federation refute any presumption of adequate representation. Thus, the Federation is entitled to intervention as of right.

  B. **The Federation's ability—and incentive—to present a more comprehensive record than the Government weighs in favor of intervention as of right.**

Given that any presumption of adequacy of representation is overcome by the divergence of interest between the Federation and the government, the Federation's burden is "minimal" and does not require a showing "that the representation by existing parties will be, for certain, inadequate. Instead, the Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate." *Texas*, 805 F.3d at 661.

The Federation meets its minimal burden through evidence within its unique possession that the government is motivated to sweep under the rug: the personal experiences of Black farmers who have endured discrimination. The government contends that it already has presented the narratives of Black farmers and other farmers of color through the Civil Rights Action Team report, published in 1997, the *Pigford* lawsuits, which were settled in 1999 and 2010, and the Jackson-Lewis Report, published in 2011. These sources, the most recent of which is **ten years old**, lack firsthand accounts of contemporary Black farmers who are currently struggling with debt resulting from discrimination. By contrast, the Federation's members are uniquely positioned to augment the record with their lived experiences of how discrimination has exacerbated their present-day debt burden. These voices of victims of the discrimination that Congress intended to remedy by enacting Section 1005, which the government has ignored in this suit, are critical evidence in support the statute.

Indeed, the government implicitly concedes that the Federation "has greater first-hand knowledge of the impact of government action on" Black farmers than the government does. ECF No. 136, at 16 (citing *Prete v. Bradbury*, 438, F.3d 949, 959 (9th Cir. 2006)). But the government asks the Court to disregard the Federation's singular perspective because otherwise

there would be "no barrier to intervention at all." *Id.* at 13 (citing *Stupak–Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000)). The government's own authority undermines its position. First, in *Stupak-Thrall*, the Sixth Circuit denied intervention on the basis of untimeliness—not adequacy of representation. 226 F.3d at 472–73. Even so, the court in *Stupak-Thrall* noted that "Rule 24 should be 'broadly construed in favor of potential intervenors'" and that the court "ha[d] recently gone so far as to say that 'proposed intervenors need only show that there is a *potential* for inadequate representation.'" *Id.* (emphasis in original).

The government's reliance on *Prete v. Bradbury* also is misplaced. *See* ECF No. 136, at 12. The government suggests that a proposed intervenor's superior access to firsthand knowledge does not factor into a court's determination of the adequacy of representation. *See id.* Setting aside that *Prete* is not binding on this Court, the Ninth Circuit did not go so far. In *Prete*, the court merely held open—in a footnote—the possibility that a party's superior knowledge of the subject matter would not be determinative in every case. 438 F.3d 949, 958 n.13 (9th Cir. 2006). In *Prete*, the court denied intervention as of right because the intervenors failed to present any evidence that the government could not have obtained the knowledge it lacked. *Id.* Here, the Federation has identified specific evidence—direct testimony from present-day, debt-burdened Black farmers about their own experiences of discrimination—that the government has proved unwilling or unable to obtain in its defense of Section 1005. Black farmers and other SDFRs who anxiously await the promised loan forgiveness of Section 1005 have the highest stake in this litigation and vital evidence only they can offer. By muting these voices, the federal government has demonstrated that it cannot adequately represent the Federation's interests.

The Federation also intends to introduce expert testimony to prove the discriminatory practices by USDA that Congress intended to remedy by enacting Section 1005. While the Federation understands that the Government may present expert testimony in its defense of the statute, the Government has a strong incentive to pull its punches when eliciting testimony on the discriminatory practices suffered by the Federation's members and other SDFRs.

Finally, the Federation's interests in this case are not fully served by filing an amicus brief, as Plaintiffs and the government suggest. An amicus's role in a case is necessarily more limited than that of a party: an amicus "cannot raise an issue raised by neither of the parties absent exceptional circumstances," *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1293 (5th Cir. 1991); an amicus "does not have all the rights of a party, including the right of full participation in the proceedings as well as the right of appeal or further participation in the proceedings," *Parm v. Shumate*, No. 3-01-2624, 2006 U.S. Dist. LEXIS 27521, at *3–4, 2006 WL 1228846, at *3–4 (W.D. La. May 1, 2006); and "amicus briefs are limited to advising a court on issues of law, not issues of fact," *Baugh v. City of Jacksonville*, No. 6:08cv219, 2008 U.S. Dist. LEXIS 100443, at *2 (E.D. Tex. July 16, 2008) (citation omitted). Relegating the Federation, whose members have personally experienced the discrimination Section 1005 addresses, to amicus hamstrings its ability to present facts and issues central to this litigation and to directly participate in the proceedings, including appeal if necessary.  For example, the Federation intends to argue, among other things, that it is inequitable to suddenly terminate a governmental program upon which individuals—like the Federation's members—have come to rely.  *See* ECF No. 93, at 17 (citing *Texas v. United States*, No. 1:18-CV-00068, 2021 U.S. Dist. LEXIS 133117, at *13 (S.D. Tex. July 16, 2021)).  The Government, which has given no indication that it intends to present evidence concerning the lived experiences of the present-day SDFRs whose livelihoods stand to be dramatically altered depending on the outcome of this litigation, cannot be expected to argue that it would be unjust to suddenly terminate a program on which the Federation's members reasonably and foreseeably relied (based on letters advising them they were eligible for debt relief) when they made decisions to purchase expensive equipment or make other investments on their farms.  An amicus brief is simply not the proper vehicle for raising this argument in a lawsuit, and the Federation must intervene to ensure that it is presented.

## II.    The Federation easily meets the requirements for permissive intervention.

The Federation has met the requirements for permissive intervention, which the government does not dispute. Plaintiffs' sole objection to permissive intervention is that the Federation has failed to assert a defense under Rule 24. Not true. In *Texas v. United States*, it was "clear" that states that sought to intervene to defend the constitutionality of the Patient Protection and Affordable Care Act ("ACA") met the "defense" element of Rule 24 because the states asserted an interest in "protect[ing] their existing healthcare infrastructure and the orderly operation of their healthcare systems, which would be thrown into disarray if the ACA were ruled unconstitutional." No. 4:18-cv-00167-O, 2018 U.S. Dist. LEXIS 235568, at *15, 2018 WL 10562846, at *3 (N.D. Tex. May 16, 2018) (O'Connor, J.) (citations and internal quotation marks omitted). Indeed, "[s]everal courts have permitted parties such as the proposed intervenors to intervene in lawsuits like the one[] here." *Siesta Vill. Mkt., LLC v. Perry*, No. No. 3:06-CV-0585, 2006 U.S. Dist. LEXIS 46039, at *4, 2006 WL 1880524 (N.D. Tex. July 7, 2006) (citing *Granholm v. Heald*, 544 U.S. 460, 469, 470–71 (2005)) (permitting intervention where private organizations sought to join Texas in defending the constitutionality of a state statute). *See also Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019) (O'Connor, J.) (finding that proposed intervenors' goal of upholding the lawfulness of a federal regulation to be "a 'defense that shares with the main action a common question of law or fact'" and "directly related to the underlying controversy, especially . . . where Putative Intervenors respond directly to Plaintiffs' arguments.") (quoting Fed. R. Civ. P. 24(b)(1)).

Plaintiffs' objection to the Federation's intervention in this matter is surprising, because the Federation plainly has a ***greater*** stake in this matter than Plaintiffs do. The Federation has shown—and no other party disputes—that its members have an interest in the debt relief that is at the heart of this case. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, (5th Cir. 2016) (holding that the beneficiaries of a regulation have a legally protectible interest in such regulation). Like the successful intervenors in *Texas*, *Siesta Village*, and

9

*Franciscan Alliance*, the Federation seeks to protect that interest by defending the legality of the law to which the interest is directly tied.

Plaintiffs, on the other hand, have no claim to any debt relief: they are apparently ineligible for the funds allocated under Section 1005 and, even if they prevail, this Court has recognized that it cannot extend debt relief to Plaintiffs. ECF No. 60 at 20. Thus, even if Plaintiffs succeed, they will be in the exact same financial position as they were in when the case was filed. By marked contrast, the Federation's members have everything to gain—or lose. Without this critical relief, many Black farmers, who already have endured years of discrimination and hardship, will face financial ruin, foreclosure, and bankruptcy. *See* ECF No. 93 at 10, 17. Plaintiffs' argument that they themselves are entitled to a role in this litigation, but the intended recipients of the promised debt relief are not, falls flat and should be rejected.

## CONCLUSION

For the foregoing reasons, the Federation respectfully requests intervention as of right pursuant to Rule 24(a) or, in the alternative, permissive intervention pursuant to Rule 24(b).

Dated: December 1, 2021                Respectfully submitted,

*/s/ Chase J. Cooper*

Chase J. Cooper
TX Bar No. 24087342
ccooper@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
P: 214-453-6500

George C. Lombardi *(admitted pro hac vice)*
Illinois Bar No. 6187715
glombardi@winston.com
Julie A. Bauer *(admitted pro hac vice)*
Illinois Bar No. 6191271
jbauer@winston.com
Rebecca Carter *(admitted pro hac vice)*

Illinois Bar No. 6335662
rcarter@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
P: 312-558-5600


Kobi K. Brinson *(admitted pro hac vice)*
NC Bar No. 23827
kbrinson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
P: 704-350-7700


Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700


Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Maryum Jordan *(admitted pro hac vice)*
California Bar No. 325447
mjordan@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*

11

California Bar No. 301934
nkashyap@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

*Counsel for The Federation of Southern Cooperatives/Land Assistance Fund*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on December 1, 2021, which will serve all counsel of record.

*/s/ Chase J. Cooper*

Chase J. Cooper