UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al.,<br><br>　　　*Plaintiffs,*<br><br>　　v.<br><br>TOM VILSACK, in his official capacity as Secretary of Agriculture,<br><br>　　　*Defendant.* | No. 4:21-cv-00595-O |

## COURT-ORDERED JOINT STATUS REPORT

"In light of the Fifth Circuit's order and opinion" reversing the Court's denial of the motion to intervene filed by the Federation of Southern Cooperatives/Land Assistance Fund (the "Federation"), the Court ordered "the parties to meet and confer with the Federation." ECF No. 178. The Court further ordered the parties and the Federation to file a joint status report by April 1, 2022 addressing the following issues:

1) what limitations, if any, the Court should place on the Federation's participation in this case;
2) what amendments, if any, the Court should make to the briefing schedule;
3) whether the parties continue to oppose the intervention of the National Black Farmers Association and the Association of American Indian Farmers; and
4) any other issues the Court should consider in light of the Federation's intervention.

Plaintiffs, the Government, and the Federation met and conferred as ordered. With the benefit of that conferral, Plaintiffs, the Government, and the Federation respond to the issues identified by the Court as follows.

**I.      Limitations on the Federation's participation in this case**

　　　**A.      Plaintiffs' Position**

1

The plaintiffs agree with the Government's position with respect the Federation's participation and join the explanation that it provides below. The plaintiffs wish to add one additional observation: It is not appropriate, in the plaintiffs' view, for the Federation to take additional fact discovery because the burden of producing evidence to justify the racial preferences in section 1005 rests entirely with the government, and this task cannot be undertaken by third-party intervenors. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989) ("[T]he city of Richmond . . . can use its spending powers to remedy private discrimination, <u>*if it identifies* that discrimination with the particularity required by the Fourteenth Amendment</u>." (emphasis added)); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995) ("[A]ny person, of whatever race, has the right to demand that *any governmental actor* subject to the Constitution *justify* any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." (emphasis added)); *id.* at 229 ("*Unless Congress clearly articulates the need and basis* for a racial classification, *and also tailors the classification to its justification,* the Court should not uphold this kind of statute." (emphasis in original) (citations and internal quotation marks omitted)); *see also DeOtte v. Azar*, 332 F.R.D. 173, 188 (N.D. Tex. 2019) (noting that under the Religious Freedom Restoration Act, "only the federal government can 'demonstrate' that this burden is '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.' . . . [I]t is Defendant's obligation to carry this burden.").

B.     **The Government's Position**

The Court should modify its September 22, 2021 scheduling order to allow for the Federation's full participation in the expert discovery and summary judgment briefing provided by that order. ECF No. 85. Doing so would permit the Federation to fully participate in the case

according to the parameters long agreed to by the parties, ordered by the Court, and proposed by the Federation itself in its motion to intervene, while preventing undue delay in the resolution of this case.

The parties have long agreed that this case could be resolved without conducting fact discovery. On July 16, 2021, two weeks after the Court entered a preliminary injunction, the parties submitted a Joint Scheduling Statement in which they agreed that "factual discovery is [un]necessary" to resolve Plaintiffs' constitutional claim. They therefore proposed deadlines for expert disclosures and summary judgment briefing. Jt. Sch. Stmt. at 2, ECF No. 2. The Court's September 22, 2021 scheduling order adopted the parties' proposals in full.

In the Federation's October 12, 2021, motion to intervene, the Federation represented that its intervention would not upset the existing case schedule. The Federation stated that it did "not seek to re-litigate any prior rulings," Mot. to Interv. at 22, ECF No. 93-1—including, presumably, the Court's prior order setting case deadlines. Consistent with that position, the Federation stated that it sought to introduce two types of evidence to support its defense of § 1005 alongside the government: (1) expert testimony; and (2) testimony concerning "present-day and historical discrimination against minority farmers" through "stories and narratives of Black farmers and other farmers of color." *Id.* at 20; Reply at 6, ECF No. 141 (arguing that "the Federation's members are uniquely positioned to augment the record with their lived experiences"); *see also id.* at 7 (stating that the "Federation has identified specific evidence—direct testimony from present-day, debt burdened Black farmers about their own experiences of discrimination—that" it wished to present); *see also* Mot. to Stay at 11, ECF No. 149 (stating that the Federation intended to "present expert and other testimony"). The Federation did not identify any additional fact discovery as necessary to support any showing of ongoing discrimination.

3

The government welcomes the Federation's full participation in the case according to the parameters already governing the litigation, which will allow the Federation to present the very evidence it indicated in its intervention motion that it intended to present. The government does not oppose the Federation's introduction of declarations or other testimony from Federation members and other farmers in support of its summary-judgment motion. The government also does not oppose making already-existing expert disclosures to the Federation. To assist the Federation's timely development of its own expert report, the government is prepared to expediently produce the USDA loan data considered by its own expert, Dr. Alicia Robb, in the development of her report. That data includes information broken down by race and ethnicity, and other metrics, covering the years 2000-2010, such as: information related to loan types and collateral required; the number of loan applications received by USDA; the rates of approvals, withdrawals, and rejections of loan applications; metrics used by USDA to assess applicants' credit risk; average dollar amounts of approved loans; loan processing times; interest rates on approved loans; and rates of delinquency on direct loans for the years 2000, 2010, and 2020. The government is prepared to produce this data upon the entry of an appropriate protective order. This loan data covers many of the categories of USDA data identified by the Federation below. Further discovery is not necessary for the Federation to present its case; it can rely on its own members' experiences to support its motion—just as it initially contemplated. *See* Mot. to Interv. at 20, ECF No. 93-1 (saying it would present "stories and narratives of Black farmers and other farmers of color"); Reply at 6-7, ECF No. 141 (saying it would present farmers' "lived experiences" through "direct testimony from present-day, debt burdened Black farmers about their own experiences of discrimination").

Thus, the government respectfully submits that any additional fact discovery is unwarranted—and indeed, opening the case for fact discovery for the first time at this stage of the litigation is likely to unduly delay proceedings. In accordance with Rule 24, if a court "determines that intervention would cause . . . undue delay or prejudice" to the parties, "a federal district court is able to impose almost any condition," including limitations on "conducting discovery." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019); *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 373 (1987). The Court should impose that limit here. The parties have proceeded expeditiously since the outset of this case. At the time the Federation filed its reply in support of it motion to intervene—the earliest day on which intervention could have been allowed—there remained just five weeks before opening expert reports were to be exchanged. *See* ECF No. 141 (reply filed Dec. 1, 2021); ECF 146 (Dec. 12, 2021, order extending initial expert report deadline to January 7, 2022). And at that time, there remained just over 14 weeks before motions for summary judgment were due. *See* ECF No. 85 (setting summary judgment deadline of March 11, 2022). The schedule the Court adopts should place the Federation in the position it would have been had intervention not been denied, *see* Mot. to Stay at 5 (stating on December 22, 2021, that intervention at that time would allow the Federation to "fully participate in the proceedings" and "fully exercise its rights as an intervenor" by participating in expert discovery and summary judgment briefing), and should delay proceedings no more than necessary to accomplish that purpose. Consistent with that principle, the Court should set a schedule that requires summary judgment motions to be filed no later than July 10, 2022. In the spirit of cooperation, the government proposes a slightly more generous schedule below.

Here, the fact discovery the Federation proposes for the first time in this litigation is likely to cause undue delay beyond that date. Indeed, the Federation proposes filing its summary judgment motion more than 22 weeks from today. And although the Federation describes its proffered discovery as "limited" and "targeted," much of it in fact appears quite broad. For instance, the Federation intends to make requests for "[d]ocuments regarding USDA's efforts to identify and remedy racial discrimination, including but not limited to discrimination identified in *Pigford* and the Jackson Lewis report." In discussions between counsel for the Federation and the Government, the Federation confirmed that the scope of documents falling under this category is extraordinarily broad and would go well beyond the materials underlying the government's expert reports. If the Federation were to propound such discovery, attempting to satisfy their requests would likely prove extremely burdensome and time consuming, and could potentially require the Court to intervene.

The Federation also lists below several broad-ranging categories of USDA loan data. Again, some of this data will already be provided to the Federation through the government's disclosure of its expert data. Requests for several other categories of data beyond what is included in that disclosure are likely to unnecessarily elongate discovery and delay resolution of the case. The government believes that the discovery deadlines proposed by the Federation would not provide sufficient time to conduct the searches necessary to produce documents and data responsive to the broad range of categories of documents listed below and prepare for five depositions of fact witness. USDA does not maintain data of every type that the Federation seeks in a single database, and would have to perform data queries on multiple aging data systems that rely on 1980s-era technology. This means that much of the data is not readily accessible and requires special knowledge to locate and merge from incompatible or obsolete file formats, and to

assess for completeness and accuracy. Responding to the requests the Federation outlines would impose a substantial burden on the agency and likely could not be completed in the time the Federation contemplates—potentially necessitating further extensions or ancillary litigation in this Court over discovery matters that might further delay resolution of this important case.

Such delays would prejudice the government and the farmers § 1005 aims to assist. As the government urged in its opposition to Plaintiffs' preliminary-injunction motion, the disadvantaged farmers who stand to receive § 1005 funds have a strong interest in receiving such funds expeditiously, to prevent further harm caused by the government's past discrimination in its USDA farm loan programs. *See* Def.'s Opp. to Pls.' PI Mot. at 33-34, ECF No. 27. And the government itself has a strong interest in implementing the statute enacted by elected representatives. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The Federation has likewise acknowledged the need for efficient resolution of the case, emphasizing in its motion to intervene that its participation would not cause "any undue delay or prejudice." Mot. at 22. Thus, the parties and the Federation have been in agreement that the legal questions at issue in this case can and should be resolved expeditiously. Modifying the Court's September 22, 2021 scheduling order to permit the Federation to engage in expert discovery and summary judgment briefing alongside the parties would be consistent with the parties' shared interests in preventing unnecessary delay and with allowing for the Federation's full participation the case.

### C.  The Federation's Position

The Court should allow the Federation to (a) conduct targeted fact and expert discovery concerning recent and ongoing discrimination by the Department of Agriculture (USDA); (b)

move for summary judgment; and (c) otherwise participate in all case proceedings going forward. Allowing the Federation to participate in this manner coheres with the Court's power to impose "reasonable" conditions on intervenors of right. *See Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997). In the Federation's view, denying the Federation an opportunity to conduct targeted discovery and move for summary judgment would be an "unreasonable" condition. *See Columbus-Am. Disc. Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) (holding that even if conditions on intervenors of right "are ever proper," the denial of discovery was a "clearly unreasonable" condition).

Allowing targeted discovery is consistent with the Fifth Circuit's mandate. The lynchpin of the Fifth Circuit's analysis was the Federation's interest in presenting evidence of current discrimination by the USDA; that evidence will not be presented unless the Court allows the Federation to conduct targeted discovery. *See Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 (5th Cir. 2022). To that end, the Fifth Circuit described evidence of current discrimination as "germane to the case because evidence of continued discrimination may be highly relevant to proving a compelling governmental interest." *Id.* (quotation omitted). The Fifth Circuit even contemplated the Federation's right to "seek evidence demonstrating current discrimination by the USDA" "if given the opportunity to conduct discovery as a party." *Id.* at *3 n.6; *see also* Oral Argument Recording at 3:48–3:56 ("You would get to do discovery if you were a party. Isn't that the most critical thing you get as a party you don't get as an amicus?") (Haynes, J.).[1]

Consistent with the Fifth Circuit's opinion and mandate, as well as this Court's power to impose "reasonable" limitations, the Federation intends to pursue three categories of targeted discovery. The Federation needs this targeted discovery to uncover the evidence of continued

---

[1] https://www.ca5.uscourts.gov/OralArgRecordings/21/21-11271_3-7-2022.mp3

discrimination that the Fifth Circuit recognized "may be highly relevant to proving a compelling governmental interest." *See Miller*, 2022 WL 851782, at *3 (quotation omitted). Importantly, the Federation should not be limited to expert discovery only. "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977), and limited, targeted fact discovery will greatly enhance the Federation's ability to prove intent. The Federation requests the following discovery:

- Loan data from 2010 to present, to include at least the following:
  - Data on applications for Farm Services Agency (FSA) loans (both direct and guaranteed), including data on applications approved/denied, disbursement amounts, conditions on use of funds, and length of time to approval/denial and disbursement of funds, with demographic data sufficient to identify racial disparities;
  - Farm ownership data;
  - Annual data on FSA and Farm Storage Facility Loan (FSFL) loan delinquencies/defaults; and
  - Any data reviewed by Defendant's experts.
- Declarations
  - Declarations or other testimony from Federation members and other farmers regarding the experiences of Black farmers and other Socially Disadvantaged Farmers and Ranchers of racial discrimination in USDA and/or FSA lending programs.
- Other limited discovery

- Documents regarding USDA's efforts to identify and remedy racial discrimination, including but not limited to discrimination identified in *Pigford* and the Jackson Lewis report; and

- No more than five depositions of USDA officials and/or FSA staff and county committee members regarding complaints of racial discrimination and efforts to identify and remedy racial discrimination;

- Depositions of any experts designated by Plaintiffs; and

- Depositions of any experts who submit a rebuttal report to the Federation's expert(s) on behalf of any party.

Allowing the Federation to conduct the limited discovery described above will not prejudice the Plaintiffs or the Government. The Plaintiffs will not be prejudiced because the Court's preliminary injunction will continue to prevent the Secretary from implementing Section 1005 at least until this Court renders a summary-judgment decision. Nor will the Government be prejudiced. Allowing the Federation to conduct the limited discovery outlined above will advance the Government's interest in successfully defending Section 1005, and the short delay necessary to allow such discovery will not harm the Government, which does not stand to directly gain or lose anything from the outcome of this litigation, and will indeed be no longer than necessary given the Federation's interest in obtaining for its members the loan-forgiveness promised by Section 1005 as expeditiously possible.

## II.     Amendments to the briefing schedule

### A.     Plaintiffs' Position

The plaintiffs agree with the amendments to the briefing schedule proposed by the Government below.

### B. The Government's Position

The Court should modify its September 22, 2021 Scheduling Order to allow for the Federation's full participation in the expert discovery and summary judgment briefing on terms commensurate with the needs of the case and the parties' previous schedule, and to place the Federation in the same position it would have been in had its motion to intervene been granted in December 2021. The government proposes the following modified schedule:

- Subject to the timely entry of a stipulated protective order, the government will provide data considered by its expert under Rule 26(a)(2)(B) by April 8, 2022.

- Deadline for the Federation's expert designation, if any: May 15, 2022

- Deadline for rebuttal reports, if any: June 5, 2022.

- Close of expert discovery: June 26, 2022.

- The Federation's motion for summary judgment: July 17, 2022.

- The parties' and the Federations' responses to the cross-motions for summary judgment: August 2, 2022.

### C. The Federation's Position

The Court should suspend the briefing schedule and reopen limited discovery to afford the Federation an opportunity to seek targeted discovery on current discrimination by the USDA. At the very least, the Court should place the Federation in the position it would have occupied had the Court not denied intervention. The Federation thus requests that the Court reopen discovery and enter a modified scheduling order as follows:

- The Secretary to Provide Loan Data to the Federation: 10 business days (April 15, 2022)

11

- Expert Designations: June 10, 2022 (8 weeks following receipt of substantially complete and usable loan data from the Secretary)[2]

- Rebuttal Expert Reports: July 8, 2022

- Close of Fact Discovery:     July 29, 2022

- Close of Expert Discovery:   August 5, 2022

- Motions for Summary Judgment:   September 2, 2022

To the extent the Court is disinclined to reopen discovery or alter the briefing schedule, the Federation would respectfully request the opportunity to brief the issue independently of this joint status report.

## III. Opposition to the Intervention of the National Black Farmers Association and the Association of American Indian Farmers

### A. Plaintiffs' Position

The plaintiffs no longer oppose intervention by the National Black Farmers Association and the Associations of American Indian Farmers.

### B. The Government's Position

The government opposes intervention by the National Black Farmers Association and the Associations of American Indian Farmers and will file a brief in opposition to their intervention by April 15, 2022, pursuant to the Court's Order. ECF No. 175.

### C. The Federation's Position

The Federation does not take a position on the National Black Farmers Association's and Associations of American Indian Farmers' motion to intervene.

---

[2] The Federation has retained an expert who estimates that it will take approximately eight weeks to analyze the loan data sought from the Government and prepare a report. The Federation respectfully reserves the right to seek an extension if the Government does not timely provide complete and adequate data.

IV.     **Other issues the Court should consider in light of the Federation's intervention**

   A.     **Plaintiffs' Position**

   The plaintiffs do not believe there are other issues that the Court needs to consider beyond those discussed above.

   B.     **The Government's Position**

   The government respectfully submits that no further briefing is necessary prior to entry of a scheduling order.

   C.     **The Federation's Position**

   To the extent the Court is inclined to deny the Federation the opportunity to participate in this litigation in the manner described above, the Federation would respectfully request that the Court enter a schedule to brief the issue more fully before imposing additional limitations on the Federation.

| | |
|---|---|
| Dated: April 1, 2022 | Respectfully submitted, |
| /s/ *Jonathan F. Mitchell* <br> Jonathan F. Mitchell <br> Texas Bar No. 24075463 <br> Mitchell Law PLLC <br> 111 Congress Avenue, Suite 400 <br> Austin, Texas 78701 <br> (512) 686-3940 (phone) <br> (512) 686-3941 (fax) <br><br> Gene P. Hamilton <br> Virginia Bar No. 80434 <br> Vice-President and General Counsel <br> America First Legal Foundation <br> 300 Independence Avenue SE <br> Washington, DC 20003 <br> (202) 964-3721 <br> gene.hamilton@aflegal.org | BRIAN M. BOYNTON <br> Principal Deputy Assistant Attorney General <br><br> LESLEY FARBY <br> Assistant Branch Director <br> Civil Division, Federal Programs Branch <br><br> /s/ *Kyla M. Snow* <br> KYLA M. SNOW (Ohio Bar No. 96662) <br> MICHAEL F. KNAPP (Cal. Bar No. 314104) <br> ALEXANDER V. SVERDLOV <br>   (NY BAR 4918793) <br> Trial Attorneys <br> United States Department of Justice <br> Civil Division, Federal Programs Branch <br> 1100 L Street, NW <br> Washington, D.C. 20005 <br><br> ***Counsel for Defendant*** |

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

***Counsel for Plaintiffs and the
Proposed Classes***

    */s/ Chase J. Cooper*
Chase J. Cooper
TX Bar No. 24087342
ccooper@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
P: 214-453-6500

George C. Lombardi *(admitted pro hac vice)*
Illinois Bar No. 6187715
glombardi@winston.com
Julie A. Bauer *(admitted pro hac vice)*
Illinois Bar No. 6191271
jbauer@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
P: 312-558-5600

Kobi K. Brinson *(admitted pro hac vice)*
NC Bar No. 23827
kbrinson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
P: 704-350-7700

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
WINSTON & STRAWN LLP

333 South Grand Avenue  
Los Angeles, CA 90071  
P: 213-615-1700

Jon Greenbaum *(admitted pro hac vice)*  
California Bar No. 166733  
jgreenbaum@lawyerscommittee.org  
Dorian L. Spence *(admitted pro hac vice)*  
Maryland Bar No. 0912170195  
dspence@lawyerscommittee.org  
Phylicia Hill *(admitted pro hac vice)*  
Alabama Bar No. 5749J00X  
phill@lawyerscommittee.org  
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW  
1500 K St. NW, Suite 900  
Washington, DC 20005  
P: 202-662-8600

Mark D. Rosenbaum *(admitted pro hac vice)*  
California Bar. No. 59940  
mrosenbaum@publiccounsel.org  
Nisha Kashyap *(admitted pro hac vice)*  
California Bar No. 301934  
nkashyap@publiccounsel.org  
PUBLIC COUNSEL  
610 S. Ardmore Ave.  
Los Angeles, CA 90005  
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of Southern Cooperatives/Land Assistance Fund***

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on April 1, 2021, which will serve all counsel of record.

                                                    */s/ Jonathan F. Mitchell*
                                                  Jonathan F. Mitchell