# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al., on behalf of themselves and others similarly situated, § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | |
| v. | Civil Action No. 4:21-cv-0595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| Defendant, | |
| FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND, | |
| Intervenor Defendant. | |

## ORDER

On April 1, 2022, the parties filed a Joint Status Report (ECF No. 184). The parties propose various amendments to the Court's scheduling order.

The parties—including the Federation—have long agreed that fact discovery is unnecessary in this case. On July 16, 2021, the original parties submitted a joint status report saying they "do not believe factual discovery is necessary," and that expert testimony would be sufficient. J. Status Report 2, ECF No. 70. They thus proposed deadlines for expert disclosures and summary judgment briefing. *See id.* at 3. On September 22, after further briefing that narrowed the litigation, the Court issued a scheduling order that adopted the parties' proposals. *See* Scheduling Order, ECF No. 85. Three weeks later, the Federation moved to intervene. *See* Federation's Mot. to Intervene, ECF No. 93-1.

The Federation consistently represented that its intervention would not upset the Court's scheduling order. The Federation said it "does not seek to relitigate any prior rulings" of the Court. *Id.* at 27. The Federation also did not object to the parties' stipulation that fact discovery is unnecessary. Instead, the Federation repeatedly stated that, if permitted to intervene, it would present evidence in two forms: (1) expert testimony; and (2) "direct testimony from present-day, debt-burdened Black farmers about their own experiences of discrimination." Federation's Reply in Support of Intervention 7, ECF No. 141. The Federation has held that position throughout the intervention litigation, including on appeal.[1]

On April 1, 2022, the Federation changed its position. The Federation now requests that in addition to reopening expert discovery and summary judgment briefing, the Court reopen fact discovery. *See* J. Status Report 9–10, ECF No. 184. The Federation wishes "to conduct targeted discovery" seeking evidence of current discrimination by the Department of Agriculture. *Id.* at 8. In addition to expert discovery, the Federation now wants "[d]ocuments regarding USDA's efforts to identify and remedy racial discrimination," and depositions of government officials. *Id.* at 10. The Court denies the Federation's request to reopen fact discovery for several independent reasons.

First, the Federation consistently represented that it would not relitigate prior rulings, which include the Court's scheduling order limiting discovery to expert testimony. Plaintiffs and

---

[1] *See, e.g.*, Mot. to Intervene 25, ECF No. 93-1 (saying it will supplement the record with "stories or narratives of Black farmers or other farmers of color"); *id.* (citing declarations of "victims of . . . discrimination" as examples of the evidence it will present); Reply Br. 8, ECF No. 141 (arguing party status is necessary for the Federation to "present evidence concerning the lived experiences of the present-day [socially disadvantaged farmers and ranchers]"); *id.* at 7 (saying it will introduce "direct testimony" of black farmers and "expert testimony" supporting its position); Mot. to Stay 12 (ECF No. 149) (representing that, if allowed to intervene, it plans to "participat[e] in expert discovery and . . . summary judgment briefing"); App. Mot. to Stay 13, *Miller v. Vilsack*, No. 21-11271 (5th Cir. Jan. 7, 2022) (moving to stay the Court's proceedings to preserve its opportunity "to fully participate in vital proceedings, including expert discovery and, perhaps, summary judgment motions"); App. Br. 30, *Miller*, No. 21-11271 (representing that, if allowed to intervene, it "would present testimonial and statistical evidence" of discrimination).

2

Defendant stipulated that fact discovery was unnecessary, and the Federation did not object. Indeed, Defendant agreed to permissive intervention specifically because he "[did] not understand the Federation to be asking to participate in a manner that would involve seeking fact discovery." Def.'s Resp. to Mot. to Intervene 18, ECF No. 136. The Federation accepted Defendant's concession without correction. *See* Federation's Reply Br. 9–10, ECF No. 141. The Federation thus allowed everyone—including the Fifth Circuit—to believe that it sought no more discovery than what the original parties agreed to. Now, it asks for more. The Court declines that request.

Second, the Federation moved to intervene after the Court closed the possibility of fact discovery. "[A]n intervenor must accept the proceedings as he finds them." *Petition of Geisser*, 554 F.2d 698, 705 (5th Cir. 1977). The relevant point in time is the moment the party moves to intervene: "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). The Federation moved to intervene well after the parties had agreed that fact discovery was unnecessary, and well after the Court's scheduling order. When the Federation moved to intervene, expert discovery was underway and summary judgment briefing had not yet begun. Thus, the Federation's intervention at most preserved its opportunity to participate in expert discovery and summary judgment briefing. It does not grant the Federation the "right to relitigate issues already decided." *Espy*, 18 F.3d at 1206.

Third, the Federation does not have the inherent right to reopen discovery. The Fifth Circuit has repeatedly held that the prejudice of "renewed discovery" is not valid grounds for denying intervention because a party has "no right" to renewed discovery. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 378 (5th Cir. 2001) (quoting *Espy*, 18 F.3d at 1206). Permitting the Federation to reopen fact discovery would defeat that rule.

Fourth, the Court can impose reasonable conditions on the Federation's participation. "[I]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 352–53 (5th Cir. 1997). Defendant agreed to permissive intervention subject to the "reasonable conditions" that the Federation would not "(1) assert any new claims or cross-claims in this matter, (2) seek to conduct fact discovery or written expert discovery, or (3) otherwise disrupt the schedule this Court entered without agreement of the parties or the Court's approval." Def.'s Resp. to Mot. to Intervene 19, ECF No. 136. Defendant even believed those limitations "would [not] be objectionable to the Federation." *Id.* at 18. And they were not—the Federation once again acknowledged Defendant's concession without objecting to those limitations. The Court finds that those conditions remain reasonable.

Fifth, the Federation has failed to show good cause to amend the scheduling order to reopen fact discovery. The Court's preliminary injunction will remain in place for the duration of this lawsuit. The parties thus have a strong interest in expeditious resolution of this case. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012). Reopening fact discovery will severely delay briefing, trial on the merits, and final resolution. According to Defendant, complying with the Federation's proposed discovery "would likely prove extremely burdensome and time consuming, and could potentially require the Court to intervene." J. Status Report 6, ECF No. 184. The Federation proposes filing its summary judgment brief five months from now. *Id.* at 12. And Defendant says that still "would not provide sufficient time to conduct the searches necessary to produce documents and data responsive to the broad range of categories of documents . . . and prepare for five depositions of fact witness." *Id.* at 6. The Federation's proposed deadlines will likely delay resolution of this case, perhaps indefinitely. In light of the Federation's agreement that the Court

4

should resolve the legal issues in this case efficiently, the Court finds that the Federation has not shown good cause to amend the scheduling order to reopen fact discovery.

Sixth, the Fifth Circuit's opinion and judgment do not require the Court to reopen fact discovery. The Federation argues that "[a]llowing targeted discovery is consistent with the Fifth Circuit's mandate," because evidence of current discrimination "will not be presented unless the Court allows the Federation to conduct targeted discovery." *Id.* at 8. That is inaccurate. The Federation will be allowed to participate in expert discovery and submit declarations supporting its claims of present-day discrimination. The Federation will thus receive the discovery it has asked for this entire lawsuit, and the same discovery the other parties have received. Nothing in the Fifth Circuit's opinion contemplates *fact* discovery. That is unsurprising, because until now the Federation has not asked for fact discovery. *See supra* note 1.

In sum, the Court declines to reopen fact discovery in issuing the new scheduling order. The parties, including the Federation, have long represented that this case can and should be resolved through expert testimony and briefing. The Federation will receive what it has asked for, what the parties have agreed to, and what is necessary for the resolution of this case. Accordingly, the Court **ORDERS** the following schedule:

| Event | Deadline |
| --- | --- |
| Loan data disclosure | April 15 |
| Expert designations | May 15 |
| Rebuttal expert reports | June 5 |
| Close expert discovery | June 26 |
| Cross-MSJ briefs | July 17 |
| Cross-response briefs | August 2 |

Finally, the Court notes that it will not lightly entertain requests for protective orders. Defendant says he will provide data considered by the experts "[s]ubject to the timely entry of a stipulated protective order." J. Status Report 11, ECF No. 184. This Court routinely declines to convert an agreement of the parties into a court order. This practice does not leave the parties without recourse. First, the parties may agree to any confidentiality or discovery-related contract among themselves without devoting judicial resources to the matter. *See Davis v. City of Fort Worth*, No. 4:14-cv-491-A, 2014 WL 12940678, at *3 (N.D. Tex. July 3, 2014).

Second, a party may move for leave to file a specific document under seal with a memorandum outlining the good cause for the document to be sealed from public. The motion must be supported by legal authorities and relevant facts verified by oath or declaration of a person with personal knowledge. *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) ("Public confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." (cleaned up)); *Binh Hoa Le v. Exeter Fin. Corp.*, No. 20-10377, 2021 WL 838266, at *8 (5th Cir. Mar. 5, 2021) ("[W]hen materials enter the court record, the standard for shielding records from public view is far more arduous.").

**SO ORDERED** on this **5th day** of **April, 2022**.

*[signature]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**