IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, *et al.*, on behalf of himself and others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>TOM VILSACK, in his official capacity as SECRETARY OF AGRICULTURE,<br><br>　　　　Defendant. | Civil Action No. 4:21-cv-595-O |

## DEFENDANT'S RESPONSE TO THE NATIONAL BLACK FARMERS ASSOCIATION'S AND THE ASSOCIATION OF AMERICAN INDIAN FARMERS' MOTION TO INTERVENE AS DEFENDANT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

KYLA M. SNOW (OHIO BAR NO. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
ALEXANDER V. SVERDLOV
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-2071/ Fax: (202) 616-8460
michael.f.knapp@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT .........................................................................................................................3

    I.    MOVANTS HAVE NOT SHOWN THAT THEY ARE ENTITLED TO INTERVENE AS OF RIGHT................................................................................................................ 4

        A.    Movants' only cognizable interest in this litigation is preservation of § 1005 relief for its members. .................................................................4

        B.    Movants' asserted interest in preserving their lobbying success is not "legally protectable" under Rule 24. ........................................................6

        C.    The government adequately represents Movants' sole protectable interest in this litigation. ............................................................................8

    II.    THE COURT SHOULD DENY PERMISSIVE INTERVENTION................................................ 12

CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Am. Acad. of Pediatrics v. FDA*,
    PWG-18-883, 2019 WL 5964548 (D. Md. Oct. 2, 2019) ................................................. 11

*Brackeen v. Zinke*,
    4:17-cv-00868-O, 2018 WL 10561984 ........................................................................ 8, 9

*Califano v. Westcott*,
    443 U.S. 76 (1979) ........................................................................................................ 10

*DeOtte v. Azar*,
    332 F.R.D. 173 (N.D. Tex. 2019) ................................................................................... 9

*Hopwood v. Texas*,
    21 F.3d 603 (5th Cir. 1994) ........................................................................................... 8

*Int'l Franchise Ass'n v. City of Seattle*,
    Case No. C14-848-RAJ, 2014 WL 12515261 (W.D. Wash. Sept. 15, 2014) ............... 11

*Keith v. Daley*,
    764 F.2d 1265 (7th Cir. 1985) ....................................................................................... 6

*La Union Pueblo Entero v. Abbott*,
    29 F.4th 299, 2022 WL 884493 (5th Cir. 2022) ............................................................ 5

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ....................................................................................... 9

*Lelsz v. Kavanagh*,
    710 F.2d 1040 (5th Cir. 1983) ....................................................................................... 7

*Miller v. Vilsack*,
    21-11271, 2022 WL 851782 (5th Cir. March 22, 2022) .................................... 4, 8, 10

*NAACP v. New York*,
    413 U.S. 345 (1973) ...................................................................................................... 12

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) ....................................................................................... 12

*Northland Fam. Plan. Clinic, Inc. v. Cox*,
    487 F.3d 323 (6th Cir. 2007) ......................................................................................... 6

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ................................................................................................ 4, 6, 7

*United States v. Franklin Par. Sch. Bd.*,
   47 F.3d 755 (5th Cir. 1995) .......................................................................................................9

*Vine v. PLS Fin. Servs., Inc.*,
   807 F. App'x 320 (5th Cir. 2020) ..............................................................................................8

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
   834 F.3d 562 (5th Cir. 2016) .....................................................................................................4

**Statutes**

American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4 (2021) .................................... 1, 2

**Rules**

Fed. R. Civ. P. 24 ...........................................................................................................*passim*

**Other Authorities**

167 Cong. Rec. H762 (daily ed. Feb. 26, 2021), https://perma.cc/X3TK-44BW ..................................2

167 Cong. Rec. S1219 (daily ed. March 5, 2021), https://perma.cc/7U6Z-6S7B ..................................2

H.R. Rep. No. 117-7 (2021), https://perma.cc/CH87-MWNL ..............................................................2

# INTRODUCTION

Section 1005 offers one-time relief targeted to groups, including Black and American Indian farmers, suffering the still-lingering effects of the well-documented historical discrimination in the U.S. Department of Agriculture's farm loan programs. Plaintiffs in this action challenge the statute's constitutionality, and Defendant has vigorously and consistently defended the law, in this litigation, in other litigation, and in the public sphere. Two associations now move to intervene as defendants, contending that, while they share the same ultimate objective as the government in upholding the constitutionality of § 1005, they conditionally support a different remedy should that objective not be attained. Intervention is improper for three independent reasons: First, the putative intervenors share the same ultimate objective as the government; second, the government adequately represents the associations' and their members' cognizable interests; and third, the associations lack a legally protectable interest in the sole issue that they propose to advance in the litigation. Notably, the Movants are not seeking to intervene to protect their members' entitlement to debt relief; they seek to intervene to argue that, if § 1005 is held unconstitutional, then no one—including their own members—may receive relief under that statute. That is not a legally protectable interest under Rule 24. Moreover, their intervention is unnecessary because they may raise that issue, which involves a purely legal question, by filing an amicus brief—as they have. The associations' motion to intervene should therefore be denied.

# BACKGROUND[1]

In early 2021 Congress enacted the $1.9 trillion American Rescue Plan Act (ARPA), to provide a wide range of economic and other relief for a country reeling from an ongoing global pandemic. Pub. L. No. 117-2, 135 Stat. 4 (2021). Among the provisions of that law, § 1005 provides for targeted

---

[1] A more comprehensive background is set out in Defendants' brief in support of their motion for summary judgment, ECF No. 168 at 1-4 ("Defs.' SJ Br.").

1

debt relief for minority farmers, who Congress determined were uniquely vulnerable to fiscal calamity because of a long history of intentional discrimination in the U.S. Department of Agriculture's (USDA) farm loan programs. *Id.* § 1005.[2]

Numerous lawsuits in jurisdictions around the country challenge § 1005 on equal protection grounds.[3] The government has consistently defended the constitutionality of § 1005, and continues to do so in this and other cases.[4]

Plaintiffs in this case include non-minority farmers who would be eligible for § 1005 debt relief but-for their non-minority status. Representing two classes of similarly situated farmers, *see* ECF No. 60 (certifying two classes), Plaintiffs challenge § 1005 on equal protection grounds, alleging that it unlawfully discriminates against them on the basis of their race or ethnicity. *See* Third Am. Compl., ECF No. 135. The parties have filed cross-motions for summary judgment. *See* ECF Nos. 167, 169. In its summary judgment briefing, the government vigorously defended the constitutionality of § 1005. *See, e.g.*, Defs.' Br. in Supp. of Mot. for Summ. J. ("Defs.' SJ Br.") at 5-34, ECF No. 168. The government also addressed, however, what remedy the Court should enter should it conclude that § 1005 is unconstitutional. *See id.* at 34-38.

On April 5, 2022, this Court, consistent with the judgment of the Fifth Circuit Court of Appeals, granted a motion to intervene filed by the Federation of Southern Cooperatives/Land Assis-

---

[2] *See also* H.R. Rep. No. 117-7, at 2, 12 (2021), https://perma.cc/CH87-MWNL; 167 Cong. Rec. H762, H765-66 (daily ed. Feb. 26, 2021), https://perma.cc/X3TK-44BW; 167 Cong. Rec. S1219, S1262-67 (daily ed. March 5, 2021), https://perma.cc/7U6Z-6S7B.

[3] *See Kent v. Vilsack*, 21-cv-540 (S.D. Ill.) *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.); *Wynn v. Vilsack*, 3:21-cv-00514 (M.D. Fla.); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.).

[4] Except for this case and *Kent*, none of these cases are actively proceeding at present.

tance Fund (the Federation). *See* Order, ECF No. 185. The Court subsequently entered an order modifying the briefing schedule, to allow the Federation's participation as a party, such that summary judgment briefing will now be complete on August 2, 2022. *See* Order, ECF No. 186.

The National Black Farmers Association (NBAF) and the Association of American Indian Farmers (AAIF) (collectively, Movants) seek to intervene. *See* Movants' Conditional Mot. for Leave to Intervene as Defendants ("Cond. Mot."), ECF No. 24, Movants' Mot. for Leave to Intervene as Defendants (Interv. Mot.), ECF No. 172. Movants concededly "share the same objective" as the government: to defend § 1005 of the American Rescue Plan Act by defeating the Plaintiffs' lawsuit. Cond. Mot. at 2; *see also* Movants' Amicus Br. at 3, 5-20, ECF No. 171-1. But Movants disagree with the appropriate remedy should the Plaintiffs succeed in their equal protection claim. *See generally* Interv. Mot. at 5, 9-13. The government opposes intervention.

## **ARGUMENT**

Rule 24 provides two mechanisms for intervention, intervention of right and permissive intervention. Movants seek to intervene under both, contending that, should the Court find § 1005 unconstitutional, it should enjoin the statute in all contexts rather than, as the government has argued, extend its benefits to include Plaintiffs and the class members. *Compare* Interv. Mot. at 9-13, *with* Defs.' SJ Br. at 34-38.

But Movants cannot satisfy the applicable standards for intervention of right, and permissive intervention is unwarranted. Movants do not satisfy two related requirements of Rule 24(a)(2), for intervention of right: that they "claim an interest" that the existing parties do not already "adequately represent." And as to permissive intervention, the Court should deny the motion because Movants would lack standing to advance the sole legal argument that they wish to present—the appropriate remedy should § 1005 be held unconstitutional. Further, on that purely legal issue—the only context

where the government's view and Movants' view diverge—Movants may rely on their already-filed amicus brief. The Court should deny intervention.

**I.      Movants have not shown that they are entitled to intervene as of right.**

A movant is entitled to intervene "of right" only if he establishes each of the four elements of Rule 24(a)(2): "(1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Miller v. Vilsack*, 21-11271, 2022 WL 851782, at *2 (5th Cir. March 22, 2022).[5] Movants bear the burden of establishing that intervention is appropriate. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). Movants cannot intervene of right in this litigation because the government adequately represents Movants' only protectable interest.

*A. Movants' only cognizable interest in this litigation is preservation of § 1005 relief for its members.*

Under Rule 24(a)(2), a proposed intervenor must show that it has "a direct, substantial, [and] legally protectable interest in the proceedings." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). The movant must also show that the litigation might "impair or impede" that interest. Fed. R. Civ. P. 24(a)(2).

Defendant does not dispute that Movants' members have an interest in this litigation—the preservation of § 1005's debt relief. Movants assert that they are "working to secure financial solvency of Black and Native American farmers and ranchers, including through obtaining loan forgiveness like that provided under § 1005," and that "their members have loans that would be forgiven under § 1005

---

[5] Hereinafter, all alterations, citations, omissions, quotations, and subsequent history are omitted unless otherwise indicated.

4

as written." Interv. Mot. at 7; *see also* Cond. Mot. at 8 (describing members as "the intended beneficiaries of the laws that Plaintiffs challenge in this case").

Neither does Defendant dispute that this interest may be "impaired" by an adverse disposition of this action—that is, a disposition that prevents Movants' members from "obtaining loan forgiveness" that is "provided under § 1005," Interv. Mot. at 7. *See* Fed. R. Civ. P. 24(a)(2); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 2022 WL 884493, at *4 (5th Cir. 2022). As Movants explained in their Conditional Motion to Intervene, an "adverse resolution of this action would prevent NBFA and AAIF's members from receiving the financial benefits conferred by" § 1005. Cond. Mot. at 8; *see also id.* at 5 ("[T]his suit has the potential to . . . leave [Movants'] members in debt from which Congress intended them to be freed[.]"); *id.* at 7 ("NBFA and AAIF would be severely prejudiced if denied the opportunity to intervene because the litigation seeks to . . . remove financial benefits to their members."). Acting on behalf of their members, Movants have a substantial and protectable interest under Rule 24 that may be impaired by the disposition of this litigation. But, as explained below, the government is "adequately represent[ing] *that* interest," Fed. R. Civ. P. 24(a)(2) (emphasis added), by vigorously defending the statute and by advocating for a remedy that protects that interest even if the statute is held unconstitutional.

Moreover, and of particular significance here, that is not the interest that the Movants are proposing to advance by intervening in this litigation. Quite the contrary—the Movants wish to advance an argument that, if accepted, would *preclude* debt relief for their members. Movants argue that, if § 1005 is held unconstitutional, then no one—including their own members—should receive any debt relief under that statute. But Movants do not have a legally protectable interest under Rule 24 to intervene on that basis, because that result would be directly contradictory to their members' financial interest. *See* Movants Amicus Br. at 1 (explaining that Movants have members "who would be injured

5

should this lawsuit enjoin that law"). And, as explained in the next section, any interest that Movants assert apart from their members' financial interest is not legally protectable under Rule 24.

  B. *Movants' asserted interest in preserving their lobbying success is not "legally protectable" under Rule 24.*

  Although Movants have asserted a "direct, substantial, [and] legally protectable" interest, *Texas*, 805 F.3d at 657, in ensuring that their members receive § 1005 benefits, *see* Cond. Mot. at 5, 7-8, the argument that Movants seek to make as an intervenor does not actually advance that interest. Instead, they argue that they should be permitted to intervene to argue that the Court should nullify the statute, rather than extend benefits, if the Court finds § 1005 unconstitutional. This argument seems to further a different interest: preservation of the fruits of Movants' lobbying efforts to secure benefits for, and only for, minority farmers. In their conditional Motion, Movants explain that they, and their founders, have "specifically advocated on the Act's debt forgiveness provisions, directly engaging with federal legislators to express the organization's support for the legislation and building support for the legislation by networking with other groups." Cond. Mot. at 4-5 (citing Decl. of Kara Boyd ¶ 7); *see also id.* at 4 (citing Decl. of John Boyd ¶ 5). This litigation, Movants explain, "has the potential to undo [their] dogged advocacy." *Id.* at 5.

  An interest in preserving the successes of one's lobbying is insufficient to support intervention. *See, e.g.*, *Texas*, 805 F.3d at 657 ("[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological . . . reasons; that would-be intervenor merely *prefers* one outcome to the other."); *Keith v. Daley*, 764 F.2d 1265, 1269 (7th Cir. 1985) ("IPC's interest as chief lobbyist in the Illinois legislature in favor of HB 1399 is not a direct and substantial interest sufficient to support intervention in the instant lawsuit."). This rule applies with particular force when, as here, the advocacy organization does not seek to intervene to address the procedures for adopting the favored law, but to defend the law after it has already been enacted. *See Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345-46 (6th Cir. 2007) ("After the Act's passage, however, STTOP's interest in the enforcement

6

of the statute is greatly diminished due to the state's responsibilities in enforcing and defending it as it is written. As things now stand, STTOP's interest in this case simply pertains to the enforceability of the statute in general, which we do not believe to be cognizable as a substantial legal interest sufficient to require intervention as of right."); *see also Texas*, 805 F.3d at 658 (citing *Northland Family Planning Clinic* as an exemplar of the rule against advocacy-group intervention). Ideological and policy interests, such as those advanced by Movants, are not direct, substantial, or legally protectable interests within the meaning of Rule 24. *See, e.g.*, *Lelsz v. Kavanagh*, 710 F.2d 1040, 1046 (5th Cir. 1983) ("[W]here a would-be intervenor is not asserting a legal right of his own, but is advocating the pursuit of a particular policy, his interest will be deemed to be adequately represented by existing parties."). The proper way to advance such an interest is in an amicus brief, as Movants have already done. *See* Movants' Amicus Br. at 20; *see also* Interv. Mot. at 9-13.[6]

Thus, this interest cannot be a basis for intervention as of right. Rule 24(a)(2), by its terms, requires that the movant "claim[] an interest" in the litigation and also that the existing parties not "adequately represent *that* interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). Because Movants' ideological interest in a certain outcome is not the type of interest protected by Rule 24, it makes no difference whether the government is adequately representing *that* distinct interest.[7] The only relevant

---

[6] Movants indicate they do not intend to file additional briefs beyond their motion to intervene, ECF No. 172, and their amicus brief, ECF No. 171-1. *See* Interv. Mot. at 14. The government agrees that, should Movants be permitted to intervene, it would be unnecessary for them to file any additional briefing. But this only underscores that intervention is unnecessary and that the proper way for Movants to raise their arguments is through participation as an amicus.

[7] Moreover, Movants' interest in a particular remedy should the Court find that § 1005 violates Plaintiffs' equal protection rights is already advanced by Plaintiffs, the other "existing parties," Fed. R. Civ. P. 24(a)(2), who advocate for the same remedy as Movants do. *See* Pls.' Reply Br. in Supp. of Mot. for Prelim. Inj. at 1-3, ECF No. 42.

question is whether the government is adequately representing Movants' sole legally cognizable interest in securing the financial benefits of § 1005 relief. And as to that interest, Movants do not even argue that the government's representation is inadequate.

*C. The government adequately represents Movants' sole protectable interest in this litigation.*

Movants are not entitled to intervene as of right, because their sole protectable interest—in obtaining for their members the benefits conferred by § 1005—is already "adequately represent[ed]" by the government, Fed. R. Civ. P. 24(a)(2). Movants do not dispute that the government shares their ultimate objective of defeating Plaintiffs' lawsuit and implementing § 1005 as enacted. Movants thus fail to rebut two presumptions of adequate representation. Representation is presumed adequate and—absent rebuttal—intervention of right is unavailable, either when the movant seeks to intervene on the same side as the government, or when the movant and a party share the same ultimate goal. *See Brackeen v. Zinke*, 4:17-cv-00868-O, 2018 WL 10561984, at *3 (discussing these two presumptions). Movants rebut neither presumption.

*First*, in this case Movants must make the "much stronger" showing required to overcome the presumption that applies when the government is a party.[8] *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994). Movants have conceded that this presumption applies. Interv. Mot. at 6 ("Nonetheless, [the Fifth Circuit] (like many courts) also imposes a rebuttable presumption that if would-be intervenors

---

[8] The Fifth Circuit, in an earlier appeal in this case by the Federation, held that the presumption of adequate representation did not apply to this litigation because the litigation does not implicate "a sovereign interest." *Miller*, 2022 WL 851782, at *3 n.4. The law of the case doctrine generally precludes this court from holding otherwise and the government asserts this argument here for preservation purposes only. The government maintains that the government presumption applies in this case, and that the Fifth Circuit's conclusion that litigation challenging the constitutionality of an Act of Congress does not implicate a sovereign interest is "clearly erroneous" such that the Court of Appeals may, consistent with the law-of-the-case doctrine, revisit that conclusion if presented with it again. *See, e.g., Vine v. PLS Fin. Servs., Inc.*, 807 F. App'x 320, 326 (5th Cir. 2020) (setting out exceptions to law-of-the-case doctrine).

8

wish to enter on the side of the government, the government will adequately represent their interests."). The government is charged by law with defending the constitutionality of Section 1005. And the government "ha[s] taken no action inconsistent with [movant]'s objective to demonstrate the constitutionality of [Section 1005]." *Brackeen*, 2018 WL 10561984, at *3. On the contrary, the government has zealously defended Section 1005 in this and eleven other district courts. Under these circumstances, Movants have not shown that their sole protectable interest in obtaining debt relief for their members is inadequately represented by the existing parties, as they must to establish a right to intervene. *See DeOtte v. Azar*, 332 F.R.D. 173, 178 (N.D. Tex. 2019); *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997) (governor and state attorney general's vigorous defense of challenged initiative both in court and in the political arena demonstrated they were ready, willing, and able to protect prospective intervenor's asserted interest in upholding the initiative).

*Second*, and independently, when the movant "has the same ultimate objective as a party to the lawsuit," the movant "must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Brackeen*, 2018 WL 10561984, at *3; *see also United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757-58 (5th Cir. 1995) (same). Here, Movants and the government share the same goal: to uphold § 1005 against constitutional challenge so that farmers like Movants' members may benefit from its terms. *Compare, e.g.*, Interv. Mot. at 7; Movants' Amicus Br. at 3, 5-20 (arguing that § 1005 survives strict scrutiny and that Plaintiffs' motion for summary judgment should be denied), *with* Defs.' SJ Mot. at 5-34 (arguing that § 1005 survives strict scrutiny and that summary judgment should be entered for the government).

Movants have identified no "collusion" or "nonfeasance" that would call into doubt the government's pursuit of its and the Movants' shared goal. And, as explained above, the government and movants have no "adversity of interest" with regard to the their shared goal and the sole protectable interest that Movants assert—"secur[ing] the financial solvency of Black and Native American farmers

9

and ranchers" through relief "under § 1005," Interv. Mot. at 7. Indeed, unlike the Federation, these Movants have not argued that the government's defense of the constitutionality of § 1005 is inadequate. Nor, again unlike the Federation, do they propose to intervene for the purpose of raising arguments or presenting evidence in defense of § 1005's constitutionality. *Cf. Miller*, 2022 WL 851782, at *3. Rather, Movants' divergence from the government relates solely to the question of remedy should § 1005 be held invalid, contrary to Movants and the government's shared aim. That issue does not require the submission of any new evidence; it relates solely to a legal issue to be resolved on the parties' briefs.[9]

The only objection that Movants have to the government's approach to this litigation is the government's conditional argument that, should the Court find § 1005 unconstitutional, the Court should redress that injury by extending § 1005's benefits to Plaintiffs and the class members without regard to their race or ethnicity. *See* Interv. Mot. at 9; *see generally* Defs.' SJ Br. at 34-38. But advancing this argument does not make the government adverse to Movants. It is a remedy plainly available under Supreme Court precedent and, in the government's view, the "proper" remedy that the Court should enter if Plaintiffs establish that § 1005 violates their rights. *Califano v. Westcott*, 443 U.S. 76, 89 (1979). The government advances the argument only conditionally, while still forcefully advocating for the law's constitutionality. *See* Defs.' SJ Br. at 5-34. Most important, the government is advancing

---

[9] Movants thus cannot now hitch their wagon to the Federation's earlier and now-successful motion to intervene. Movants have never advanced the arguments the Federation did in support of their own motion to intervene. And any effort to raise those arguments in a reply brief would be doubly untimely: First, Movants failed to raise such arguments in their opening motion. And second, Movants failed to make their motion at an earlier time in this litigation, such as when the government filed its opposition to Plaintiffs' motion for a preliminary injunction or, at the latest, when the Federation raised the issues in its own motion to intervene. *See* Defs.' PI Opp'n Br. at 19-28, ECF No. 27 (relying on continuing effects of past discrimination to defend § 1005); Fed'n's Br. in Supp. of Mot. to Interv. at 19-20, ECF No. 93-1 ("[T]he Secretary of Agriculture can hardly be expected to articulate the USDA's present-day and historical discrimination against minority farmers and inadequacies of previous reforms . . . particularly when doing so could expose his agency to liability and constitute evidence in potential later suits claiming discrimination.").

10

the argument to *preserve* the benefits of Section 1005 for Movants' members—not to destroy them, which would be the result if Movants' argument were accepted.

Movants' citation to two out-of-circuit district court cases, Mot. to Interv. at 5-6, is unhelpful to their cause. In both cases Movants cite, the remedy at issue would have directly and concretely burdened the movant. *See Am. Acad. of Pediatrics v. FDA*, PWG-18-883, 2019 WL 5964548, at *4 (D. Md. Oct. 2, 2019) (remedy imposed "accelerated deadline" for regulations on movant's business); *Int'l Franchise Ass'n v. City of Seattle*, Case No. C14-848-RAJ, 2014 WL 12515261 (W.D. Wash. Sept. 15, 2014) (contemplated remedy would result in lower wages for movants). Unlike in those cases, the remedy the government proposes here would benefit Movants' members. The government's principal argument (that § 1005 is constitutional) and its conditional argument (that if it is not, extension of the benefits is the proper remedy) both advance the Movants' asserted interest in ensuring that "resolution of this action [does not] prevent NBFA and AAIF's members from receiving the financial benefits conferred by" § 1005, Cond. Mot. at 8, or "leave [Movants'] members in debt from which Congress intended them to be freed," *id.* at 5. Thus, even in its conditional argument, the government shares the same ultimate goal as Movants: to ensure that their members "receiv[e] the financial benefits conferred by" § 1005. *Id.* at 8. Even if in some cases a divergence in views on the proper remedy would be sufficient on its own, it is insufficient here where the proposed remedy would not burden Movants or their members.

The government has adequately represented the Movants' sole protectable interest throughout this litigation, and continues to do so. The government is vigorously defending the constitutionality of the statute and seeks to preserve those benefits for the Movants' members—even should the Court find the statute is unconstitutional. Movants make no quibble with the government's ongoing defense of the statute, and identify no way in which the government's defense of § 1005 is inadequate or

11

conflicts with Movants' asserted interest in ensuring that their members "receiv[e] the financial benefits conferred by the laws at issue in this case." Cond. Mot. at 8.

\* \* \*

The issue for which Movants contend there is a conflict between them and the government is unrelated to the only interest that could legally support Movants' intervention, preservation of the benefits of § 1005. As to "that interest," Rule 24(a)(2), the government is already adequately representing it. Indeed, the government is forcefully defending the statute and the benefits it provides to minority farmers, including to Movants' members. Intervention of right is therefore unavailable.

## II. The Court should deny permissive intervention.

Alternatively, a court may, in its discretion, authorize "permissive intervention" under Rule 24(b)(1)(B) if the movant "has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is largely committed to the sound discretion of the district court. *See NAACP v. New York*, 413 U.S. 345, 366 (1973). In considering such a motion, courts consider, among other things, "whether the intervenors' interests are adequately represented by other parties," whether they "will significantly contribute to full development of the underlying factual issues in the suit," and "their standing to raise relevant legal issues." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 & n.40 (5th Cir. 1984).

Here, Movants' participation as a party would add little value, and should be denied. For one, as explained above, Movants' legally protectable interests are adequately represented by the government.[10] The only point on which Movants diverge from the government is the question of remedy, and on that point Movants make a purely legal argument that is adequately explained in their amicus

---

[10] And, as noted above, Plaintiffs already argue for the same remedy that Movants do. *See* Pls.' Reply in Supp. of Prelim. Inj. at 1-3.

12

brief. *See* Movants' Amicus Br. at 20; Interv. Mot. at 9-13. There is no need for any factual development of the record on that issue; the question can be resolved by the Court solely by reference to legal principles and the briefs, including any amicus briefs. Moreover, Movants expressly disavow any intention to make any additional filings beyond their amicus brief and motion to intervene. Interv. Mot. at 14. Their participation in this matter *as a party* will not add value to the litigation in *this* Court.

In recognition of this, Movants clarify that they seek to intervene solely so that they might appeal a judgment that finds § 1005 unconstitutional, but expands its benefits. *Id.* at 13. But this cannot be a valid basis for intervention, because in that scenario Movants would lack standing to appeal.

Movants' standing is based on the § 1005 benefits that their members stand to gain from the challenged statute. *See* Cond. Mot. at 6 ("NBFA and AAIF's members have standing because they stand to receive financial benefits from the law that this action seeks to enjoin."). Should the Court uphold the statute (as the government argues and the Movants desire), the members will receive § 1005's benefits and they will have no injury. Should the Court find the statute unconstitutional but, as relief, extend its benefits to Plaintiffs (as the government prefers and Movants oppose), Movants' members still will receive the benefits and thus still will have no injury. And should the Court find the statute unconstitutional but, as relief, enjoin its operation in all circumstances (as Movants prefer and the government opposes), Movants will have obtained their desired remedy.[11] But in none of these instances will Movants have sufficient cause or standing to appeal.

Because Movants' protectable interests are already adequately represented, and their additional interests are sufficiently presented through their participation as an amicus (to which the government consented), intervention in the district court proceedings is unhelpful and unwarranted. And because

---

[11] To be sure, Movants' members would be injured, in the Article III sense, by an order that enjoined § 1005 in its entirety. But in that scenario—as in any scenario where the Court finds § 1005 unconstitutional—the government, too, would have lost, making Movants' intervention unnecessary.

13

Movants would lack standing to appeal—because their members would have no injury—in the only scenario where their interests diverge from the government's, intervention is inappropriate.

## CONCLUSION

The Court should deny the motion to intervene.

Date: April 15, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

/s/ *Michael F. Knapp*
KYLA M. SNOW (Ohio Bar No. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
ALEXANDER V. SVERDLOV
Trial Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 514-2071
Fax: (202) 616-8470
Email: michael.f.knapp@usdoj.gov

*Counsel for Defendant*

### Certificate of Service

On April 15, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

 /s/ *Michael F. Knapp*
MICHAEL F. KNAPP
United States Department of Justice