UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Sid Miller**, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**Tom Vilsack**, in his official capacity as Secretary of Agriculture,<br><br>    Defendant,<br><br>**Federation of Southern Cooperatives/Land Assistance Fund**,<br><br>    Intervenors-Defendants. | Case No. 4:21-cv-00595-O |

**BRIEF IN OPPOSITION TO THE FEDERATION'S MOTION FOR RECONSIDERATION**

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

The Federation of Southern Cooperatives/Land Assistance Fund intervened to ensure that it could present the perspectives of black farmers. At the time of the intervention, both the plaintiffs and defendants understood that the intervenors accepted and did not challenge the prior decisions of the court—including its scheduling order. Neither the plaintiffs nor the defendants were informed that the Federation sought to dramatically expand the scope of discovery. Now the Federation seeks to do precisely that. It says that the prior scheduling order isn't a "ruling" and it did not agree to proceed under that schedule. It argues that the scheduling order should be changed and fact discovery reopened. It seeks substantial additional data from the defendants which cannot be produced even within the extended deadlines proposed by the Federation.

On these issues, the plaintiffs agree with the defendants: this court did not err in holding to its existing schedule.

I. **The Intervenors Are Now Asking For More Time Than They Would Have Had At The Time They Originally Sought Intervention**

The Federation moved to intervene on October 12, 2021. *See* Mot. to Intervene, ECF No. 93-1. By the time briefing on the motion to intervene was completed, the case was already well along. Expert reports were scheduled for a mere five weeks later and summary-judgment motions were due in just over 14 weeks. *See* ECF No. 141 (reply filed Dec. 1, 2021); ECF No. 85 (setting summary-judgment deadline for March 11, 2022); ECF No. 146 (setting an expert-report deadline as January 7, 2022). The schedule adopted by the court in its order of April 5, 2022, (ECF No. 186) places the intervenors in as good or better a position than they would have faced if their motion had been granted after briefing. The court provided more than five weeks before expert designations were due, two full months before rebuttal expert reports were due, and just over 14 weeks until summary-judgment motions were due.

The court correctly noted that "the intervenor must accept the proceedings as he finds them." *Petition of Geisser*, 554 F.2d 698, 705 (5th Cir. 1977). The intervenors ask the court to deviate from this standard but it need not (and should not) do so.

## II. THE PARTIES UNDERSTOOD THAT THE INTERVENORS WANTED AND WHAT THEY ARE GETTING—EXPERT DISCOVERY

The intervenors concede that they agreed to accept the prior rulings in the case at the time they intervened. But the intervenors now deny that the scheduling order counts as a ruling, citing a dictionary definition to say that the order couldn't qualify as a ruling because it didn't apply a legal test. *See* Mot. for Reconsideration at 5, ECF 187. That makes no difference in determining whether a court's prior decision counts as a "ruling." And the court need not rest merely on the intervenor's statements disclaiming an intent to challenge its previous rulings. The intervenors also represented that they wanted to participate in expert discovery and present testimony from member farmers. They gave no indication that they wanted to do more—such as engage in an exhaustive data-driven analysis of prior government grants and activities. If the intervenors hadn't made such specific representations about the nature of their intervention, then their case might be stronger. But it entirely reasonable for this court to say that it is too late in the game for the intervenors to dramatically alter the scope of discovery.

As already developed at length in the Joint Status Report (ECF No. 184) and correctly noted by the court in its Order (ECF No. 186), the intervenors have consistently asked to participate in expert discovery. *See, e.g.*, Mot. to Interv. at 20, ECF No. 93-1. And they are able to do so. They also said that they would introduce stories and personal testimony from farmers establishing the existence of discrimination. *Id.* The intervenors do not claim that they have been inhibited in this objective.

What the intervenors are not entitled to do is reopen fact discovery that ended before they moved to intervene. That the intervenors articulated a modest scope of

factual development—expert discovery plus personal stories—should determine the scope of its intervention. See *Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014) (intervention of right was allowed where the intervenor "foreswore reopening discovery and stipulated that he would not seek to revisit issues that had already been decided"). This court was well within its discretion to deny the intervenors' request to extend discovery beyond what the intervenors sought.

### III. Fact Discovery By The Intervenors Is Unnecessary Because The Intervenors Cannot Bear the Government's Burden

The burden of producing evidence to justify the racial preferences in section 1005 rests entirely with the government, and this task cannot be undertaken by third-party intervenors. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989) ("[T]he city of Richmond . . . can use its spending powers to remedy private discrimination, *if it identifies that discrimination with the particularity required* by the Fourteenth Amendment." (emphasis added)); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995) ("[A]ny person, of whatever race, has the right to demand that *any governmental actor subject to the Constitution justify* any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." (emphasis added)); *id.* at 229 ("*Unless Congress clearly articulates the need and basis* for a racial classification, *and also tailors the classification to its justification*, the Court should not uphold this kind of statute." (emphasis in original) (citations and internal quotation marks omitted)); *see also DeOtte v. Azar*, 332 F.R.D. 173, 188 (N.D. Tex. 2019) (noting that under the Religious Freedom Restoration Act, "only the federal government can 'demonstrate' that this burden is '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.' . . . [I]t is Defendant's obligation to carry this burden."). This adds further support to the Court's unwillingness to reopen fact discovery in response to the new intervenors in this case.

### IV. IF THE INTERVENORS ARE UNABLE TO ADEQUATELY DEFEND AGAINST A MOTION FOR SUMMARY JUDGMENT AFTER EXPERT DISCOVERY, THEN THEY CAN FILE A MOTION UNDER RULE 56(d)

It is worth noting that the intervenors are not left helpless if the federal defendants fail to provide useful material. If the intervenors, through no fault of their own, are unable to present essential facts for opposing a motion for summary judgment, then the rules of civil procedure provide recourse. The intervenors can file an affidavit or declaration under Rule 56(d) specifying the reasons which prevent them from justifying their opposition. The court would then have the opportunity to respond with an appropriate order. Rather than immediately opening the floodgates to fact discovery by the intervenors, this procedure allows the court and the parties to proceed on the current schedule, allows the intervenors to see what is in the federal data, and then requires the intervenors to articulate with *specificity* what is missing and what is needed and sought. *See Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("[T]he nonmovant must present specific facts explaining his inability to make a substantive response . . . and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'") (quoting *Securities and Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir.1980)). This is not to suggest that the intervenors should be able to simply wait until the summary-judgment stage to try to slow down the pace of litigation and get the broad discovery sought now. It is to suggest instead that the court's order should be left in place with confidence that it preserves options to address in a more targeted way any serious problems that might emerge from the intervenors' discovery.

* * *

The standard of review is abuse of discretion. *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 332–33 (5th Cir. 2002) ("We review a district court's decision

to cut off discovery in order to rule on summary judgment for an abuse of discretion."). This court did not abuse its discretion by denying the intervenors' motion to reopen fact discovery and alter its schedule for summary judgment. "Full and complete discovery should be practiced and allowed, but its processes must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered." *Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 925 (5th Cir. 1964).

The plaintiffs want a full and prompt resolution of this case—and to be spared unnecessary expenses from protracted litigation. The plaintiffs know of no reason to doubt the defendant's assertions that it would provide ample data to the Federation, or that the additional data sought by the Federation is not worthwhile. The defendant is of course best able to explain what is and is not included in the various data sets—those which it will disclose and those which it wishes to avoid disclosing.

## CONCLUSION

The intervenors' motion for reconsideration should be denied.

Respectfully submitted.

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801

 */s/ Jonathan F. Mitchell*
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: April 20, 2022 *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 20, 2022, I filed this document through the court's CM/ECF system, which will serve all counsel of record.

                                          /s/ Jonathan F. Mitchell
                                          JONATHAN F. MITCHELL
                                          *Counsel for Plaintiffs*