UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, on behalf of himself and others similarly situated, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> TOM VILSACK**,** in his official capacity as SECRETARY OF AGRICULTURE, <br><br> *Defendant,* <br><br> FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND, <br><br> *Intervenor-Defendant.* | Civil Action No. 4:21-cv-00595-O |

**THE NATIONAL BLACK FARMERS ASSOCIATION'S AND
THE ASSOCIATION OF AMERICAN INDIAN FARMERS'
REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE AS DEFENDANTS**

Plaintiffs withdrew their objection to NBFA's and AAIF's intervention as a matter of right, explaining it is not defensible following *Miller v. Vilsack*, 21-11271, 2022 WL 851782 (5th Cir. March 22, 2022) (unpublished). Dkt. No. 192. Defendant likewise recognizes *Miller* "precludes this court from" applying a "presumption of adequate representation" in its favor, effectively conceding this prong of the Rule 24(a)(2) analysis, despite briefing the issue.Def.'s Resp. to NBFA and AAIF Mot. to Intervene, Dkt. No. 191 ("Def.'s Opp."), 8 n.8.

Nonetheless, Defendant contests NBFA and AAIF receiving party status by claiming NBFA and AAIF do not have a Rule 24 interest in defending § 1005 as written. Defendant acknowledges NBFA and AAIF could have intervened to argue their members are entitled to "debt relief," but insists NBFA and AAIF cannot object to Defendant's proposed remedy, namely, that, if held unconstitutional, § 1005 should be redrafted to provide relief to all farmers and ranchers with qualifying loans. Def.'s Opp. 4. This flies in the face of Defendant's other representations to this Court. Defendant has explained § 1005's goal is not merely to dole out money, but to level the playing field by uniquely advancing socially disadvantaged farmers and ranchers ("SDFRs"), who have been held back due to USDA's discrimination. Without the *targeted* debt relief § 1005 authorizes, the funds will exacerbate the existing disparities between SDFRs and their peers, causing SDFRs further harm. Of course, preventing that outcome is an interest that allows NBFA and AAIF to intervene and protect their SDFR members.

For these same reasons, should the Court wish to examine the issue, it is plain Defendant is not adequately representing NBFA and AAIF and their members. In order to salvage some appearance of a victory, Defendant argues that if § 1005 is held unlawful, the Court should ignore its purpose and distribute ten times the amount of money originally at stake to all farmers and ranchers with qualifying loans, which will merely reinforce existing racial disparities. Likewise,

1

despite Defendant's protestations, were the Court to deny intervention as a matter of right, it should grant NBFA and AAIF Rule 24(b) intervention so they could present the remedy issue on appeal. Neither Defendant nor Plaintiffs could pursue the issue, as both argue that the law can be expanded. Thus, the case would benefit from NBFA's and AAIF's defense of § 1005's objectives.

As Plaintiffs now recognize, NBFA and AAIF should be allowed to intervene.

I. **NBFA and AAIF Seek to Protect an Actionable Rule 24 Interest.**

NBFA's and AAIF's contention that § 1005 should only be implemented to provide *targeted* debt relief to SDFRs, and thus the Court should reject Defendant's proposed remedy, is an actionable interest justifying Rule 24(a)(2) intervention. Rule 24(a)(2) requires a party be allowed to intervene if it has "an interest related to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Defendant has frequently told this Court that § 1005—the property or transaction at issue—is designed to "provide[] debt relief to certain minority farmers." Def.'s MSJ Br., Dkt. No. 167, 1. The "provision specifically addressed [] the plight of minority farmers," and not all farmers, because Congress determined that focus was necessary to correct the "disproportiona[l]" financial risks faced by SDFRs as a result of USDA's discrimination. *Id.* at 2. Section 1005's "infusion of capital to minority farmers" is necessary to undo the "effects of discrimination" by allowing SDFRs to catch up to their non-minority peers and compete on an even playing field. *Id.* at 27. Indeed, Defendant argued the compelling interest that sustains § 1005 against Plaintiffs' equal protection challenge is that "modest or race-neutral means" failed to alleviate the effects of USDA's discrimination, and thus Congress needed to enact racially-focused relief. *Id.* at 22; *see also id.* at 11 (similar).

Plaintiffs characterize the dispute before the Court similarly. According to Plaintiffs, the question is whether Congress can enact "racial preferences" that allow them to "'prioritize' racial

2

minorities to compensate for past discrimination." Plfs.' MSJ Br., Dkt. No. 170, 5. NBFA and AAIF seek to intervene regarding an interest presented by this "transaction": To ensure § 1005 secures targeted relief for SDFRs.

Defendant argues NBFA and AAIF are merely seeking to defend the "successes of [NBFA's and AAIF's] lobbying," or (paternalistically) that NBFA's and AAIF's position is "contradictory to their members' financial interest," and that these are not actionable interests under Rule 24(a)(2). Def.'s Opp. 5-6. False. Defendant's own evidence shows expanding § 1005's relief would infuse capital into the pre-existing, biased markets, empowering those who have benefited from USDA's discrimination to take advantage of their position vis-a-vis SDFRs. NBFA & AAIF MTI, Dkt. No. 172, 9-12 (citing additional evidence). Put another way, the reason NBFA and AAIF have long advocated for targeted debt relief is because their members have a special need and interest in that relief, allowing NBFA and AAIF to intervene under Rule 24(a)(2).

Tying itself in knots, Defendant argues NBFA and AAIF only have an interest in their "members [] receiving the financial benefits conferred by § 1005," not in the targeted scope of those benefits as intended by Congress. Def.'s Opp. 5. Yet, whether NBFA's and AAIF's members could receive all the benefits intended by § 1005 if its scope was expanded is a dispute on the merits, going to whether NBFA and AAIF are correct about § 1005's objective. This is not a reason to deny intervention, but demonstrates the adversarial process requires the presentation of NBFA's and AAIF's position. Moreover, once again, Defendant's own papers undermine its contention. Defendant has explained "a natural consequence of [USDA's] past discrimination" is that "non-minority" farmers and ranchers were able to disproportionally grow in size and "all minority [farmers] are at a marked disadvantaged across virtually every income metric"; thus loan forgiveness for non-minority farmers and ranchers would undo the remedy for the harm created

by USDA's discrimination and undermine § 1005's goal. Def.'s MSJ Br., Dkt. No. 167, 14; *see also id.* at 19 (similar). According to Defendant, the proposed remedy would have real negative financial consequences for SDFRs if adopted, which Defendant recognizes is an actionable interest.

Defendant's case law confirms NBFA's and AAIF's concerns regarding remedy are an appropriate basis for intervention. Defendant cites *Lelsz v. Kavanagh,* which explains the "legal right *not* to be" further harmed—precisely what NBFA and AAIF seek to achieve by contesting Defendant's remedy—is a "serious interest[] that might well justify intervention of right." 710 F.2d 1040, 1046 (5th Cir. 1983) (emphasis in original). Even if that harm could be characterized as a "policy" concern, as Defendant claims, the Fifth Circuit calls the distinction between a policy concern and a right warranting intervention "facile," and thus an argument with which it was "not so comfortable." *Id.* As a result, *Lelsz* did not deny intervention based on the lack of an actionable interest, but because it concluded the intervenors waited too long to assert that interest. *Id.* at 1048.

Likewise, *Texas v. United States* held that if the outcome of a case would "adversely affect[]" the would-be intervenor's ability to compete with others—as would be true for NBFA's and AAIF's members if Defendant's remedy were adopted—they can intervene to prevent that outcome. 805 F.3d 653, 659 (5th Cir. 2015) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir.1996) (en banc)). If the "process" for administering a law could "threaten[] a prospective interference with [] opportunities" that is "sufficient to support intervention." *Id.* at 660 (citing *Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014))

Reaching outside the Fifth Circuit, Defendant also cites *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007), but that opinion also helps NBFA and AAIF. It states "public interest groups . . . whose members are affected by the law," like NBFA and AAIF, "may

4

likely have an ongoing legal interest in its enforcement after it is enacted." *Id.* at 345-46. *Northland* denied intervention only because the would-be intervenor failed to show its "members [were] affected by the law" and thus its interest in the "procedure[s]" used to administer the law was no different from "the public at large." *Id.*; *see also Keith v. Daley,* 764 F.2d 1265, 1270 (7th Cir. 1985) (Defendant's other authority, which denied intervention because would-be intervenor did not demonstrate its members could be harmed by the law).

At bottom, Defendant asks this Court to hold groups representing SDFRs have no Rule 24(a)(2) interest in protecting their members from the harms Defendant itself explains will occur if its remedy was adopted. Logic and Defendant's own case law is to the contrary. NBFA and AAIF have a right to intervene to contest rewriting § 1005 to expand its relief and perpetuate the discriminatory imbalance that has plagued SDFRs.

## II.     NBFA's and AAIF's Interest Is Not Adequately Represented

`      Having established that NBFA and AAIF have an actionable interest, Defendant appears to concede the other elements of Rule 24(a)(2) intervention, including that Defendant cannot adequately represent that interest. *E.g.*, Def.'s Opp. 8 n.8. Yet, because Defendant persists for pages in detailing how they have meaningfully defended § 1005, NBFA and AAIF briefly respond to show Defendant's representation is inadequate.

*Miller* explained Defendant is not entitled to any special presumption that they will adequately represent a would-be intervenor's interests. 2022 WL 851782, at *3. Therefore, to intervene on the side of Defendant, a party only needs to demonstrate its position "diverge[s]" from Defendant's "in a manner germane to the case." *Id.* This rule must be applied in light of the Fifth Circuit's instruction that "[f]ederal courts should allow intervention where no one would be

hurt and the greater justice could be attained." *Id.* at *2 (quoting *Texas*, 805 F.3d at 657) (brackets omitted).

Defendant acknowledges that if its position would "burden[]" the would-be intervenor, *Miller* is satisfied and Defendant cannot be held to adequately represent the intervenor's interests. Def.'s Opp. 11. Therefore, to the extent Defendant offers any argument regarding its adequacy of representation under *Miller*, it is merely to repeat Defendant's false assertion that expanding § 1005 "would benefit [NBFA's and AAIF's] members," not burden them. *Id*. To repeat, this at most is a fact dispute warranting adversarial presentation, and, in actuality, Defendant's summary judgment evidence disproves its claim of convenience here.

Indeed, given the record, even if *Miller* were overruled, NBFA and AAIF have overcome any presumptions of adequate representation that could be applied. An intervenor rebuts the strongest presumption of adequate representation when it demonstrates "its interest is in fact different from that of the state[.]" *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (Defendant's authority). NBFA and AAIF seek to intervene because Defendant is so fixated on maintaining § 1005 it proposed a remedy that is contrary to its purpose and would undermine its effects. That is a position in fact different from Defendant. Lest there be any doubt, even Defendant explains that to the extent NBFA's or AAIF's interests are represented here, it is by Plaintiffs, not Defendant. Def.'s Opp. 7 n.7. However, Plaintiffs no longer protest NBFA's and AAIF's intervention because they too argued expanding § 1005 is an acceptable outcome. Third Am. Compl., Dkt. No. 135 ¶ 32(d) (requesting the Court issue an injunction preventing "any racial exclusions").

That neither Defendant nor Plaintiffs represent NBFA's and AAIF's position also defeats Defendant's suggestion that it is sufficient for NBFA and AAIF to appear as amici. *Id.* at 7 n.6.

6

Should Defendant somehow persuade the Court that its proposed remedy is proper, unless NBFA and AAIF are granted party status, the issue could not be appealed. True, Defendant might appeal the Court's conclusion that the law was unconstitutional, but Defendant would be barred from challenging the remedy because it is the outcome it proposed. *Cambranis v. Blinken*, 994 F.3d 457, 464 (5th Cir. 2021) ("We will not allow [a party] to reverse course on appeal."). Likewise, Plaintiffs, as the prevailing party could not appeal, as they would have obtained the relief they sought. Third Am. Compl., Dkt. No. 135 ¶ 32(d).

Defendant's related argument that NBFA and AAIF should only serve as amici because they would lack standing to appeal is wrong twice over. First, factually, the claim that NBFA's and AAIF's members would not suffer an Article III injury if the Court ordered Defendant's remedy rests on the same fiction Defendant relies on throughout, that NFBA's and AAFI's members are not harmed by generalized debt relief and have no special interest in targeted relief. Def.'s Opp. 13. Second, legally, this dispute is irrelevant to NBFA's and AAIF's standing. Standing is established if there are plausible remedies the party could seek to correct the alleged harm, not what remedy "prove it [is] entitled to on the merits." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 502 (7th Cir. 2005); *see also Allandale Neighborhood Ass'n v. Austin Transp. Study Pol'y Advisory Comm.*, 840 F.2d 258, 263 n.16 (5th Cir. 1988) (whether a party is entitled to a particular type of redress is separate from constitutional standing). A determination about the constitutionality of § 1005 raises issues that could injure NBFA's and AAIF's members "in the Article III sense," Def.'s Opp. 13 n.11, thus they would have standing to appeal any negative ruling, as there are certainly ways in which an appeal could correct that injury. In such an appeal they are free to address the various potential remedies.

7

In sum, should the Court examine whether Defendant adequately represents NBFA's and AAIF's interests, under any test, it does not. NBFA and AAIF diverge from Defendant on a matter germane to the case. In fact, Defendant's position on remedy is adverse to NBFA and AAIF. Only through intervention are NBFA's and AAIF's members protected.

### III.    Permissive Intervention Is Also Proper.

Although it would be most appropriate to allow NBFA and AAIF to intervene under Rule 24(a)(2), should the Court deny that relief, Defendant also fails to articulate a legitimate objection to NBFA and AAIF intervening under Rule 24(b). Defendant's entire premise is that there would be no benefit from NBFA and AAIF having party status, as Defendant fully represents NBFA's and AAIF's "protectable interests" and thus the organizations could not raise any additional issues. Def.'s Opp. 13. Yet, as explained above, NBFA and AAIF have a "protectable interest" in the remedy in this matter, which Defendant fails to represent. Moreover, Defendant recognizes NBFA's and AAIF's intervention would not require further "factual development" or additional briefing, *id.* at 12, therefore it would not delay or distract from the ongoing proceedings, which counsels towards awarding them party status under Rule 24(b). Indeed, that Defendant has been so willing to cast aside its own representations regarding § 1005 to contest intervention demonstrates if Rule 24(a)(2) intervention is not awarded, the Court would still greatly benefit from NBFA and AAIF participating under Rule 24(b), to ensure a fulsome and accurate presentation of the issues.

### CONCLUSION

For the foregoing reasons, the NBFA and AAIF respectfully request the Court allow them to intervene.

Dated: April 28, 2022                    Respectfully submitted,

                                                   PUBLIC JUSTICE, P.C.
                                                   /s/ David Muraskin
                                                   David Muraskin*
                                                   Jessica Culpepper*
                                                   1620 L Street NW, Suite 630
                                                   Washington, D.C. 20036
                                                   (202) 797-8600
                                                   dmuraskin@publicjustice.net
                                                   jculpepper@publicjustice.net


                                                   HENDLER FLORES LAW, PLLC
                                                   Scott M. Hendler
                                                   Texas Bar No. 09445500
                                                   901 S. MoPac Expy, Bldg. 1, Suite #300
                                                   Austin, TX 78746
                                                   Telephone: (512) 439-3200
                                                   Facsimile: (512) 439-3201
                                                   shendler@hendlerlaw.com


                                                   *Counsel for the National Black Farmers Association and the Association of American Indian Farmers*


                                                   \* Admitted *Pro Hac Vice*

9

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on April 28, 2022, which will serve all counsel of record.

| | |
|---|---|
| Dated: April 28, 2022 | Respectfully submitted,<br><br>PUBLIC JUSTICE, P.C.<br>/s/ David Muraskin<br>David Muraskin*<br>1620 L Street NW, Suite 630<br>Washington, D.C. 20036<br>(202) 797-8600<br>dmuraskin@publicjustice.net<br><br>* Admitted *Pro Hac Vice* |